**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS MUNOZ, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>CHINA EXPERT TECHNOLOGY, INC., ZHU XIAOXIN, HUANG TAO and FU WAN CHUNG<br><br>                    Defendants. | DOCKET NUMBER: 07-cv-10531-AKH<br><br>HON. ALVIN K. HELLERSTEIN |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE GROS GROUP TO CONSOLIDATE ALL FUTURE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………………1

PROCEDURAL BACKGROUND……………………………………………………………..2

STATEMENT OF FACTS…………………………………………………………………...3

ARGUMENT……………………………………………………………………………...4

    I.      THE COURT SHOULD CONSOLIDATE ANY FUTURE RELATED ACTIONS...4

    II.     THE GROS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF……………..5

        A.     The Procedural Requirements Pursuant to the PSLRA………………………...5

        B.     The Gros Group is "The Most Adequate Plaintiff"……………........................7

            1.     The Gros Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff……………………………………………………..7

            2.     The Gros Group Has the Largest Financial Interest………………………7

            3.     The Gros Group Satisfies the Requirements of Rule 23…………………8

                i.  The Gros Group's Claims are Typical of the Claims of all the Class Members………………………………...…………………………......9

               ii.  The Gros Group Will Adequately Represent the Class……………...10

    III.    THE COURT SHOULD APPROVE THE GROS GROUP'S CHOICE OF LEAD COUNSEL …………………………………………………………………..11

CONCLUSION…………………………………………………………………………..11

**PRELIMINARY STATEMENT**

The Gros Group—composed of Stan Gros, Carl Horn and Kurt Krueger, who have a preexisting relationship, wholly independent of their counsel—(or "Movant") hereby moves to consolidate all future related securities fraud class actions filed against China Expert Technology, Inc.[1] ("China Expert" or the "Company") and other defendants, to be appointed Lead Plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PLSRA"), and for approval of its selection of the law firm of Kahn Gauthier Swick, LLC ("KGS") as Lead Counsel for the Class in this action.

The Gros Group fully understands its duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action.  As described in the Certification attached to the Declaration of Kim E. Miller in Support of the Motion of the Gros Group to Consolidate All Future Related Actions, To Be Appointed Lead Plaintiff, and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Miller Decl.") at Exhibit A, the Gros Group has suffered losses of $70,867.50 as a result of its members' purchase of shares of China Expert common stock on the open market between November 14, 2006 and October 1, 2007 (the "Class Period").  To the best of its knowledge, the Gros Group has sustained the largest loss of any investor seeking to be appointed as Lead Plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, the Gros Group's Certifications demonstrates its members' intent to serve as Lead Plaintiff in this

---

[1] Here, only one action has been filed, although if additional securities cases are filed alleging the same course of conduct and similar or identical claims against the same or similar defendants, consolidation would be proper. *See* Rule 42(a).

litigation, including its cognizance of the duties of serving in that role.[2]  Moreover, the Gros

Group satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules

of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Accordingly, the Gros Group respectfully submits this memorandum of law in support of

its motion, pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as

amended by the PSLRA, for an order: (1) consolidating all future related actions concerning the

subject matters of this action pursuant to Fed. R. Civ. P. 42(a); (2) appointing the Gros Group as

Lead Plaintiff in this action pursuant to the Exchange Act; and (3) approving Movant's selection

of the law firm of KGS as Lead Counsel for the Class.

## PROCEDURAL BACKGROUND

The first lawsuit against defendants, *Munoz v. China Expert Technology, Inc., et al.*, No.

07-cv-10531, was filed on behalf of plaintiff Carlos Munoz, in the United States District Court

for the Southern District of New York on November 21, 2007.  Pursuant to 15 U.S.C. § 78u-

4(a)(3)(A)(i), on November 21, 2007, the first notice that a class action had been initiated against

Defendants was published on *Market Wire*, a widely-circulated national business-oriented wire

service, advising members of the proposed Class of their right to move the Court to serve as

Lead Plaintiff no later than January 22, 2008.  *See* Miller Decl. at Exhibit B.

The Gros Group's members are Class Members (*see* Miller Decl. at Exhibit A) who have

timely filed this motion within the 60 day period following publication of the November 21,

2007 notice.

---

[2] The relevant federal securities laws specifically authorize any Class Member seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  A copy of the Gros Group's Certification of its transactions in China Expert securities during the Class Period is attached as Exhibit A to the Miller Declaration that has been filed in support of this motion.

