Thomas R. Manisero, Esq. (TM 8548)
Peter J. Larkin, Esq. (PL 9645)
William J. Kelly, Esq. (WK 5966)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for Defendants PKF Certified Public Accountants,
A Professional Corporation
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
(914) 323-7001 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS MUNOZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>CHINA EXPERT TECHNOLOGY, INC,; PKF NEW YORK, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORPORATION, PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS; BDO MCCABE LO LIMITED CERTIFIED PUBLIC ACCOUNTANTS, BDO SEIDMAN, LLP,<br><br>Defendants. | 07 – CV – 10531 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PKF CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORPORATION, sued here as PKF NEW YORK, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORPORATION'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Respectfully Submitted by,

Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

*Attorneys for Defendants PKF, Certified Public Accountants, A Professional Corporation*

## TABLE OF CONTENTS

Page

**INTRODUCTORY STATEMENT** ....................................................................... 1

**STATEMENT OF THE CASE** ............................................................................ 3

     The Underlying Fraud .................................................................................. 6

     The Causes of Action in the Amended Complaint ........................................ 7

**PROCEDURAL HISTORY** ................................................................................ 8

**ARGUMENT** ...................................................................................................... 9

The Complaint Must Be Dismissed Because None of the Allegations or Causes
of Action State A Claim for Which Relief May Be Granted Against PKF New York ............. 9

**POINT I.** ............................................................................................................. 9

Plaintiff Has Not Pled a 10(b) Claim Against PKF New York ............................... 9

A.    There are No Allegations that PKF New York Made Any Fraudulent Statements ...... 9

B.    PKF New York Is Not Liable for Statements Made By Other Defendants ................ 11

C.    Because Allegations of Scienter Are Entirely Lacking, Plaintiff's Claim
       Against PKF New York Should Be Dismissed .......................................... 13

       1. There are no allegations concerning PKF New York's Scienter ........................... 14

       2. Even if the Actions of PKF Hong Kong were imputed to PKF New York,
          plaintiff has not alleged sufficient facts to establish Scienter on the
          Part of PKF Hong Kong ...................................................................... 15

D.    As Nothing But a Cloaked Aiding and Abetting Claim, Plaintiffs' First Cause
       of Action Should Be Dismissed ............................................................ 13

**POINT II.** ........................................................................................................... 19

Plaintiff's Second Cause of Action Alleging Control Person Liability Is Not
Sufficiently Pled ................................................................................................. 19

A    The Complaint Does Not Set Forth Factual Allegations of Control of PKF
      Hong Kong by PKF New York .............................................................. 19

B.    The Complaint Does Not Satisfy the Scienter Pleading Requirement Regarding
      Control Person Liability ....................................................................... 21

**CONCLUSION.** ................................................................................................ 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Asia Pulp & Paper Securities Litigation, 293 F. Supp. 2d 391 (S.D.N.Y. 2003) ..................................................................................................................19

ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007). ..............14

In re Bayou Hedge Fund Litigation, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ....................15

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167, L. Ed. 2d 929 (2007)...........................................................................................................9

Boguslavsky v. Kaplan, 159 F.3d 715 (2d. Cir. 1998) ......................................................19

In re DRDGold Ltd. Securities Litigation, 472 F. Supp. 2d 562 (S.D.N.Y. 2007)......10, 13

In re Doral Fin. Corp. Sec. Litig., 563 F. Supp. 2d 461 (S.D.N.Y. 2008) ..................16, 17

Dura Pharm Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)...................................................................................................................10, 13

Edison Fund v. Cogent Investment Strategies Fund, Ltd., 551 F. Supp. 2d 210 (S.D.N.Y. 2008) ......................................................................................4, 19, 20, 21

Hart v. Internet Wire, Inc., 145 F. Supp. 2d 360 (S.D.N.Y. 2001)....................................15

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) .......................................................................9

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) .................................................................13

Lapin, 506 F. Supp. 2d 221 (S.D.N.Y. 2006). ..................................................................21

Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 171 (2d Cir. 2005) ..........................18

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) .................................................................16

In re PXRE Group, Ltd., Securities Litigation, 2009 U.S. Dist. LEXIS 19139 (S.D.N.Y. 2009) ...................................................................................4, 14, 15

In re Paramalat Securities Litigation, 594 F. Supp. 2d 444 (S.D.N.Y. 2009)...................19

In re Parmalat Securities Litigation, 474 F. Supp. 2d 547 (S.D.N.Y. 2006). ..................21

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)..........................................................4, 16

SEC v. First Jersey Sec., Inc., 101 F.3d 1450 (2d Cir. 1996). ...........................................21

In re Sotheby's Holdings, Inc., 2000 U.S. Dist. LEXIS 12504, 2000 WL. 1234601 (S.D.N.Y. 2000) ......................................................................................................15

