UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Civil Division

| | |
|---|---|
| CARLOS MUNOZ, et al.,      ) <br><br> Plaintiffs,      ) <br><br> v.      ) <br><br> CHINA EXPERT TECHNOLOGY, INC.; ) <br> PKF NEW YORK, CERTIFIED PUBLIC ) <br> ACCOUNTANTS, A PROFESSIONAL CORP.; ) <br> PKF HONG KONG, CERTIFIED PUBLIC ) <br> ACCOUNTANTS; BDO MCCABE LO LTD., ) <br> CERTIFIED PUBLIC ACCOUNTANTS; ) <br> BDO SEIDMAN, LLP ) <br><br> Defendants.      ) | Case No.: 07-CV-10531 (AKH) <br> ECF |

MEMORANDUM IN SUPPORT OF
BDO SEIDMAN, LLP'S MOTION TO DISMISS

Of Counsel:

Barbara Taylor
BDO Seidman, LLP
100 Park Avenue
New York, NY 10017

June 4, 2009

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
Gary A. Orseck (*admitted pro hac vice*)
Kathryn S. Zecca (*admitted pro hac vice*)
Damon W. Taaffe
1801 K Street, NW, Suite 411
Washington, DC 20006
Telephone: (202) 775-4500
Fax: (202) 775-4510

*Counsel for BDO Seidman, LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Plaintiffs' Fraud Theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    The Claims As Against BDO Seidman . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    BDO Seidman's Role As "Filing Reviewer" . . . . . . . . . . . . . . . . . . 5

        2.    The Fraud And "Controlling Person" Allegations Against BDO Seidman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    PLAINTIFFS' SECTION 10(b) CLAIM AGAINST BDO SEIDMAN SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Plaintiffs' Section 10(b) Claim Fails Because Plaintiffs Have Failed To Identify Any Misstatement That Was Made By And Attributed To BDO Seidman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    Plaintiffs Do Not State A Claim Against BDO Seidman By Alleging That BDO Seidman Participated In A "Scheme to Defraud" . . . . . . . . . . . . . . 13

    C.    Plaintiffs Have Not Alleged The Requisite Scienter . . . . . . . . . . . . . . . . . . 14

II.    PLAINTIFFS' "CONTROLLING PERSON" CLAIM SHOULD BE DISMISSED . . . 16

    A.    Plaintiffs Fail To Allege That BDO Seidman "Controlled" BDO McCabe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    B.    Plaintiffs Fail To Allege "Culpable Participation" By BDO Seidman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

DECLARATION OF GARY A. ORSECK

    EXHIBIT A – AUDIT REPORTS SIGNED BY BDO MCCABE

    EXHIBIT B – APPENDIX K OF THE SECPS REFERENCE MANUAL

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . 17

*Automated Salvage Transp., Inc.* v. *Wheelabrator Environmental Sys., Inc.*,
    155 F.3d 59 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Barker* v. *Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir. 1986) . . . . . . . . . . . . 17

*Central Bank of Denver* v. *First Interstate Bank of Denver*,
    511 U.S. 164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dietrich* v. *Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . 15

*Edison Fund* v. *Cogent Investment Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hart* v. *Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . 15

*Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 8

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475 (SHS),
    2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002) . . . . . . . . . . . 18, 19

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) . . . . . . . . . . 8, 9

*In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444 (S.D.N.Y. 2009) . . . . . . . . . . . . . . 17

*In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL),
    2009 WL 724378 (S.D.N.Y. Mar. 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

*In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC),
    2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) . . . . . . . . . . . . . . 9, 10, 11, 12

*Nettis v. Levitt*, 241 F.3d 186 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pension Committee of University of Montreal Pension Plan v. Banc of America*,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ross v. Bolton*, No. 83 CIV. 8244 (WK), 1989 WL 80428 (S.D.N.Y. Apr. 4, 1998) . . . . . . . . 18

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 17, 18

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Steed Finance LDC v. Nomura Sec. Int'l*, No. 00 Civ. 8058 (NRB),
    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008) . . . . . . 14

*Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) . . . . . . . . . . . . . . . . . . . . 15

*United States v. Finnerty*, 533 F.3d 143 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . *passim*

## Statutes and Regulations

17 C.F.R. § 210.10-01(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Defendant BDO Seidman, LLP ("BDO Seidman"), respectfully submits this memorandum of law in support of its Motion to Dismiss the Amended Complaint.

## INTRODUCTION

As originally framed, this was a garden-variety securities fraud case brought against a fallen public company and its officers and directors. After articles appeared in the financial press raising questions about China Expert Technologies, Inc. ("CXTI") – a China-based company that traded on the NASDAQ OTC Bulletin Board – plaintiffs filed a putative shareholder class action, alleging that the company and its management violated the Securities Exchange Act.

