**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**Civil Division**

**CARLOS MUNOZ, et al.,**

**Plaintiffs,**

**v.**

**CHINA EXPERT TECHNOLOGY, INC.; PKF NEW YORK, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORP.; PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS; BDO MCCABE LO LTD., CERTIFIED PUBLIC ACCOUNTANTS; and BDO SEIDMAN, LLP**

**Defendants.**

**Case No.: 07-CV-10531 (AKH)**
**ECF**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**BDO SEIDMAN, LLP'S MOTION TO DISMISS**

Of Counsel:

Barbara Taylor
BDO Seidman, LLP
100 Park Avenue
New York, NY 10017

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
Gary A. Orseck (*admitted pro hac vice*)
Kathryn S. Zecca (*admitted pro hac vice*)
Damon W. Taaffe
1801 K Street, NW, Suite 411
Washington, DC 20006
Telephone: (202) 775-4500
Fax: (202) 775-4510

*Counsel for BDO Seidman, LLP*

July 31, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

I. BDO SEIDMAN MADE NO MISSTATEMENT .......... 4

A. BDO Seidman Made No Statement, Much Less An Actionable Misstatement .......... 4

1. The Complaint alleges, at most, mere participation in the audit .......... 4

2. Mere participation in an audit is insufficient, as a matter of law, to give rise to liability for the auditor's statement .......... 5

B. Appendix K Does Not Create An "Implicit" Misstatement on the Part of the Filing Reviewer .......... 8

II. PLAINTIFFS HAVE FAILED TO PLEAD SCIENTER .......... 10

A. Plaintiffs Fail to Allege Facts Showing Sufficient Motive .......... 10

B. Plaintiffs Allege No Facts Constituting Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness .......... 11

III. THE COURT SHOULD NOT GIVE PLAINTIFFS LEAVE TO AMEND THE COMPLAINT .......... 12

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) .......... 12

*Billard v. Rockwell Int'l Corp.*, 683 F.2d 51 (2d Cir. 1982) .......... 13

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) .......... 2, 7, 13

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) .......... 12

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......... 8

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) .......... 2, 7

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) .......... 1

*In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003) .......... 12

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) .......... 2, 6, 7

*Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) .......... *passim*

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .......... 10

*Papasan v. Allain*, 478 U.S. 265 (1986) .......... 1

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129 (2d Cir. 1993) .......... 13

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) .......... 3

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) .......... 3, 10

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) .......... 7

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761 (2008) .......... 5

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1999) .......... *passim*

*Zucker v. Sasaki*, 963 F. Supp. 301 (S.D.N.Y. 1997) .......... 11

**Statutes**

15 U.S.C. § 78u-4(b)(2) .......... 10

**Other Authorities**

AU § 311.02 .......... 9

AU § 543 .......... 9, 10

SECPS § 100.45.01(a) .......... 8, 9

http://www.pcaob.org/Registration/registered_Firms.pdf .......... 9

## SUMMARY OF ARGUMENT

In considering a motion to dismiss, a court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In urging this Court to save their one remaining claim from dismissal, however, plaintiffs offer nothing more than unsupported assertions – often flatly contradicted by their own Amended Complaint ("Complaint") – which they attempt to parlay into "question[s] of fact" (Opp. 14) that warrant protracted and expansive discovery.

Nowhere do plaintiffs take greater liberty with the pleadings than in their assertions that "BDO Seidman together with BDO McCabe audited CXTI's 2005 and 2006 annual reports" (Opp. 19); *id.* at 8 (asserting that CXTI's annual reports "contained the audit opinions of BDO Seidman and BDO McCabe"); *id.* at 23 (alleging that "BDO Seidman acted recklessly with regard to the accuracy of its audit reports."). Simply reciting that BDO Seidman issued the audit reports does not suffice to state a claim, particularly when contradicted by the Complaint itself, which alleges that "*BDO McCabe* . . . audited CXTI's financial statements" (Cplt. ¶ 22 (emphasis added)) and refers to the "audit report[s] of *BDO McCabe*." *Id.* ¶¶ 50, 64 (emphasis added). Plaintiffs could not have alleged otherwise, because the audit opinions in question (attached as Exhibit A to the Orseck Declaration) were issued and signed by BDO McCabe – a separate, independent accounting firm based in Hong Kong – and *made no mention whatever* of BDO Seidman.