## STATEMENT OF FACTS[3]

During the Class Period, China Expert issued materially false and misleading statements and omitted material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and financial condition. As a result of these materially false and misleading statements, the price of the Company's securities was artificially inflated to a Class Period high of over $8.00 per share. As the truth of the Company's materially false and misleading statements entered the market, the Company's stock plummeted to pennies and was even halted by the SEC.

The relevant truth began to enter the market and/or materialize through partial disclosures. After the close of market on July 19, 2007, the Company announced that Company CFO defendant Fu had suddenly resigned. This announcement shocked the market and caused the Company's stock to decline from its closing price of $6.45 on July 19, 2007, to a closing price of $4.88 on July 20, 2007—a 24% decline. The Company's stock continued to fall and eventually closed at $3.72 on July 24, 2007.

On August 14, 2007, the Company announced that it had submitted to the SEC an automatic five-day filing extension for its report for the second quarter ended June 30, 2007. The Company stated the delay was a result of the resignation of Company CFO Fu.

Thereafter, articles were published by financial commentators calling into question the Company's financials, business prospects, and credibility, which ultimately caused the Company's stock to trade down further from an August 14, 2007 closing price of $3.46 per share to a closing price of $0.56 per share on September 28, 2007.

---

[3] These facts were derived from the allegations contained in the class action styled as *Munoz v. China Expert Technology, Inc., et al.*, No. 07-cv-10531 (filed November 21, 2007).

On September 27, 2007, the Company announced through a Form 8-K filed with the SEC that on August 17, 2007, it had dismissed its auditor, BDO McCabe Lo Limited Certified Public Accountants.

On October 1, 2007, the SEC issued an order halting trading of the Company's stock from October 1, 2007, through October 12, 2007. The SEC Order stated in relevant part:

> It appears to the Securities and Exchange Commission that there is a lack of current and accurate information concerning the securities of China Expert Technology, Inc. ("China Expert") because of questions regarding the adequacy and accuracy of publicly-disseminated information concerning, among other things, China Expert's: (1) financial performance and business prospects and (2) current financial condition. The Commission is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.

The Company's stock's last trade prior to the trading halt was at $.58 a share. On the first day of trading after the trading halt was lifted, the Company stock closed at $.19 per share on October 15, 2007.

## ARGUMENT

### I.    THE COURT SHOULD CONSOLIDATE ALL FUTURE RELATED ACTIONS

Consolidation pursuant to Rule 42(a) is proper and routinely granted in actions such as this, where there are common questions of law and fact.[4]  See *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999).[5]  Courts have recognized that securities class

---

[4] If additional securities cases are filed alleging the same course of conduct and similar or identical claims against the same or similar defendants, consolidation would be proper.  *See* Rule 42(a).

[5] Rule 42(a) of the Federal Rules of Civil Procedure allows this Court to order consolidation of separate actions:
> When actions involving a common question of law or fact are pending before
> the court, it may order a joint hearing or trial of any or all of the matters in issue
> in the actions; it may order all of the actions consolidated; and it may make such
> orders concerning proceedings therein as may tend to avoid unnecessary costs of
> delay.

actions, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. See e.g., *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Indeed, "[i]n securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact" and the parties will not be prejudiced. *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id*. See also *In re Olsten Corp. Securities Litigation*, 3 F.Supp.2d 286 (E.D.N.Y. 1998).

Accordingly, this Court should enter an Order that consolidates any future filed cases with the instant action.

## II.    THE GROS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class Members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action

published a notice on *Market Wire* on November 21, 2007. *See* Miller Decl. Exhibit B.[6]  This

notice indicated that applications for appointment as Lead Plaintiff were to be made no later than

January 22, 2008.  Within 60 days after publication of the required notice, any member or

members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff,

whether or not they have previously filed a complaint in this action.  15 U.S.C. § 78u-4(a)(3)(A)

and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of

pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court

determines to be the most capable of adequately representing the interests of Class Members.  15

U.S.C. § 78u-4(a)(3)(B)(i).  In determining who is the "most adequate plaintiff," the acts provide

that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any
> private action arising under this title is the person or group of persons that—
>
>     (aa)  has either filed the complaint or made a motion in response to a
>               notice…
>
>     (bb)  in the determination of the court, has the largest financial interest in
>               the relief sought by the class; and
>
>     (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules
>               of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42,

43-44 (S.D.N.Y. 1998); *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

---

[6] *Market Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. August 6, 1997).