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008). ...............................................................................................................17, 18

Tellabs v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). .....................................................................................................................14

Troyer v. Karcagi, 476 F. Supp. 1142 (S.D.N.Y. 1979) .......................................................15

In re Winstar Comm., 2006 U.S. Dist. LEXIS 7618, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ........................................................................................................15

Wright v. Ernst & Young, LLP, 152 F.3d 169 (2d Cir. 1998) ...............................................9

## FEDERAL STATUTES

15 U.S.C. §78t(a) ..................................................................................................................19

15 U.S.C. §78t(e) ..................................................................................................................17

15 U.S.C. § 78u-4(b) .............................................................................................................13

Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b)) ..............7, 9, 10

Rule 10b-5 (17 C.F.R. §240.10b-5) .....................................................................................7, 9

Fed. R. Civ. P. 9(b) ................................................................................................................9

Federal Rules of Civil Procedure 12(b)(6) ...........................................................................1

This memorandum of law is respectfully submitted on behalf of defendant PKF, Certified Public Accountants, A Professional Corporation, mistakenly identified in the Amended Complaint as PKF New York, Certified Public Accountants (hereafter "PKF New York"), in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), for an order dismissing the putative class-action securities complaint as against PKF New York for failure to state a claim upon which relief may be granted and for failure to plead fraud with particularity or with the sufficiency required by the PSLRA.

## INTRODUCTORY STATEMENT

Plaintiffs' carefully worded Amended Complaint seeks to stretch the boundaries of the securities laws to reach an accounting firm that performed no audits, issued no opinions or statements, and exercised no meaningful control over any other party. PKF New York did not audit the issuer of the securities at issue in this case, defendant China Expert Technology, Inc. ("CXTI"). Moreover, PKF New York did not make any statements or provide any opinions about CXTI or its financial statements.

Rather, PKF Hong Kong, Certified Public Accountants ("PKF Hong Kong"), a Hong Kong based accounting firm completely separate and legally distinct from PKF New York, which happens to be a member of the same global association of legally independent accounting firms as PKF New York, was the auditor and the firm that issued the auditor's opinions concerning CXTI's financial statements. PKF New York's only attenuated connection to CXTI is that PKF New York agreed to provide PKF Hong Kong with certain agreed-upon consulting services in the form of providing information about

1

U.S. accounting and auditing standards as needed, and discussing application of those standards to the audits to be performed by PKF Hong Kong. In the letter confirming the consulting arrangement between PKF New York and PKF Hong Kong, which plaintiffs possess and refer to in their Amended Complaint, both PKF New York and PKF Hong Kong acknowledged that PKF New York would not perform any audit or review services and, therefore, would not issue any opinion on any of CXTI's financials statements.

In addition to being little more than a poorly cloaked aiding and abetting claim dressed up as a primary violation of the securities laws, plaintiffs' scienter allegations amount to nothing more than purported deviations from generally accepted auditing standards. Plaintiffs' scienter allegations simply allege possible malpractice, and fall far short of what is required under the stringent pleadings requirements applicable to plaintiffs' claims.

Finally, plaintiffs' assertion that PKF New York is liable for the alleged failures of PKF Hong Kong as a control person is completely without merit. As set forth in the letter confirming the consulting services PKF New York was to provide to PKF Hong Kong, PKF New York was identified as a consultant, providing resources to PKF Hong Kong. PKF New York was available as needed to assist PKF Hong Kong complete its audits. Plaintiffs' conclusory assertions that PKF New York is a control person, without any factual allegations that PKF New York in any manner whatsoever actually directed, managed or constrained PKF Hong Kong, ignores the established precedents limiting control person liability to those who actually exercise control and meaningfully participate in the primary violation.

Simply put, plaintiffs have not, and cannot, allege facts that support their securities laws claims against PKF New York and, accordingly, the Amended Complaint should be dismissed as against PKF New York.

## STATEMENT OF THE CASE[1]

Plaintiffs allege themselves to be a class comprised of purchasers of CXTI's common stock during the period between March 31, 2006 and October 1, 2007. (Comp. ¶1).

CXTI's primary business was providing system integration services, consultancy and agency services in the People's Republic of China. (Comp. ¶15). Although the operations of CXTI were in China, CXTI was traded on the NASDAQ OTC Bulletin Board and filed quarterly and yearly reports with the Securities and Exchange Commission ("SEC"). (Comp. ¶15).

PKF Hong Kong is a Hong Kong accounting firm, registered with the Public Company Accounting Oversight Board. (Comp. ¶16). PKF Hong Kong is an independent member firm of the international association of certified public accounting firms known as PKF International Limited. (Comp. ¶16).