As is practically routine in cases like this one, plaintiffs subsequently amended the complaint to add as new defendants CXTI's Hong Kong-based auditors for the relevant years, PKF Hong Kong (2003-2004), and BDO McCabe Lo (2005-2006), claiming that those two firms had issued audit reports that contained fraudulent misrepresentations concerning CXTI's financial statements. But in an effort to bring to the table some more accessible (not to mention deep-pocket) defendants, plaintiffs *also* named as new defendants two accounting firms, PKF New York and BDO Seidman, that were *never* CXTI's auditor, and that *never* issued any audit opinion (or any other public statement) on CXTI's financial statements. Plaintiffs' securities claims against these non-auditor accounting firms are squarely foreclosed by binding case law.

Defendant BDO Seidman is the United States member firm of BDO International, a world-wide network of independent, certified public accounting firms. Amended Complaint ("Cplt.") ¶ 22.[1] The amended complaint expressly alleges that it was not BDO Seidman, but rather "BDO McCabe" – the Hong Kong member firm of BDO International – that "audited CXTI's financial

---

[1] For reasons that are not apparent, the amended complaint incorrectly terms "BDO International" the "BDO Seidman Alliance." Cplt. ¶ 22.

statements for the fiscal years ended December 31, 2005 and December 31, 2006." *Id.* (emphasis added). Indeed, the only connection that BDO Seidman had, and could have had, to BDO McCabe's audits of CXTI, is what is spelled out by the rules of the Public Company Accounting Oversight Board ("PCAOB"). According to those rules, any United States accounting firm (like BDO Seidman) that is a member an international organization (like BDO International), must appoint an individual to serve as "Filing Reviewer" with respect to a public company audit performed by a "foreign associated firm" (like BDO McCabe). The PCAOB's rules specify that the Filing Reviewer's narrow role is limited to "[r]eading" the company's financial statements and "discussing" with the audit partner at the foreign associated firm any issues that may "come to the attention of the filing reviewer."

Plaintiffs propose to embroil BDO Seidman in this litigation on the theory that, by virtue of its required service as Filing Reviewer, BDO Seidman *itself* violated Section 10(b) of the Exchange Act by "direct[ing] the issuance of the false and misleading CXTI audit opinions." Cplt. ¶ 305. Plaintiffs also allege that, by serving as Filing Reviewer, BDO Seidman "acted as a controlling person of BDO McCabe" (*id.* at ¶ 311), and is thereby liable under Section 20(a) of the Exchange Act for BDO McCabe's allegedly fraudulent audit reports.

Each of these claims should be dismissed. Federal courts – most notably the Second Circuit in *Wright* v. *Ernst & Young LLP*, 152 F.3d 169 (1998) – have long held that a defendant cannot be liable under Section 10(b) for an alleged misstatement unless the defendant *made* the misstatement, and the misstatement was *attributed* to the defendant when it was made. Here, plaintiffs do not allege that BDO Seidman ever made any fraudulent misstatement, let alone one that was attributed to BDO Seidman. Plaintiffs' "controlling person" claim is likewise foreclosed because plaintiffs

2

cannot allege the requisite "control," or that BDO Seidman engaged in "culpable participation" in the alleged fraud.

## BACKGROUND

**A.    Plaintiffs' Fraud Theory**

Plaintiffs are a class of persons who purchased common stock in CXTI, a China-based technology company then traded on the NASDAQ OTC Bulletin Board, between March 31, 2006 and October 1, 2007 (the "Class Period"). Cplt. ¶¶ 1, 15.  Plaintiffs allege that, from January 2003 through March 2007, CXTI's audited financial statements reported that the company had entered into 16 government contracts, pursuant to which it recognized $132 million in revenue and accrued $33 million of accounts receivable.  *Id.* at ¶¶ 39, 41.  Allegedly, however, the vast majority of that revenue was fictitious, or else was materially mischaracterized in the audited filings. *Id.* at ¶¶ 44-48. According to the amended complaint, as details about CXTI's true financial position came to light, its share price declined from around $6.45 on July 19, 2007, to $0.56 on September 28, 2007.  *Id.* at ¶¶ 284-288.  On October 1, 2007, the SEC issued an order halting trading of CXTI's stock for two weeks, following which it closed at $0.19 per share. *Id.* at ¶¶ 290-291.

From 2003 to 2007, CXTI's annual financial statements were audited by two firms: PKF Hong Kong, which audited the financial statements for fiscal years ending December 31, 2003 and December 31, 2004 (*id.* at ¶ 17); and BDO McCabe, which audited the company's financial statements for the fiscal years ending December 31, 2005 and December 31, 2006 (*id.* at ¶ 22).  See also audit statements (Exhibit A to the Declaration of Gary A. Orseck, annexed hereto).  Plaintiffs allege that, before and during the class period, the company and its auditors issued numerous materially false statements about the company's financial condition (Cplt. ¶¶ 37-224), which

3

artificially inflated the company's stock price. Defendants allege that the "Auditor Defendants" – which plaintiffs define to include not just the actual auditors, PKF Hong Kong and BDO McCabe, but also PKF New York and BDO Seidman (*id.* at ¶ 26) – violated Section 10(b) of the Exchange Act and Rule 10b-5 by "caus[ing] to be issued or direct[ing] the issuance of the false and misleading CXTI audit opinions, and CXTI's fraudulent financial statements during the Class Period" (*id.* at ¶ 305). The Auditor Defendants allegedly "had actual knowledge of the misrepresentations and omissions of material facts set forth [in the financial statements] or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts." *Id.* at ¶ 302.