Faced with the need to identify a *false* statement in the absence of *any* statement by BDO Seidman, plaintiffs suggest that BDO Seidman "substantially participated in the preparation of

China Expert's fraudulent financial statements" (Opp. 6), and that BDO McCabe's audit opinion therefore should be ascribed to BDO Seidman. But the Second Circuit has squarely foreclosed that theory. *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 155 (2d Cir. 2007) (in *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1999), the Second Circuit "declined to adopt a 'substantial participation' test for liability under § 10(b), instead holding that a party can incur liability only if a misstatement is attributed to it at the time of dissemination."). The single Second Circuit case that plaintiffs cite for the contrary proposition, *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001), long predates *Lattanzio*'s affirmation of *Wright*, and even plaintiffs' other cases recognize that *Scholastic* is distinguishable because "it failed to cite either *Wright* or *Central Bank* – and it gave scant explanation of its holding." *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 331 (S.D.N.Y. 2004).

Equally unavailing are plaintiffs' empty speculations about what "the investing public knows" (Opp. 7), or what "is implicit to investors" (Opp. 8), about BDO Seidman's supposed role in the audit. Undoubtedly because BDO Seidman did *not* participate in the audit (let alone sign an audit opinion), the Complaint is utterly silent about how the public could have known that BDO Seidman was the auditor. In any event, the law is clear that alleging that there was a "[p]ublic understanding that an accountant [wa]s at work behind the scenes does not create an exception to the requirement that an actionable misstatement be made by the accountant." *Lattanzio*, 476 F.3d at 155 (citing *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177 (1994).

Finally, plaintiffs' allegations of scienter are deficient as a matter of law. Their accusation that BDO Seidman's work amounted to "no audit at all" (Opp. 20) is exactly right – but it is hardly incriminating when directed against a party that is not, and never was, CXTI's

auditor. Likewise insufficient is plaintiffs' theory that BDO Seidman had a "motive" to defraud CXTI's investors (and therefore curry favor with CXTI) as part of a strategy to win future audit fees from clients "in the rapidly burgeoning economy of China." Opp. 24. The Complaint contains no such suggestion and, in any case, courts in the Southern District have made it clear that "a showing that an auditor merely wished to retain a client does not suffice to show motive." *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 382 (S.D.N.Y. 2006).

Every fact actually alleged in the Complaint – as opposed to asserted without support in plaintiffs' opposition papers – underscores the basic truth that, pursuant to explicit PCAOB requirements, BDO Seidman offered guidance to BDO McCabe while serving as the filing reviewer. The Complaint does not allege that BDO Seidman performed *any* of the actual audit work, nor was it engaged to do so. This fact is confirmed by the audit opinions themselves, which were signed only by BDO McCabe. Plaintiffs have pled *not one allegation* that calls this fact into question, but have nonetheless attempted to embroil BDO Seidman in this litigation. The Court should not reward that effort, and should dismiss the Complaint with prejudice.

**ARGUMENT**

Plaintiffs' Opposition identifies no facts sufficient to allege misstatement by BDO Seidman, nor does it offer any cogent or actionable theory of scienter. Each deficiency is independently fatal to plaintiffs' claim (*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996)), and the Complaint should be dismissed. Additionally, because any proposed amendment would be futile, the Complaint against BDO Seidman should be dismissed with prejudice.

## I. BDO SEIDMAN MADE NO MISSTATEMENT

Plaintiffs offer two related theories of possible misstatements by BDO Seidman. They first contend that, by advising BDO McCabe in the course of BDO McCabe's audit, BDO Seidman "participated" in the audit and thus should be deemed to have made the statements in BDO McCabe's audit reports. Opp. 6. In the alternative, they argue that because of BDO Seidman's "filing reviewer" duties under Appendix K, "it is implicit to investors that BDO Seidman participated in the conduct of the audit and in making the audit opinion signed by BDO McCabe." Opp. 8. The allegations in the Complaint, however, are insufficient to sustain either the "actual" or "implicit" theory of misstatement.