**B.** **The Gros Group Is "The Most Adequate Plaintiff"**

**1.** **The Gros Group Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff**

The Gros Group moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published notice on *Market Wire*, a national business-oriented wire service, on November 21, 2007. Accordingly, the Gros Group meets the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), and has filed its motion by January 22, 2008.

Moreover, the Gros Group has sustained a substantial loss from its investment in China Expert stock and has shown its willingness to represent the Class by signing Certifications detailing its members' China Expert transaction information during the Class Period. *See* Miller Decl. Exhibit A. As demonstrated by its Certifications, the Gros Group is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, the Gros Group has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, KGS, is attached as Exhibit C to the Miller Declaration.

**2.** **The Gros Group Has the Largest Financial Interest**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran*, 220 F.R.D. at 401; *see also, Lee v. Axonyx, Inc., et al.*, No. 7:05-cv-2307, slip. Op., at pg. 8 (S.D.N.Y. Jan. 27, 2006) (Griesa, J.) (appointing movant with the largest financial interest). As demonstrated herein, the Gros Group (with losses of $70,867.50) has the largest known financial interest in the relief sought by the Class. *See* Miller Decl. Exhibit A.

### 3.    The Gros Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Oxford Health*, 182 F.R.D. at 49 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *See also, Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003), citing *In re Party City*, 189 F.R.D. at 106 ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification."). As detailed below, the Gros Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The Gros Group has claims that are typical of those of other Class Members and can adequately serve as Lead Plaintiff.

       **i.**       **The Gros Group's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class."  The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class Members, and when the claims are based on the same legal theory.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).  The requirement that the proposed class representatives' claims be typical of the claims of the Class does not mean, however, that the claims must be identical.  *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001), citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980); *see also, Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the Gros Group's claims are identical, non-competing and non-conflicting with the claims of the other Class Members.  The Gros Group and all of the Class Members purchased China Expert securities during the Class Period when the stock prices were artificially inflated as a result of the Defendants' fraudulent misrepresentations and omissions, and thus, both the Gros Group and the Class Members suffered damages as a result of these purchases.  Simply put, the Gros Group, like all other Class Members:  (1) purchased China Expert stock during the Class Period; (2) purchased China Expert stock at artificially-inflated prices as a result of defendants' fraudulent misrepresentations and omissions; and (3) suffered damages thereby.  The Gros Group's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 50.  Moreover, the Gros Group is not subject to any unique or special

defenses.   Thus, the Gros Group meets the typicality requirement of Fed. R. Civ. P. Rule 23 because its claims are the same as the claims of the other Class Members.

### ii.    The Gros Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.   15 U.S.C. § 78u-4(a)(3)(B).

The Gros Group's interests are clearly aligned with the members of the Class because its claims are identical to the claims of the Class.  There is no evidence of antagonism between its interests and those of the proposed Class Members.  Furthermore, the Gros Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it's members incurred as a result of the wrongful conduct alleged herein.  This motivation, combined with the Gros Group's identical interest with the members of the Class, clearly shows that the Gros Group will adequately and vigorously pursue the interests of the Class.  In addition, the Gros Group has selected a law firm that is highly experienced in prosecuting securities class actions such as this one to represent it.

In sum, because of the Gros Group's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met in this case.  Therefore, since the Gros Group not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), and

has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

### III.    THE COURT SHOULD APPROVE THE GROS GROUP'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Gros Group has selected KGS to serve as Lead Counsel for the Class. This firm has not only prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions. *See* Miller Decl. Exhibit C. Furthermore, the Gros Group's counsel has continually invested time and resources in carefully investigating this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all of the foregoing reasons, the Gros Group respectfully requests that this Court: (1) consolidate all future related actions, (2) appoint the Gros Group to serve as Lead Plaintiff in this consolidated action; (3) approve the Gros Group's selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: January 22, 2008                                  Respectfully submitted,

                                                         KAHN GAUTHIER SWICK, LLC

                                                         /s/ Kim E. Miller
                                                         Michael A. Swick  (MS-9970)
                                                         Kim E. Miller  (KM-9669)

12 East 41st Street, 12th Floor
New York, NY 10017
Telephone:   (212) 696-3730
Facsimile:    (504) 455-1498

And

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for the Gros Group and Proposed*
*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on January 22, 2008.

/s/ Kim E. Miller
Kim E. Miller