As set forth on its website, PKF International Limited is a "worldwide association of legally independent member firms" providing accounting and business advisory services around the world. (Exhibit D to Kelly Declaration[2]).

---

[1] The "facts" set forth herein are derived from the Amended Complaint filed by plaintiff and are accepted as true only for the purposes of this motion.

[2] "Kelly Declaration" refers to the Declaration of William J. Kelly, Esq., dated April 28, 2009, submitted in support of PKF New York's motion to dismiss the Amended Complaint.

PKF Hong Kong was engaged by CXTI to audit CXTI's annual financial statements. (Comp. ¶17).   PKF Hong Kong issued audit reports regarding CXTI's financial statements for the years ended December 31, 2003 and December 31, 2004, which were incorporated with CXTI's Forms 10-KSB filed with the SEC. (Comp. ¶17). A copy of PKF Hong Kong's audit report is attached as Exhibits B to the Kelly Declaration.[3]

PKF New York is a New York accounting firm and an independent member firm of PKF International Limited. (Comp. ¶17).   PKF New York agreed to provide consultation to PKF Hong Kong in connection with PKF Hong Kong's audit of CXTI's financial statements.   PKF New York and PKF Hong Kong acknowledged the limited scope of the consulting services PKF New York would provide in a confirming letter. (Comp. ¶322).  A true and accurate copy of the confirming letter referenced in paragraph 322 of the complaint as maintained by PKF New York and previously produced to plaintiffs pursuant to a non-party subpoena is attached as Exhibit A to the Declaration of Henry A. Freire, CPA, dated April 28, 2009.[4]   As set forth in the accompanying Declaration of Henry A. Freire, CPA, a Director with PKF New York, the consulting services PKF New York provided to PKF Hong Kong were consistent with and limited to the items listed in the confirming letter. See Freire Declaration, ¶¶ 4-5.

---

[3] In considering a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of "any statements or documents incorporated in [the complaint] by reference, as well as public disclosure documents required by law to be, and that have been filed with the SEC...." In re PXRE Group, Ltd., Securities Litigation, 2009 U.S. Dist. LEXIS 19139 (S.D.N.Y. 2009) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

[4] In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. Edison Fund v. Cogent Investment Strategies Fund, Ltd., 551 F. Supp. 2d 210, 217 (S.D.N.Y. 2008).

4

As set forth in the letter confirming the consulting relationship between PKF New York and PKF Hong Kong, PKF New York was engaged by PKF Hong Kong to provide about 25 hours of advice, as needed, concerning the requirements and/or implementation of U.S. accounting and auditing standards and compliance with SEC rules in the course of PKF Hong Kong's audits of CXTI's financial statements. (Comp. ¶323). Indeed, the letter specifically states that PKF New York "will not perform any audit or review services on the accounts of China Expert and, therefore, will not issue an opinion on any financial statements of China Expert entities," which, of course, explains why there are no allegations in the Amended Complaint that PKF New York was responsible for performing any of the audit procedures plaintiffs allege should have been performed, but were not. The Amended Complaint's description of the relationship between PKF New York and PKF Hong Kong completely ignores the limited consulting arrangement agreed upon between these parties and, instead, completely mischaracterizes the relationship and PKF New York's obligations. (Comp. ¶¶ 319-327).

Absent from the Amended Complaint are any allegations that PKF New York issued or signed any of the audit reports included in CXTI's 10-KSB filings. The absence of any such allegations is explained by a review of the publicly available documents filed with the SEC, which confirms that PKF Hong Kong issued the audit opinions relating to CXTI's 2003 and 2004 financial statements and that PKF New York did not issue any statements or opinions in connection with CXTI or its financial statements.

Although the putative plaintiff class is defined as purchasers of CXTI stock during the period between March 31, 2006 and October 1, 2007, the last financial

5

statements audited by PKF Hong Kong were for the year ended December 31, 2004—fifteen months before the earliest purchase in the putative class. CXTI's financial statements for the years ended December 31, 2005 and 2006 were audited by BDO McCabe Lo Limited ("BDO McCabe"), an accounting firm based in Hong Kong and an independent member of BDO International. (Comp. ¶ 22). Similar to the allegations against PKF Hong Kong and PKF New York, plaintiffs allege that BDO Seidman LLP, a New York based accounting firm and a member of BDO International, is responsible for the alleged failures of the Hong Kong member firm in conducting the audit of CXTI's financial statements. (Comp. ¶¶ 19, 24).

**The Underlying Fraud**

According to the Amended Complaint, CXTI reported fabricated revenues and accounts receivable on its annual financial statements. (Comp. ¶2). According to plaintiffs, many of the contracts CXTI claimed to have entered into with various local Chinese governmental authorities either never existed or were substantially overvalued. (Comp. ¶2). As a result, plaintiffs allege that the revenues and accounts receivable reported by the company were fraudulent. (Comp. ¶44).