## B.    The Claims As Against BDO Seidman

Although plaintiffs lump in BDO Seidman among the list of "Auditor Defendants," the amended complaint stops critically short of alleging that BDO Seidman *actually audited* the FY 2005 and 2006 financial statements. See Cplt. ¶ 22 ("*BDO McCabe*, under the direction of BDO Seidman, LLP, audited CXTI's financial statements.") (emphasis added); *id.* ¶¶ 50, 64 (referring to the 2005 and 2006 "audit report of BDO McCabe"); compare Cplt. ¶ 17 ("PKF New York, together with PKF Hong Kong, audited CXTI's financial statements."). Plaintiffs' choice of words is hardly accidental: The publicly available audit statements (Ex. A) are signed *only* by BDO McCabe – not BDO Seidman – and BDO Seidman was never retained to provide any auditing services. Instead, BDO Seidman served the well-established – but narrowly circumscribed – role of "Filing Reviewer" for BDO McCabe. Under plaintiffs' view of the case, BDO Seidman's service as Filing Reviewer (not the performance of any auditing services, or the issuance of any audit report) is sufficient to give rise to liability under Sections 10(b) and 20(a) of the Exchange Act.

4

### 1.    BDO Seidman's Role As "Filing Reviewer"

BDO Seidman, LLP is the United States member firm of BDO International, which is a worldwide network of public accounting firms, each of which is a separate and independent legal entity. Cplt. ¶¶ 22-23; http://www.bdo.com/about. BDO Seidman's headquarters are in Chicago, and it has dozens of offices throughout the country.[2]  BDO Seidman is one of the nation's largest accounting firms, apart from the Big Four.

When a foreign member firm of BDO International, such as BDO McCabe, audits the financial statements of an SEC registrant company, BDO Seidman is required by PCAOB rules to appoint one of its auditors to serve as the "Filing Reviewer."  The responsibilities of the Filing Reviewer are spelled out in Appendix K of the SECPS Reference Manual, entitled "SECPS Member Firms With Foreign Associated Firms That Audit SEC Registrants."  SECPS § 1000.45 (Exhibit B to the Declaration of Gary A. Orseck, annexed hereto).[3]  Appendix K is designed "to obtain the assistance of SECPS member firms . . . to enhance the quality of SEC filings by SEC registrants whose financial statements are audited by foreign associated firms." *Id.* § 1000.45.01.[4]

---

[2] The amended complaint (at ¶ 23) states incorrectly that BDO Seidman is headquartered in New York.

[3] On April 16, 2003, the PCAOB adopted Rule 3400T, Interim Quality Control Standards, which incorporated by reference the AICPA's Auditing Standards Board's Statements on Quality Control Standards in effect on that date.  SECPS Appendix K thus remains in effect under the PCAOB regime.

[4] A "foreign associated firm" is defined as "a firm domiciled outside of the United States and its territories that is a member of, correspondent with, or similarly associated with an international firm or international association of firms with which the SECPS member is associated."  SECPS § 1000.45 n.1.  Like BDO Seidman, all of the largest U.S. accounting firms are member firms within an international network, and thus are likewise subject to PCAOB Filing Reviewer rules.  See www.ey.com (E&Y is a member of Ernst & Young Global Ltd); www.kpmg.com (KPMG is a member of KPMG International); www.deloitte.com (Deloitte is a member of Deloitte Touche

Appendix K provides that "[t]he procedures performed by the filing reviewer should generally include the following:

(1)     *Reading the document to be filed with the SEC* with particular attention given to compliance as to form of the financial statements (and related schedules) and auditors' report with the applicable accounting and financial reporting requirements for such filings by the SEC registrant.

(2)     *Discussing* with the audit partner-in-charge of the engagement:

(i)     the engagement team's familiarity with and understanding of the applicable U.S. auditing, accounting, financial reporting, and independence standards, including independence requirements of the SEC and the [Independence Standards Board];

(ii)     the significant differences between: (a) the accounting and financial reporting standards used in the presentation of the financial statements included or incorporated in the document to be filed with the SEC and those applicable in the U.S., and (b) the auditing and independence standards of the foreign associated firm's domicile country and those applicable in the U.S.; and

(iii)     any significant auditing, accounting, financial reporting, and independence matters that come to the attention of the filing reviewer when performing the procedures described above, including how any such matters were addressed and resolved by the audit partner-in-charge of the engagement.

(3)     *Documenting* the results of the procedures performed." (Emphasis added).