### A. BDO Seidman Made No Statement, Much Less An Actionable Misstatement

#### 1. The Complaint alleges, at most, mere participation in the audit

The weight of plaintiffs' Opposition is spent attempting to overcome a simple but dispositive fact: BDO Seidman made no statement whatsoever with respect to CXTI. See Orseck Declaration Ex. A (audit reports do not mention BDO Seidman). Despite plaintiffs' suggestions to the contrary in their Opposition (see, *e.g.*, Opp. 17), the Complaint contains no allegation that BDO Seidman drafted, issued, or signed the audit report, and it does not identify any audit work performed by BDO Seidman. Nor, to be sure, is there anything in the Complaint to support plaintiffs' assertions that the "financial statements [were] certified by BDO Seidman" (Opp. 2), or that CXTI's annual report "contained the audit opinions of BDO Seidman and BDO McCabe" (Opp. 8). To the contrary, the Complaint explicitly identifies the audit reports as being issued by BDO McCabe. (¶¶ 50, 64), and explicitly identifies BDO McCabe – and BDO McCabe alone – as CXTI's auditor. See, *e.g.*, ¶ 288 (referring to dismissal of "auditor, BDO McCabe").

Putting to one side the exaggerated claims first articulated in plaintiffs' Opposition, all the Complaint actually alleges is that BDO Seidman "participated" in the audit (Cplt. ¶ 23); "directed" and "gave instructions to" BDO McCabe during the audit (*id.* ¶ 24).[1]

**2. Mere participation in an audit is insufficient, as a matter of law, to give rise to liability for the auditor's statement**

Even taking the allegation of "substantial participation" in the audit as true – which we must, in the context of a motion to dismiss[2] – such conduct does not constitute an actionable misstatement. In *Wright*, the Second Circuit explicitly rejected the "substantial participation" test for securities fraud liability (152 F.3d at 174), and instead embraced the "bright line" test, under which "review and approval of documents containing fraudulent statements is not actionable under Section 10(b) because one must *make* the material misstatement or omission in order to be a primary violator." (*id.* at 174-175). See also BDO Seidman's Opening Memo at 9-10. More recently, in *Lattanzio*, 476 F.3d at 155, the Second Circuit re-emphasized that it meant exactly what it said in *Wright*, explaining that it had "declined to adopt a 'substantial participation' test for liability under § 10(b), instead holding that a party can incur liability only if a misstatement is attributed to it at the time of dissemination." Plaintiffs try to distinguish those cases on two grounds. Neither succeeds.

---

[1] Plaintiffs attempt to add some teeth to their allegations of participation by arguing that BDO Seidman's involvement was "necessary" for BDO McCabe's audit opinion to be issued (Opp. 13-14). This theory of liability, however, was rejected by the Supreme Court in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761, 771 (2008). See BDO Seidman's Opening Memo at 14.

[2] Plaintiffs trumpet the fact that defendants' motions to dismiss do not "contest the detailed allegations in the Complaint demonstrating that CXTI's financial statements were wholly fraudulent" (Opp. 3), implying that defendants thus concede the point. BDO Seidman certainly does not – but a motion to dismiss is not the vehicle to litigate questions of fact.

a. *First*, plaintiffs argue that, because the financial results in question in *Wright* and *Lattanzio* were not audited, "everyone knew the misleading statements clearly were not made by the respective defendant accountants." Opp. 7. That is simply untrue: In both cases, the *central allegation* was that investors understood that accountants had approved the misleading statements. In *Wright*, the court rejected the plaintiff's claim that the market viewed the company's press release "as an implied assertion by [the auditor] that [the company's] financial statements were accurate." 152 F.3d at 176. Likewise, in *Lattanzio*, plaintiffs argued that "an investor (understanding Deloitte's regulatory obligation [to review a company's financial statements]) would construe Deloitte's silence as its imprimatur." 476 F.3d at 155. The Second Circuit flatly dismissed the relevance of what investors might infer from the auditor's involvement: "Unless the public's understanding is based on the accountant's articulated statement, the source for that understanding – whether it be a regulation, an accounting practice, or something else – does not matter." *Id.* at 155.