The Amended Complaint further alleges that PKF Hong Kong and BDO McCabe failed to detect this fraud. (Comp. ¶271). Specifically, plaintiffs allege that PKF Hong Kong issued audit opinion letters for 2003 and 2004 that stated PKF Hong Kong "conducted [its] audits in accordance with the standards of the Public Company Accounting Oversight Board (United States)," and that BDO McCabe issued similar opinions for 2005 and 2006. (Comp. ¶231). Plaintiffs then set forth several alleged departures from these professional standards by the auditors (both PKF Hong Kong and

6

BDO McCabe). (Comp. ¶¶261-271).    The complaint is silent regarding any allegations of intentional misstatements by the auditor defendants.   It is also silent as to any facts known by PKF Hong Kong that would contradict any knowledge obtained by PKF Hong Kong during the audits.   Indeed, all of the information cited by plaintiff to demonstrate the fraud was uncovered well after the audit work in question.

**The Causes of Action in the Amended Complaint**

The first claim against all defendants is for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.   The plaintiffs allege that CXTI disseminated materially false and misleading information and failed to disclose material facts, artificially inflating the market price of its common stock. (Comp. ¶303).   As relevant to the accountant defendants, the complaint alleges that the "Auditor Defendants each issued…false and misleading CXTI audit opinions, and fraudulent financial statements…." (Comp. ¶305).

Plaintiffs' second claim is limited to PKF New York and BDO Seidman, and alleges that PKF New York acted as a controlling person of PKF Hong Kong within the meaning of Section 20(a) of the Exchange Act. (Comp. ¶319).   Plaintiffs conclusorily state that as a result of PKF New York consulting with PKF Hong Kong regarding GAAS and requirements for securities filings, PKF New York actually directed and controlled the audits of PKF Hong Kong such that PKF New York is liable for the securities fraud. (Comp. ¶¶ 321, 324-325).

## PROCEDURAL HISTORY

This case was commenced on November 21, 2007, when the original complaint was filed against CXTI, and key management personnel. No defendant named in the original complaint appeared. On January 22, 2008, plaintiffs filed notice of Clerk's Certificate of Default as to defendant CXTI. On March 17, 2008, the plaintiffs' claim against Zhu Xiaoxin, Huang Tao, and Fu Wan Chung were voluntarily dismissed.

Following an order of appointment of lead plaintiff and counsel on March 25, 2008, unopposed motions seeking commencement of discovery were granted. A subpoena was served upon PKF New York seeking documents relating to this engagement. PKF New York produced all responsive documents to plaintiffs' attorney, which consisted of about 3,000 pages.

Having failed to locate any viable defendant with their first complaint, over a year since the commencement of the action, plaintiffs filed an Amended Complaint on March 27, 2009. The Amended Complaint added defendants PKF New York and PKF Hong Kong, along with BDO McCabe and BDO Seidman. There is no record in the docket of plaintiffs moving for leave to amend the complaint or add parties.

## ARGUMENT

### The Amended Complaint Must Be Dismissed Because None of the Allegations or Causes of Action State A Claim for Which Relief May Be Granted Against PKF New York

In evaluating a Rule 12(b)(6) motion, a district court must determine whether the "[f]actual allegations […] raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167, L. Ed. 2d 929 (2007)(internal citations omitted). The Court of Appeals has stated that Twombly does not require a universally heightened standard of fact pleading under Rule 8, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

In this action, in which securities fraud is alleged, the complaint is subject to heightened pleading requirements pursuant to Fed. R. Civ. P. 9(b) and the PSLRA. These heightened standards will be discussed in the context of the appropriate arguments below.

### POINT I.

### Plaintiffs Have Not Pled a 10(b) Claim Against PKF New York

#### A.   There are No Allegations that PKF New York Made Any Fraudulent Statements

To bring a claim against an accounting firm pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5, a plaintiff must plead that the firm made a false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the auditor's acts caused the plaintiff injury. Wright v. Ernst & Young, LLP, 152 F.3d 169,

9

177 (2d Cir. 1998). "When allegations of securities fraud are premised on misleading statements, plaintiffs must plead facts demonstrating a violation of §10(b) and Rule 10b-5(b). To state a claim for relief under these provisions, plaintiffs must allege: "(1) a material misrepresentation (or omission), (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,' (5) economic loss, and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss."" In re DRDGold Ltd. Securities Litigation, 472 F. Supp. 2d 562, 567 (S.D.N.Y. 2007), citing Dura Pharm Inc. v. Broudo, 544 U.S. 336, 341-342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)(internal citations omitted).