In addition to identifying what a Filing Reviewer *should* do, Appendix K also specifies what a Filing Reviewer does *not* do. The Filing Reviewer does not perform (and is not in a position to perform) any Generally Accepted Auditing Standards ("GAAS") audit procedures; nor can the Filing Reviewer offer any opinion as to whether the company's financial statements comport with Generally Accepted Accounting Principles ("GAAP"). The Filing Reviewer accordingly "does not assume any of the responsibilities of the audit partner-in-charge of the engagement or of any

---

Tohmatsu); www.pwc.com (PWC is a member of Price WaterhouseCoopers International Limited).

concurring reviewer." SECPS § 1000.45.01(a). Indeed, "[b]ecause of the limited nature of the [filing review] procedures described above, it is recognized that *the filing reviewer can not and does not assume any responsibility for detecting a departure from, or noncompliance with, accounting, auditing, and independence standards generally accepted in the U.S.*, independence requirements of the SEC and ISB, or SEC rules and regulations." *Id.* (emphasis added). For these reasons, "[t]he procedures performed by the filing reviewer described above do not relieve the audit partner-in-charge of the engagement of any of the responsibilities for the performance of the audit of, and the report rendered by the foreign associated firm on, the financial statements included in the document to be filed with the SEC." *Id.*

With respect to BDO McCabe's audits of CXTI's fiscal year 2005 and 2006 financial statements, the BDO Seidman Filing Reviewer was Adam Brown. Cplt. ¶¶ 315-318.

## 2. The Fraud And "Controlling Person" Allegations Against BDO Seidman

The claims plaintiffs assert against BDO Seidman all arise from its role as Filing Reviewer on the BDO McCabe audit engagements with CXTI.

In Count I, plaintiffs contend that BDO Seidman is *directly* liable for the two allegedly false audit opinions that were signed by BDO McCabe. By defining the term "Auditor Defendants" to include BDO Seidman – notwithstanding that plaintiffs nowhere allege that BDO Seidman actually audited CXTI's financial statements – the amended complaint claims that BDO Seidman violated Section 10(b) of the Exchange Act by "issu[ing], caus[ing] to be issued or direct[ing] the issuance of the false and misleading CXTI audit opinions, and CXTI's fraudulent financial statements during the Class Period." *Id.* at ¶ 305.

7

Next, in Count II, plaintiffs allege that even if BDO Seidman is not *directly* liable under Section 10(b) for BDO McCabe's allegedly fraudulent audit opinions, it is *secondarily* liable as a "controlling person" of BDO McCabe under Section 20(a) of the Exchange Act. According to plaintiffs, BDO Seidman "exercised direct control over the audits of CXTI and had the ability to prevent the issuance of the false and misleading financial statements or to cause the false statements . . . to be corrected" (*id.* at ¶ 329), and it is therefore liable for BDO McCabe's alleged violations of Section 10(b) (*id.* at ¶ 333).

## ARGUMENT

A motion to dismiss should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nettis* v. *Levitt*, 241 F.3d 186, 191 (2d Cir. 2001) (quotation marks and citations omitted). In assessing the sufficiency of a complaint under Rule 12(b)(6), the court may consider "the face of the complaint" (*Automated Salvage Transp., Inc.* v. *Wheelabrator Environmental Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998)), as well as orders and other matters of public record (*Taylor* v. *Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). In addition, the court may consider documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit, including those cited in the complaint. *Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The court may also consider documents required to be filed with the SEC. *Id.*

Although a court generally accepts as true the facts alleged in the complaint, it "need not feel constrained to accept as truth" allegations "that are contradicted . . . by facts of which the court may take judicial notice." See *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (citing *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

Moreover, "[t]he court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *Id.* at 404.

I.    **PLAINTIFFS' SECTION 10(b) CLAIM AGAINST BDO SEIDMAN SHOULD BE DISMISSED**

To state a claim under Section 10(b) and Rule 10b-5 based on a material misrepresentation or omission, "a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996). Plaintiffs' Section 10(b) claim against BDO Seidman is based on BDO McCabe's audit opinions on CXTI's 2005 and 2006 financial statements. See Cplt. ¶ 22. Plaintiffs do *not* allege that BDO Seidman issued either of these audit opinions; instead, they assert that BDO Seidman merely *assisted* CXTI's outside auditor, BDO McCabe. Long-established precedents, including the Supreme Court's seminal decision in *Central Bank of Denver* v. *First Interstate Bank of Denver*, 511 U.S. 164 (1994), and the Second Circuit's holdings in *Wright* v. *Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) and *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007), foreclose that theory, and the claim therefore should be dismissed.