Accordingly, *Wright* and *Lattanzio* are *not* distinguishable on the ground that, in those cases, "everyone knew" the accountants were not involved (Opp. 7); if anything, the argument for liability based on public understanding was *stronger* in those cases than it is here, yet the claims in both cases were dismissed.

b. *Second*, plaintiffs' suggestion that "[t]he Second Circuit relaxed the bright line rule established in *Wright*" by holding auditors liable "despite a lack of specific attribution" (Opp. 10), is incorrect.[3] The only Second Circuit case plaintiffs cite for that proposition – *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) – nowhere mentions *Wright*, much less

[3] Plaintiffs make no attempt to argue, as they do with regard to PKF-NY (see PKF-NY Opp. at 9-11), that BDO McCabe's audit report was expressly attributed to BDO Seidman.

modifies the rule in that case (which it could not have done, as the court was not sitting *en banc*). See *Global Crossing*, 322 F. Supp. 2d at 331 (*Scholastic* "did not explicitly overrule *Wright* – in fact, it failed to cite either *Wright* or *Central Bank* – and it gave scant explanation of its holding."). Indeed, *Lattanzio* was decided five years after *Scholastic*, and explicitly reiterated the holding in *Wright*. 476 F.3d at 155.

What is more, even if plaintiffs were correct that "specific attribution" is no longer necessary in *all* cases, any potential exceptions would not apply here. In *Scholastic*, the court held that plaintiffs could survive a motion to dismiss by pleading on information and belief that a corporate officer had made a particular misstatement. That officer was "primarily responsible for Scholastic's communications with investors and industry analysts" (252 F.3d at 76), and because it was beyond question that *someone* had made the misstatement in question to investors and analysts, the Court allowed discovery to proceed to determine whether it had indeed been the targeted executive. Here, in contrast, there is no question who issued the CXTI audit reports: BDO McCabe was the only signatory on each report, and plaintiffs do not contend otherwise. It makes no sense to allow discovery to explore the degree of assistance that BDO Seidman gave BDO McCabe, because "'[a]nything short of [actually making a false or misleading statement] is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).'" *Wright*, 152 F.3d at 175 (quoting *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997)).

The rest of the cases cited by plaintiffs (Opp. 10-12) are district court cases, which of course cannot alter the rules established by the Supreme Court in *Central Bank*, and the Second Circuit in *Wright* and *Lattanzio*. To the extent these cases recognize exceptions to the strict attribution rule, they do so in only two circumstances: when the defendant is either a corporate

insider, or a corporate subsidiary whose financial information is incorporated into its parents' audited financial statements. The court in *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005), cogently set forth the rationales behind these two exceptions, explained why each is consistent with *Wright*; and made clear that *neither* rationale supports liability for unattributed statements by outside accountants:

> *Scholastic* can be read as comporting with *Wright*'s reliance requirement because it is reasonable to infer that an investor, when evaluating the financial statements of a company, at least implicitly relies on the officers of that company, who are generally understood to be responsible for day-to-day corporate affairs including preparation of statements for public disclosure. . . . *This situation is distinct from that of an outside auditor, as to whom it cannot be said that investors generally rely for unattributed representations, unless there is the specific attribution of statements to that auditor, as was required by* Wright. A subsidiary . . . is more akin to a corporate officer than to an outside auditor, in that one can infer that investors are more likely to identify with and rely on the statements of the subsidiary, whether made expressly or indirectly, when evaluating the consolidated financial results of the corporate parent.

*Id.* at 466 n.29 (emphasis added). Accordingly, neither the *Scholastic* decision nor any of the cases relying on it creates any exception to the attribution requirement in cases against accountants. Because there is no allegation that the audit opinions that form the basis of the Complaint were attributed to BDO Seidman, plaintiffs' claim must fail.

### B. Appendix K Does Not Create An "Implicit" Misstatement on the Part of the Filing Reviewer

The fact that BDO Seidman served merely as a filing reviewer under PCAOB's Appendix K, rather than an auditor, presents plaintiffs with a substantial problem: As discussed in BDO Seidman's Opening Memo (at 5-7), the filing reviewer's role is strictly circumscribed. Among other things, "[b]ecause of the limited nature of the [filing review] procedures . . . it is recognized that the filing reviewer can not and does not assume any responsibility for detecting a departure from, or noncompliance with, accounting, auditing, and independence standards generally accepted in the U.S." SECPS § 100.45.01(a) (attached as Exhibit B to the Orseck

Declaration). Put simply, Appendix K makes clear that BDO Seidman is not responsible for the statements for which plaintiffs seek to hold it liable.