The plaintiffs have failed to plead that PKF New York has made a material misrepresentation, false statement, or omission, or provide any support for that belief. Plaintiffs have plead their Section 10(b) claim against all defendants generally, but in doing so failed to alleged that PKF New York has made any statement at all. The closest any allegation comes to imputing liability to PKF New York is "[t]he Auditor Defendants each issued, caused to be issued or directed the issuance of false and misleading CXTI audit opinions, and CXTI's fraudulent financial statements during the Class Period." (Comp. ¶305). However, this allegation is insufficient in light of the pleading requirement that the alleged misstatement be specifically set forth as against the appropriate defendant. Indeed, plaintiffs cannot satisfy this requirement because no statement was ever made by PKF New York to anyone regarding the financial statements of CXTI. The audit statement presumably referenced in the Amended Complaint clearly

indicates that PKF Hong Kong was the opining entity, not PKF New York. (Annexed as Exhibit B to the Kelly Declaration).

Therefore, plaintiffs' first cause of action as against PKF New York for securities laws violations should be dismissed.

**B.     PKF New York Is Not Liable for Statements Made By Other Defendants**

Plaintiffs allege that the relationship between PKF New York and PKF Hong Kong is indistinguishable.  The only factual allegations supporting of this conclusion refer to the engagement letter between PKF New York and PKF Hong Kong. (Annexed as Exhibit A to the Freire Declaration).  Although the confirming letter is clear that PKF New York is assisting PKF Hong Kong, plaintiffs attempt to obscure the distinction between the roles of PKF New York and PKF Hong Kong by asserting that PKF New York was directly engaged by CXTI. (Comp. ¶ 322).  This simply is not the case and is demonstrated by referring to the letter agreement identified by plaintiffs in the Amended Complaint.  According to the letter:

> This letter will serve to confirm the services which we will provide to PKF Hong Kong....PKF New York will consult with PKF-HK to ensure that PKF-HK professional personnel involved with the China Expert audit are knowledgeable of accounting principles generally accepted in the United States of America (US GAAP); auditing standards of the Public Company Accounting Oversight Board (United States of America)(US GAAS), and the SEC's rules and other pronouncements with respect to auditing, accounting and independence. (Exhibit D).

The letter further states:

> [PKF New York] will not perform any audit or review services on the accounts of China Expert and, therefore, will not issue an opinion on any financial statements of China Expert Entities.  [PKF New York's] services will be limited to consulting with PKF-HK on US GAAP, US GAAS and SEC related matters.

11

Notably, the letter also estimates a fee total between $10,000 and $12,000 at $450 an hour. This estimate, which suggests that PKF New York will spend approximately 25 hours with this matter, is commensurate with the limited service provided by PKF New York.

There can be no rational dispute that this letter addressed to PKF Hong Kong by PKF New York, which the plaintiffs allege delineates "the details of PKF New York's engagement by CXTI to discuss review, and direct the audits of CXTI," is an agreement between PKF Hong Kong and PKF New York, not an agreement between PKF New York and CXTI. Similarly, there can be no rational dispute that PKF New York, acting as PKF Hong Kong's consultant, was not directing the audits of CXTI's financial statements. Plaintiffs assertions to the contrary are simply false.

In any event, plaintiffs seek to impose liability upon PKF New York claiming that the two entities are "indistinguishable." However, no facts are alleged to support this bald conclusion. There are no allegations of common ownership, common office space, common employees or common actions. Indeed, the letter cited by plaintiffs makes perfectly clear the fact that PKF New York is a separate entity engaged by PKF Hong Kong. PKF New York and PKF Hong Kong had separate duties and responsibilities regarding the CXTI audit (PKF Hong Kong was to conduct the audit and render an opinion, while PKF New York was to provide consulting services regarding compliance with U.S. rules and regulations). Despite plaintiffs' statement that their allegations are based in part on publicly available information, plaintiffs' completely ignore the readily available public information on PKF International Liited's website confirming that its members, including PKF New York and PKF Hong Kong, are legally distinct

12

independent firms. Plaintiffs have no factual allegations supporting the conclusion that

PKF New York and PKF Hong Kong were in fact one and the same, so the claim against

PKF New York, premised upon the statements of PKF Hong Kong, must fail.

### C. Because Allegations of Scienter Are Entirely Lacking, Plaintiffs Claim Against PKF New York Should Be Dismissed

The PSLRA requires that a claim brought for securities fraud under federal law

set forth in the complaint factual allegations regarding the defendant's state of mind. The

PSLRA, at a minimum:

> requires that the complaint allege sufficient facts to support a "strong inference" of the requisite state of mind. 15 U.S.C. § 78u-4(b)(2). A plaintiff can fulfill this scienter requirement through one of two methods: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

In re DRDGold Ltd. Securities Litigation, 472 F. Supp. 2d 562, 570 (S.D.N.Y. 2007)

citing Kalnit v. Eichler, 264 F.3d 131, 138-139 (2d. 2001). In order to support a "strong

inference" of fraudulent intent, plaintiffs' allegations of motive must "entail concrete

benefits that could be realized by one or more of the false statements and wrongful

nondisclosures alleged." Id., at 570.