A.    **Plaintiffs' Section 10(b) Claim Fails Because Plaintiffs Have Failed To Identify Any Misstatement That Was Made By And Attributed To BDO Seidman**

1. In *Central Bank*, the Supreme Court held that there is no cause of action for aiding and abetting a violation of Section 10(b) and Rule 10b-5, which "prohibit[] only the *making* of a material misstatement (or omission)." 511 U.S. at 177 (emphasis added). Applying *Central Bank*, the Second Circuit in *Wright* dismissed a Section 10(b) claim against an auditor based on an allegedly false press release that was not made by, or attributed to, the auditor. The Court held that it was not

9

sufficient to allege that Ernst & Young had "provided false and misleading advice" to the issuer, or that it had "'signed-off' or approved the financial information within th[e] press release." 152 F.3d at 172. Nor did it matter whether "the market understood the press release as an implied statement by Ernst & Young that the financial information contained therein was accurate." *Id.* As the Second Circuit explained, "if *Central Bank* is to have any real meaning, a defendant must actually *make* a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Id.* at 175 (emphasis added) (quoting *Shapiro* v. *Cantor*, 123 F.3d 717, 720 (2d Cir. 1997). Moreover, because Section 10(b) requires a showing that the plaintiff *relied* on the defendant's misstatement, "the misrepresentation must be attributed to *that specific actor* at the time of public dissemination." *Id.* at 175 (emphasis added).

In light of *Central Bank*, the Court held, "accountants . . . may no longer be held primarily liable under § 10(b) for mere knowledge and assistance in the [alleged] fraud." *Id.* at 176. See also *Shapiro*, 123 F.3d at 720 ("Allegations of 'assisting,' 'participating in,' 'complicity in' and similar synonyms . . . all fall within the prohibitive bar of *Central Bank*."); *United States* v. *Finnerty*, 533 F.3d 143, 150 (2d Cir. 2008) (unless public's "understanding was based on a statement or conduct by [defendant], he did not commit a primary violation of § 10(b)"); *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL), 2009 WL 724378, *6 (S.D.N.Y. Mar. 17, 2009) ("the misrepresentation must be attributed to the specific actor at the time of public dissemination") (quoting *Wright*, 152 F.3d at 175).

The Second Circuit recently reaffirmed this principle in *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147 (2007). In that case, plaintiffs sought to hold Deloitte & Touche liable under Section

10

10(b) for its role in the drafting of its audit client's quarterly financial filings with the SEC. Plaintiffs pointed to a federal regulation, 17 C.F.R. § 210.10-01(d), which requires auditors to review interim financial statements. The Court, relying on *Wright*, affirmed the district court's dismissal of the claim: "[The financial reports] did not purport to be audited by Deloitte, did not contain an audit opinion by Deloitte, and were not attributed to Deloitte when they were disseminated. Under *Central Bank*, Deloitte is not liable for merely assisting in the drafting and filing of the quarterly statements." *Lattanzio*, 476 F.3d at 154 (*citing Wright*, 152 F.3d at 174). Further, rejecting plaintiffs' claim that the federal regulation "supports an understanding among the investing public" that Deloitte reviewed the financial statements at issue (*id.* at 155), the Court made clear that "[u]nless the public's understanding is based on the accountant's articulated statement, the source for that understanding – whether it be a regulation, an accounting practice, or something else – does not matter." *Id.*

2.    Plaintiffs' fraud claim against BDO Seidman is, in every relevant respect, indistinguishable from the claims that the Second Circuit rejected in *Wright* and *Lattanzio*. Just as in those cases, plaintiffs fail to identify any alleged misstatement that was made by or attributed to BDO Seidman. To the contrary, the amended complaint freely concedes that it was *BDO McCabe* that "audited CXTI's financial statements for the fiscal years ended December 31, 2005 and December 31, 2006" (Cplt. ¶ 22), and it was *BDO McCabe* that issued the two audit opinions on which plaintiffs base their fraud claim against BDO Seidman. See *id.*, ¶¶ 50; 64; Ex. A. Under these authorities, BDO Seidman cannot be held liable for the alleged misstatements contained in the audit opinions of BDO McCabe. See, *e.g.*, *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000

11

WL 1234601, at *5-*6 (S.D.N.Y. Aug. 31, 2000) (dismissing Section 10(b) claim against subsidiary where alleged misstatements were attributed to parent corporation).

Plaintiffs allege, however, that BDO Seidman's Adam Brown "reviewed" and "commented on the revenue recognized in CXTI financial statements" (Cplt. ¶ 316); "gave . . . directions to BDO McCabe as to how to test, record and report revenue" (*id.* at ¶ 315(a)); and referred to BDO McCabe's audit workpapers as "our workpapers" (*id.* at ¶ 315(a)). See also ¶¶ 315-318 (cataloguing Brown's "comments," "question[s]," and "directions" on accounting issues that were brought to his attention). But that is *exactly* what the plaintiffs in *Wright* said about Ernst & Young and what the plaintiffs in *Lattanzio* said about Deloitte & Touche. See *Wright*, 152 F.3d at 172 (Ernst & Young gave "advice" to the client and "signed-off" before the press release issued); *Lattanzio*, 476 F.3d at 152 (Deloitte reviewed the financial statements before they were submitted to the SEC). Regardless how many documents Mr. Brown allegedly reviewed, or how many comments he allegedly provided, his performance as a Filing Reviewer cannot, as a matter of law, constitute the making of an actionable misstatement. "Anything short of [making a misstatement] is merely aiding and abetting, and *no matter how substantial that aid may be*, it is not enough to trigger liability under Section 10(b)." *Wright*, 152 F.3d at 175 (quoting *Shapiro*, 123 F.3d at 720) (emphasis added). That is enough to dismiss Count I.