Confronted with this troublesome fact, plaintiffs argue that, because the investing public knows that a U.S. firm will have some filing reviewer role when its foreign affiliate firm performs an audit and issues an audit opinion, the audit opinion itself therefore must be attributed to the U.S. firm. Opp. 7. That contention fails on two grounds. *First*, as explained above, public impressions cannot give rise to "misstatement" liability where no statement was made. See *Lattanzio*, 476 F.3d at 155 ("Unless the public's understanding is based on the accountant's articulated statement, the source for that understanding – whether it be a regulation, an accounting practice, or something else – does not matter."). *Second*, plaintiffs' argument is too clever by half: To the extent the investing public is sufficiently versed in PCAOB rules to know what a "filing reviewer" is, it also would know that the filing reviewer's role is limited, and that the reviewer cannot and does not assume any responsibility for the audit. SECPS § 100.45.01(a).

Apparently recognizing that the role described by Appendix K is insufficient to give rise to liability, plaintiffs try a different tack, arguing that it is a "question of fact" whether BDO Seidman served as filing reviewer, or as an "assistant" or "principal" auditor under PCAOB accounting guidance. Opp. 7, 9-10 & 14 (citing AU § 311.02 & AU § 543). But the facts as alleged in the Complaint make clear that neither of these auditing standards applies. AU Section 311 provides only that the auditor may delegate portions of the audit to *other members of the same audit firm*. See AU § 311.02 (Brown Decl. Ex. 1). As the Complaint acknowledges, however, BDO Seidman and BDO McCabe are separate firms (see Cplt. ¶¶ 22, 23), and AU § 311 accordingly has no application in this context. See also http://www.pcaob.org/Registration/-Registered_Firms.pdf (BDO Seidman and BDO McCabe separately registered with PCAOB).

And, AU § 543, which plaintiffs hypothesize might designate BDO Seidman as a "principal" auditor, provides that the principal auditor signs the audit report. Of course, here, BDO Seidman did not sign the audit report; BDO McCabe did. Plaintiffs have not alleged that BDO Seidman made a misstatement, or that any statement was attributed to BDO Seidman. Accordingly, plaintiffs' § 10(b) claim should be dismissed.

## II. PLAINTIFFS HAVE FAILED TO PLEAD SCIENTER

The Private Securities Litigation Reform Act requires a complaint to "state with particularity facts giving rise to a *strong inference*" of scienter. 15 U.S.C. § 78u-4(b)(2) (emphasis added). A complaint must allege scienter "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (quotation marks and citation omitted). Plaintiffs' allegations of scienter are insufficient under each approach.

### A. Plaintiffs Fail to Allege Facts Showing Sufficient Motive

Considering that BDO Seidman was not CXTI's auditor, it is difficult to imagine what motive BDO Seidman might possibly have had to violate securities laws on CXTI's behalf. In their Opposition, plaintiffs concoct a theory that BDO Seidman "had a motive to take advantage of the rare opportunity to be retained for audits of companies doing business in the rapidly burgeoning economy of China." Opp. 24. Imaginative as this effort is, however, the Complaint contains no hint of it, much less sufficient allegations to create a "strong inference" of motive.

Even if plaintiffs' Complaint were construed to encompass the pursuit of professional fees in China as a motive, that theory of scienter would nevertheless fail as a matter of law. See *KPMG*, 412 F. Supp. 2d at 382 ("[A] showing that an auditor merely wished to retain a client

does not suffice to show motive."); *Zucker v. Sasaki*, 963 F. Supp. 301, 308 (S.D.N.Y. 1997) ("[R]eceipt of compensation and the maintenance of a profitable professional business relationship . . . does not constitute a sufficient motive for purposes of pleading scienter.").

**B. Plaintiffs Allege No Facts Constituting Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness**

Plaintiffs allege (Opp. 18-23) that BDO Seidman consciously disregarded "red flags" of fraud "to such an extent that [it] must have done no audit at all." Opp. 20. But an allegation that BDO Seidman's work amounted to "no audit at all" is no more incriminating than an allegation that the pizza delivery man performed "no audit at all" – BDO Seidman no more undertook to audit CXTI's financial statements than did he. The task of auditing fell upon BDO McCabe.