Further, in the context of securities fraud allegations, the PSLRA has expanded on

Rule 9(b)'s pleading requirements. See 15 U.S.C. § 78u-4(b). "The statute insists that

the securities fraud complaints 'specify' each misleading statement; that they set forth

facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they

'state with particularity facts giving rise to a strong inference that the defendant acted

with the requisite state of mind.'" Dura Pharms., Inc. v. Broudo 544 U.S. 336, 345, 125

S. Ct. 1627, 161 L. Ed. 2d 577 (2005). "Therefore, '[w]hile we normally draw reasonable

13

inferences in the non-movant's favor on a motion to dismiss,' the PSLRA 'establishes a more stringent rule for inferences involving scienter' because the PSLRA requires particular allegations giving rise to a strong inference of scienter." In re PXRE Group, Ltd., Securities Litigation, 2009 U.S. Dist. LEXIS 19139 (S.D.N.Y. 2009). Further, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Tellabs v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). A complaint sufficiently alleges scienter when "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 2510; see also ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

### 1.    There are No Allegations Concerning PKF New York's Scienter

Here, the Amended Complaint is entirely silent as to scienter allegations against PKF New York. There are no allegations that PKF New York stood to gain any benefit from CXTI's allegedly fraudulent SEC filings or PKF Hong Kong's allegedly fraudulent audit report. In fact, it would stretch the bounds of the imagination to conclude that PKF New York would have profited in any way from either of these actions. Certainly, the limited fee PKF New York anticipated would not support an inference of motive to commit securities fraud. Further, PKF New York had no opportunity to commit fraud. PKF New York was not involved in the conduct of PKF Hong Kong's audits. PKF New York's only role was limited to advising of U.S. accounting and auditing convention and how they should be implemented. This did not include any audit testing, third party confirmation, account reconciliation or any of the other audit procedures performed by an auditor. The performance of the audit was entirely the responsibility of PKF Hong Kong,

with PKF New York only assisting in making sure they were knowledgeable of U.S. GAAS, U.S. GAAP and SEC rules. PKF New York never had the occasion to opine on any aspect of the financial statements or audit performed by PKF Hong Kong. Any failure to follow the proper procedures or opportunity commit fraud was solely in the control of CXTI and PKF Hong Kong.

Clearly the heightened pleading requirements of the PSLRA, as set forth in <u>In re PXRE,</u> have not been met. The plaintiffs have not pled with particularity facts giving rise to a strong inference that PKF New York acted with the required state of mind. In fact, the absence of facts pleaded by the plaintiffs gives rise to a strong inference that PKF New York did not have the requisite state of mind.

### 2.    Even if the Actions of PKF Hong Kong were imputed to PKF New York, Plaintiffs Have Not Alleged Sufficient Facts to Establish Scienter on the Part of PKF Hong Kong

"It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter." <u>See</u> <u>In re Sotheby's Holdings, Inc.,</u> 2000 U.S. Dist. LEXIS 12504, 2000 WL 1234601, at *7 (S.D.N.Y. 2000); <u>see also</u> <u>In re Winstar Comm.,</u> 2006 U.S. Dist. LEXIS 7618, 2006 WL 473885, at *7 (S.D.N.Y. Feb. 27, 2006). "[A]n allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness." <u>See</u> <u>Hart v. Internet Wire, Inc.,</u> 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001) (quoting <u>Troyer v. Karcagi,</u> 476 F. Supp. 1142, 1152 (S.D.N.Y. 1979)); <u>see also</u> <u>In re Bayou Hedge Fund Litig.,</u> 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007). Even an "egregious failure to gather information will not establish 10b-5 liability as long as the defendants did not deliberately shut their eyes to the facts." <u>See</u> <u>Hart,</u> 145 F. Supp. 2d at 368-69 (internal quotation marks and citations omitted).

Where, as here, a defendant is an independent accountant, "the failure ... to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability." Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000). Similarly, "allegations of [violations of Generally Accepted Accounting Principles ("GAAP")] or accounting irregularities, standing alone, are insufficient to state a securities fraud claim" against an independent accountant. Id. "Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." Id. (citations omitted). Stated a different way, the recklessness required to hold a "non-fiduciary accountant" liable for fraud "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000).