3. If the law were otherwise, then the salutary purposes of the PCAOB regulation and Appendix K would be completely undermined. Appendix K provides that a Filing Reviewer should generally "[r]ead[]" the document to be filed with the SEC (SECPS § 1000.45.01(a)(1)), "[d]iscuss[]" various issues with the audit partner (*id.* §§ 1000.45.01(a)(2)(i) and (ii)), and raise "any significant auditing, accounting, financial reporting, and independence matters that come to [his]

12

attention" (*id.* § 1000.45.01(a)(2)(iii)). According to the plaintiffs, that is precisely what Mr. Brown did here. See, *e.g.*, Cplt. ¶¶ 315 (a)-(c) (alleging that Mr. Brown "explained" proper accounting procedure, "questioned" the manner in which BDO McCabe was confirming the accuracy of invoices, and "reviewed and commented on the revenue recognized" by BDO McCabe); *id.* at ¶¶ 317, 318 (detailing email and memoranda between Brown and BDO McCabe accountant regarding issues under GAAP and GAAS). Appendix K makes clear that these functions are designed merely to "provide assistance" to the foreign firm performing the audit. SECPS § 1000.45.01(a). And "assistance" – whether in the form of reviewing, advising, discussing, or general kibbitzing – simply cannot give rise to liability in the wake of *Central Bank*.

In short, the audit opinions challenged by plaintiffs were issued by and attributed to BDO McCabe. They were not the opinions of, and were not attributed to, BDO Seidman. Under *Central Bank* and its progeny, plaintiffs have failed to allege that BDO Seidman has made an actionable misstatement, and they have therefore failed to state a claim under Section 10(b).

### B.    Plaintiffs Do Not State A Claim Against BDO Seidman By Alleging That BDO Seidman Participated In A "Scheme to Defraud"

Plaintiffs appear to try to fashion a theory of Section 10(b) liability that does not require proof that BDO Seidman made a misstatement at all. They allege that BDO Seidman (as well as BDO McCabe, PKF Hong Kong, and PKF New York) are liable under Section 10(b) because they "employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct . . . in an effort to assure investors of CXTI's value and performance and continued substantial growth." Cplt. ¶ 301. Plaintiffs cannot state a claim against BDO Seidman on such a theory.

13

Just last year, the Supreme Court held that plaintiffs cannot use creative pleading to recast aiding-and-abetting as a primary violation of Section 10(b) under a "scheme liability" theory. In *Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008), the Court considered whether an issuer's business partners, which had entered into transactions that allegedly enabled the issuer's misleading statements – but which *themselves* did not actually make any public misstatement attributed to them (*id.* at 769) – are primarily liable under Section 10(b) on the theory that they "further[ed] a scheme to misrepresent . . . revenue." *Id.* at 770. The Court rejected that claim as an effort to plead around the holding in *Central Bank*. Rejecting "what some courts call 'scheme liability'" (*id.*), the Court held that "Petitioner's view of primary liability makes any aider and abettor liable under § 10(b) if he or she committed a deceptive act in the process of providing assistance." *Id.* at 771. "Were we to adopt [the suggested] construction of § 10(b)," the Court explained, "it would revive in substance the implied cause of action against all aiders and abettors except those who committed no deceptive act in the process of facilitating the fraud." *Id.*

The Supreme Court's holding in *Stoneridge* therefore precludes an action seeking to hold a defendant liable under Section 10(b) for the misstatement of another, on the theory that the defendant helped to enable the misstatement by participating in a "scheme" to defraud. As the Court made clear, liability attaches only to those who make the public statements relating to a security, not the transactions or effort behind those public statements. *Id.* at 770-71.

## C.    Plaintiffs Have Not Alleged The Requisite Scienter

"The [PSLRA] insists that securities fraud complaints specify each misleading statement; that they set forth the facts on which a belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the

14

required state of mind." *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005) (quotation marks and alterations omitted). The Supreme Court has explained that "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007). "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id* at 323-324.