Plaintiffs assert at every turn that BDO Seidman's audit was deficient, and hope that the talk of deficiency will distract attention from plaintiffs' failure to plead that BDO Seidman was the auditor in the first place. See, *e.g.*, Opp. 20 ("BDO Seidman and BDO McCabe performed none of the required audit procedures."). What plaintiffs never allege are specific facts showing that BDO Seidman was *obligated* to conduct an audit where another firm was engaged as CXTI's auditor and where Appendix K explicitly states that the filing reviewer has no responsibility to ensure that the financial statements comply with GAAP. Indeed, the specific acts cited in the Complaint – which are marshaled *only* in support of plaintiffs' now-abandoned "control person" claim (Cplt. ¶¶ 314-318) – show only that BDO Seidman discharged its filing reviewer responsibilities seriously and in good faith. See, *e.g.*, *id.* at ¶ 314 (alleging that Brown "gave specific direction to BDO McCabe as to how to test revenue"); *id.* at ¶ 315(a) (Brown "explained proper percentage of completion contract revenue accounting); *id.* at ¶ 315(b) (Brown "questioned the manner in which BDO McCabe was confirming the accuracy of invoices"); *id.* at

¶ 315(c) (Brown "questioned the accounts receivables reported and requested additional information and explanations about the revenue and accounts receivables reported to determine whether it was properly recorded"). There are no allegations that BDO Seidman turned a blind eye to accounting irregularities at CXTI. Accordingly, the Section 10(b) claim should be dismissed for the independent reason that plaintiffs have failed to sufficiently allege scienter.

## III. THE COURT SHOULD NOT GIVE PLAINTIFFS LEAVE TO AMEND THE COMPLAINT

As a last ditch effort to save their claims, plaintiffs ask that they be granted leave to amend the complaint if their claim is dismissed. Opp. 25. Although leave to amend a complaint is sometimes appropriate, "futility is a 'good reason' to deny leave to amend." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995 (affirming district court's denial of leave to amend)); *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 392 (S.D.N.Y. 2003) ("Plaintiffs' requests for leave to amend must be denied because they have given the Court no indication that they can amend their complaints to plead legally sufficient claims.").

Plaintiffs have not made any showing that an amendment to the Complaint would cure its defects. They have not proffered a proposed amended complaint, nor have they identified a single additional fact that they would include in an amended complaint. Even more significant, however, is that plaintiffs drafted this Complaint with the assistance of substantial discovery. Based on the allegations in plaintiffs' original complaint (which did not name BDO Seidman), plaintiffs served a subpoena on BDO Seidman, pursuant to which BDO Seidman produced all documents in its possession relating to CXTI and its work as filing reviewer. Declaration of Kathryn S. Zecca ¶ 3. After reviewing these documents, plaintiffs took the deposition testimony of Adam Brown, who performed the filing reviewer role. *Id.* ¶ 4. Plaintiffs make use of both the

documents and the deposition testimony in the Complaint as currently drafted. See, *e.g.*, ¶ 314. If plaintiffs could not draft a legally sufficient complaint after taking discovery from the very party they sued, it is hard to imagine how one more try would produce a better document. Indeed, where plaintiffs have had access to discovery prior to filing a complaint, the Second Circuit has repeatedly held that granting leave to amend is not appropriate, even in cases where fraud must be pled with particularity. See *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (affirming district court's denial of leave to amend in fraud action because plaintiff "had ample access to discovery"); *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982 (leave to amend fraud claim not appropriate where plaintiff had access to discovery). Accordingly, plaintiffs' request for leave to amend should be denied.

**CONCLUSION**

Plaintiffs' view of the law – that, if an auditor makes a misstatement in its report, any party that assisted the auditor *also* is deemed to make the misstatement – would eviscerate *Central Bank*, *Wright*, *Lattanzio*, and Congress's conscious decision in the PSLRA not to create a private cause of action for aiding and abetting securities fraud. This Court should dismiss plaintiffs' claim against BDO Seidman with prejudice.

Respectfully submitted,

________________/s/_________________
Gary A. Orseck (*admitted pro hac vice*)
Kathryn S. Zecca (*admitted pro hac vice*)
Damon W. Taaffe
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, NW, Suite 411
Washington, DC 20006

*Counsel for BDO Seidman, LLP*

Of Counsel:

Barbara Taylor
BDO Seidman, LLP
100 Park Avenue
New York, NY 10017

July 31, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2009, a true and correct copy of the foregoing BDO SEIDMAN'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Kathryn S. Zecca