In a recent particularly analogous case, a claim against the outside auditors was found insufficiently pled and dismissed. In In re Doral Fin. Corp. Sec. Litig., 563 F. Supp. 2d 461, 465 (S.D.N.Y. 2008), the principal issue was whether plaintiffs had sufficiently plead "recklessness" so as to satisfy the PSLRA. In that case, the plaintiff's claimed a strong inference of recklessness could be inferred from 1) the long time period over which Doral's fraud occurred; 2) the extent of Doral's fraud; and 3) PwC's alleged violations of GAAP and of Generally Accepted Auditing Standards ("GAAS") in conducting its audits of Doral. The court rejected plaintiff's position finding that in the context of the entire complaint, none of those allegations gave rise to the requisite strong inference.

This is very nearly identical to the current allegations in the Amended Complaint against PKF Hong Kong. Here, plaintiffs basically argue that fundamental audit

16

procedures required by U.S. generally accepted auditing standards ("GAAS") should have uncovered CXTI's fraud, and PKF Hiong Kong's failure to have uncovered this fraud clearly shows that the auditors deviated from GAAS. These allegations do not provide a factual basis to conclude that PKF Hong Kong knew of the fraud or knew that any of its own statements (or anybody else's) were false. Instead, these allegations that PKF Hong Kong must have deviated from the requirements of GAAS seem to support the possibility that PKF Hong Kong was negligent, much more strongly than they raise an inference of fraud. The Amended Complaint does not identify any piece of information in the possession of PKF Hong Kong that shows that PKF Hong Kong knew the allegedly false financial statements or its own audit report were fraudulent. Absent these factual allegations, the claim does not satisfy the pleading standard set forth in the PSLRA and explained in In re Doral Fin. Corp. Therefore, the claim should be dismissed.

### D.   As Nothing But a Cloaked Aiding and Abetting Claim, Plaintiffs' First Cause of Action Should be Dismissed

The Supreme Court has made it abundantly clear that there is no private aiding and abetting liability claims under the federal securities statutes. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008). Indeed, as discussed in the Stoneridge decision, prior to the enactment of the PSLRA, Congress considered whether secondary actors, like those who contract with alleged securities fraud perpetrators, should be held liable in civil actions pursuant to the securities laws. However, as noted by the Stoneridge court, Congress declined to extend liability that far, but instead invested the SEC with the sole authority to prosecute civil aiding and abetting claims. See 15 U.S.C. §78t(e). Furthermore, one of the main purposes of the PSLRA was to curtail dubious securities fraud claims against secondary and primary actors. See

Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 171 (2d Cir. 2005) (noting "the congressional intent of the PSLRA 'to deter strike suits wherein opportunistic private plaintiffs file securities fraud claims of dubious merit in order to exact large settlement recoveries.'"). Stoneridge and the PSLRA were intended to permit only meritorious claims against appropriate defendants to proceed past the pleadings stage. Stoneridge, 128 S. Ct. at 771.

This claim against PKF New York is exactly the type of tenuous claim addressed and rejected by the Stoneridge court. PKF New York made no public statements and owed no disclosure duty to any potential plaintiff. Its relationship with the underlying alleged fraud is multiple steps removed from any wrongdoing. Moreover, there are not even any allegations that PKF New York acted negligently in its duties, let alone with intent to deceive as required by the securities fraud laws. As the Supreme Court recognized, "extensive discovery and the potential for uncertainty and disruption in a lawsuit allow plaintiffs with weak claims to extort settlements from innocent companies." Stoneridge, 128 S. Ct. at 771. This is just such a case.

PKF New York was engaged to provide about 25 hours of consultation relating to compliance with proper U.S. procedures. It was anticipated that PKF New York would charge approximately $10,000 for these services. In no way was it contemplated that PKF New York was assuming responsibility for the reliability of the financial statements audited bu another firm or for a potential securities fraud claim arising out of false statements made by the other firm's client. In addition to plaintiffs' failure to plead the required facts to support this claim, it would simply be unfair to impose potential liability

2356723.1

upon a party who had no connection with the underlying fraud and who did not direct or participate in the audit.

## POINT II.

### Plaintiffs' Second Cause of Action Alleging Control Person Liability Is Not Sufficiently Pled

Section 20(a) of the Exchange Act provides: "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly induce the act or acts constituting the violation or cause of action." To establish a prima facie claim of control person liability under Section 20(a) of the Exchange Act, a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation. See 15 U.S.C. §78t(a); Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998), In re Asia Pulp & Paper Securities Litigation, 293 F. Supp. 2d 391, 395 (S.D.N.Y. 2003), Edison Fund v. Cogent Investment Strategies Fund, Ltd., 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008).