Even if plaintiffs' Section 10(b) claim were not otherwise precluded for the reasons given above, the claim must be dismissed as to BDO Seidman because plaintiffs fail to allege facts sufficient to support a "strong inference" of scienter. All of the alleged "directing," "questioning," and "reviewing" by BDO Seidman were performed by BDO Seidman in its role as Filing Reviewer. The most that could be inferred from the amended complaint about BDO Seidman's state of mind is that it took that process seriously, asked pointed questions, and tried in good faith to discharge his responsibilities by apprising BDO McCabe of SEC filing requirements. Even an "egregious failure to gather information will not establish 10b-5 liability as long as the defendants did not deliberately shut their eyes to the facts." *Hart* v. *Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-369 (S.D.N.Y. 2001) (quotation marks and citation omitted); see also *id.* at 368 ("an allegation that a defendant merely 'ought to have known is not sufficient to allege recklessness"). The amended complaint contains no facts suggesting that BDO Seidman consciously avoided learning of fraud, nor can it support an inference that BDO Seidman counseled BDO McCabe to obfuscate or misrepresent

CXTI's financial condition. Indeed, it contains little more than boilerplate allegations that parrot the statutory language. See Cplt. ¶¶ 298-305.

Neither can the facts alleged support a claim that BDO Seidman acted recklessly; at worst, the allegations raise the charge that BDO Seidman negligently failed to notice anomalies in the financial statements it reviewed. But the law is plain that "the failure . . . to identify problems with . . . accounting practices does not constitute reckless conduct sufficient for § 10(b) liability." *Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). "Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." *Id.* (citations omitted). Dismissal is therefore warranted on the independent ground that plaintiffs fail adequately to plead scienter.

## II.    PLAINTIFFS' "CONTROLLING PERSON" CLAIM SHOULD BE DISMISSED

In Count II, plaintiffs claim that, if BDO Seidman is not *directly* liable under Section 10(b), it is at least *secondarily* liable under Section 20(a) of the Exchange Act for the alleged securities violations of BDO McCabe – its fellow member firm of BDO International. Plaintiffs assert that BDO Seidman "had the power to influence and control, and did in fact influence and control, directly BDO McCabe's audits of CXTI, including the manner of the audit, the adherence or non-adherence to GAAS, and the content and dissemination of CXTI's financial statements filed with the SEC." Cplt. ¶ 313. BDO McCabe, in turn, allegedly "acted under the direction of BDO Seidman in conducting the audits of CXTI." *Id.* at ¶ 24. Because "BDO Seidman . . . exercised direct and supervisory involvement in the day-to-day audits of CXTI" (*id.* at ¶ 331), the amended complaint concludes, it is "liable pursuant to Section 20(a) of the Exchange Act as [it] culpably participated

16

in the fraud" (*id.* at ¶ 333). Under the governing case law, however, plaintiffs' conclusory assertions do not meet the Section 20(a) pleading standard.

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (citing *SEC* v. *First Jersey Securities, Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)). Even assuming that plaintiffs have adequately alleged a primary violation of Section 10(b) by BDO McCabe, they fail by a longshot to allege facts sufficient to state a claim that BDO Seidman (1) exercised the requisite "control" of BDO McCabe, or (2) was a "culpable participant" in the fraud.

### A.    Plaintiffs Fail To Allege That BDO Seidman "Controlled" BDO McCabe

Courts define "control" under Section 20 as "possess[ion] [of] the power to direct or cause the direction of the management and policies of a person." *Pension Committee of University of Montreal Pension Plan* v. *Banc of America*, 592 F. Supp. 2d 608, 637 n.204 (S.D.N.Y. 2009) (quotation marks and citation omitted); accord *In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444, 455-56 (S.D.N.Y. 2009). "[T]he mere ability to persuade," courts emphasize, is not control. *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (quoting *Barker* v. *Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir. 1986)).

Actual "control" is an exacting standard, and courts do not hesitate to reject Section 20 claims that fail to allege that the putative "controller" really did have the ability to *direct* (as opposed to merely influence) the controllee's actions. Thus, in *In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ 9475 (SHS), 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002), the court dismissed a claim that the

17

German entity KfW was a "controlling person" of Deutsche Telekom, which had allegedly issued

false statements in a prospectus. Plaintiffs alleged that KfW "had the power to influence and control

. . . the decision-making of Deutsche Telekom, including the content and dissemination" of the

prospectus; that KfW had "unlimited access" to the prospectus "prior to and/or shortly after these

statements were issued"; and that KfW "had the ability to prevent the issuance of the statements or

cause the statements to be corrected." *Id.* at *6. Such allegations, the court held, "simply restate the

legal standard for control person liability," and "[c]onclusory allegations that KfW 'controlled'

Deutsche Telekom are insufficient for the assertion of liability" under Section 20(a). *Id.* at *7.[5]

The Court reached a similar conclusion in *In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp.