### A.    The Complaint Does Not Set Forth Factual Allegations of Control of PKF Hong Kong by PKF New York

As set forth in In re Paramalat Securities Litigation, 594 F. Supp. 2d 444, 455-56 (S.D.N.Y. 2009), "[c]ontrol of a primary violator under Section 20(a) may be demonstrated by "showing that the defendant 'possessed the power to direct or cause the

direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"

Here, plaintiffs' control person allegations hinge on the letter agreement between PKF New York and PKF Hong Kong setting forth the relationship between them. This is the only specific factual allegation addressing PKF New York's control over PKF Hong Kong. The letter is clear, however, that PKF New York would merely consult and advise, not direct the audit of PKF Hong Kong. The remaining allegations are conclusory legal assertions, which seem written to match language in case law, but do not set forth the facts necessary to support those legal conclusions. Moreover, the conclusory allegations by plaintiffs are specifically contradicted by the very document plaintiffs rely upon. The letter confirming the services PKF New York would provide to PKF Hong Kong make clear that PKF New York is acting as a consultant to PKF Hong Kong in relation to an audit that PKF Hong Kong is conducting. The letter agreement also states that PKF New York "will not perform any audit or review services on the accounts of China Expert and, therefore, will not issue an opinion on any financials statements of China Expert entities." Plainly, PKF New York, as the consultant, was not in control of PKF Hong Kong and there are no factual allegations tha PKF New York even participated in the actual audit in any meaningful fashion, much less being in control of the audit.

Therefore, absent the crucial factual allegations of actual control by PKF New York, the Control Person claim must fail.

20

**B.    The Complaint Does Not Satisfy the Scienter Pleading Requirement Regarding Control Person Liability**

Assuming plaintiffs have pled sufficient facts to establish that PKF New York controlled PKF Hong Kong, plaintiffs have nevertheless failed to allege any facts whatsoever regarding PKF New York's scienter vis-à-vis the control person claim.  As explained by Judge Koeltl in Edison Fund v. Cogent Investment Strategies Fund, Ltd., 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008):

> The weight of well reasoned authority is that to withstand a motion to dismiss a section 20(a) controlling person liability claim, a plaintiff must allege "some level of culpable participation at least approximating recklessness in the section 10(b) context." Lapin, 506 F. Supp. 2d. at 248. Any other result would seem to be at odds with the Court of Appeals' requirement that prima facie liability under section 20(a) requires that "the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person."  See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1572 (2d Cir. 1996).

Edison, 551 F. Supp. 2d at 231.[5]

Here, there are simply no factual allegations that PFK New York was, in any meaningful sense, a culpable participant in the alleged fraud supposedly perpetrated by PKF Hong Kong.  There are no allegations that PKF New York conducted any aspect of the audit or rendered any opinion about the audit.  In fact, while there are some allegations about what PKF New York was engaged to do, there are no allegations of what PKF New York actually did.  Thus, the entire Control Person Claim rests upon the agreement between PKF Hong Kong and PKF New York and as discussed above, that letter provides no support for this claim.  The only role PKF New York had was advising

---

[5] As noted by Judge Koeltl in Edison, at least one court in this district was reluctant to apply the standard as set forth by the Court of Appeals noting that it was seemingly at tension with the statute.  See In re Parmalat Securities Litigation, 474 F. Supp. 2d 547, 554 (S.D.N.Y. 2006).  However, the facts in In re Parmalat are entirely distinct in that, there, sufficient facts of control were alleged when the international association defendant could and did make determinations as to how key accounting disclosures were made.

PKF Hong Kong on U.S. GAAS, U.S. GAAP, and SEC rules, and their implementation. As set forth in the declaration of Henry A. Freire, CPA, PKF New York's services were consistent with, and limited to, the agreed-upon consulting services set forth in the engagement letter. Pursuant to the very terms of that letter, PKF New York did not verify or test any of the assertions in CXTI's financial statements and, accordingly, PKF New York did not opine on whether those financial statements were fairly presented. If PKF New York did everything set forth in the engagement letter, which is not even alleged, the most that could be concluded was that PKF New York provided information when needed, reviewed items for a narrow purpose when asked, and was available as a resource. Plaintiffs simply have not alleged any facts that suggest PKF New York was a meaningful participant in the allegedly culpable conduct.

**CONCLUSION**

For all the foregoing reasons, defendant PKF New York respectfully requests that this Court issues an order granting the present motion and dismissing the claim as against PKF New York in its entirety and any other relief the court finds just and reasonable.

Dated: White Plains, New York
       April 28, 2009

                                Respectfully submitted,

                                Wilson, Elser, Moskowitz, Edelman &
                                Dicker LLP

                        By:     _____
                                Thomas R. Manisero
                                Peter J. Larkin
                                William J. Kelly
                                *Attorneys for Defendant PKF,*
                                *Certified Public Accountants, A*
                                *Professional Corporation*
                                3 Gannett Drive
                                White Plains, New York 10604
                                (914) 323-7000
                                Fax: (914) 323-7001

23