2d 152 (D. Mass. 2002). Plaintiffs in that case alleged that KPMG Bedrijsrevisoven – the Belgian

member firm of KPMG International – violated Section 10(b) by issuing unqualified audit opinions

on the allegedly false and misleading financial statements of a Belgian software corporation. *Id.* at

156. Plaintiffs sought to tag KPMG U.S. and KPMG UK – two other member firms of KPMG

International – as controlling persons because they "substantially participated in conducting audits

published under KPMG Belgium's name." *Id.* at 175. While allowing the underlying claim against

KPMG Belgium to proceed, the court dismissed the "controlling person" claims as to the other two

defendants. It held that the allegation that KPMG U.S. and KPMG UK "substantially participated"

---

[5]    See also *In re Blech Sec. Litig.*, 961 F. Supp. 569, 587 (S.D.N.Y. 1997) (dismissing claim that Bear Stearns, the broker for another defendant accused of fraud, was a controlling person, because "an exercise of influence is not 'actual control'"); *Ross v. Bolton*, No. 83 CIV. 8244 (WK), 1989 WL 80428, at *4 (S.D.N.Y. Apr. 4, 1998) ("That Bear Stearns *affected* Bolton & Co.'s actions . . . does not mean [] that it *directed* those actions.") (emphasis in original). Cf. *SEC v. First Jersey*, 101 F.3d at 1472-73 (defendant who, during relevant time period, was owner, director, and president could be held liable as controlling person); *Steed Finance LDC v. Nomura Sec. Int'l*, No. 00 Civ. 8058 (NRB), 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001).

in KPMG Belgium's audits "does not come close to [the] requirement that 'the alleged control person actually exercise[] control over the general operations of the primary violator." 230 F. Supp. 2d at 175. Second, regardless of the level of the defendants' participation in the audit, the plaintiffs failed to allege that "KPMG U.S. or KPMG UK ever 'actually exercise[d] control' over KPMG Belgium in the issuance of audit reports." *Id.* at 176.

Plaintiffs' controlling person claim fails the same test. As in *Lernout & Hauspie*, plaintiffs conclusorily assert that BDO Seidman "exercised direct and supervisory involvement" with BDO McCabe's audits of CXTI's financial statements. Cplt. ¶ 331. But merely asserting (as plaintiffs do) that BDO Seidman was "involved" in the audits "does not come close" to the requirement that BDO Seidman "actually exercise[d] control over the general operations" of BDO McCabe. *Lernout & Hauspie*, 230 F. Supp. 2d at 175. Indeed, the very first sentence of Appendix K emphasizes that "SECPS member firms that are members of, correspondents with, or similarly associated with international firms or international associations usually do not control their international organization or individual foreign associated firms." SECPS § 1000.45.01. Aside from reciting, with no support, that BDO Seidman had "control" over BDO McCabe (Cplt. ¶¶ 329, 330, 331), and "directed" it to take certain actions (*id.* at ¶¶ 316, 318) – the very kind of allegation that was held insufficient in *Deutsche Telekom* – plaintiffs allege only that BDO Seidman "review[ed]," "edited," "consulted" and "questioned." But the ability to "give counsel is not the same thing as 'control.'" *Dietrich* v. *Bauer,* 76 F. Supp. 2d 312, 333-334 (S.D.N.Y. 1999). And while such efforts may arguably constitute "substantial[] participat[ion]" (*Lernout & Hauspie*, 230 F. Supp. 2d at 175), they plainly do not amount to "direction" or "control." 230 F. Supp. 2d at 176.

**B.    Plaintiffs Fail To Allege "Culpable Participation" By BDO Seidman**

Finally, even if plaintiffs' controlling person claim could survive plaintiffs' failure to allege the requisite control, the claim is defective for the independent reason that the amended complaint is devoid of any allegation that BDO Seidman acted with scienter.  As a court in this District recently explained:

> The weight of well-reasoned authority is that to withstand a motion to dismiss a section 20(a) controlling person liability claim, a plaintiff must allege "some level of culpable participation at least approximating recklessness in the section 10(b) context." *Lapin*, 506 F. Supp. 2d at 248.  Any other result would seem to be at odds with the Court of Appeals' requirement that prima facie liability under section 20(a) requires that "the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlling person." See *SEC* v. *First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

*Edison Fund* v. *Cogent Investment Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008). As explained above (at 15-16), the amended complaint contains no allegation against BDO Seidman that could raise a "strong inference" of recklessness; quite the contrary, it alleges only that Mr. Brown "explained" proper procedures, "questioned" BDO McCabe's methodology, and "requested" additional information.  Cplt. §§ 315 (a)-(c).  Even if proved, none of those allegations supports a claim of culpability "approximating recklessness" (*Edison Fund*, 551 F. Supp.2d at 231); rather, the allegations do no more than describe what a Filing Reviewer is required to do.

20

## CONCLUSION

For the foregoing reasons, plaintiffs' claims against BDO Seidman should be dismissed with prejudice.

Respectfully submitted,

Of Counsel:

Barbara Taylor
BDO Seidman, LLP
 100 Park Avenue
New York, NY 10017

June 4, 2009

Gary A. Orseck (*admitted pro hac vice*)
Kathryn S. Zecca (*admitted pro hac vice*)
Damon W. Taaffe
ROBBINS, RUSSELL, ENGLERT, ORSECK,
    UNTEREINER & SAUBER LLP
1801 K Street, NW, Suite 411
Washington, DC 20006
Telephone: (202) 775-4500
Fax: (202) 775-4510

*Counsel for BDO Seidman, LLP*

21