Thomas R. Manisero (TM 8548)
Peter J. Larkin (PL 9645)
William J. Kelly (WK 5966)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants PKF, Certified Public Accountants,
A Professional Corporation
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
(914) 323-7001 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS MUNOZ, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    - against -<br><br>CHINA EXPERT TECHNOLOGY, INC,; PKF NEW YORK, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORPORATION, PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS; BDO MCCABE LO LIMITED CERTIFIED PUBLIC ACCOUNTANTS, BDO SEIDMAN, LLP,<br><br>                Defendants. | 07 – CV – 10531 (AKH) |

**PKF, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
*Attorneys for Defendant PKF, Certified Public Accountants, A Professional Corporation*
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

2472503.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

POINT I
    PLAINTIFFS' ATTEMPTS TO EXPAND PRIMARY
    LIABILITY BEYOND THOSE WHO MAKE FRAUDULENT
    STATEMENTS IS UNAVAILING ............................................................................ 2

POINT II
    PLAINTIFFS DO NOT ALLEGE SCIENTER AS TO PKF NEW
    YORK ........................................................................................................................... 9

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

In re Alston SA Sec. Litigation,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005).................................................................................6

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007)........................................................................................................8

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
    511 U.S. 164 (1994)............................................................................................................3

Chill v. General Electric Co.,
    101 F.3d 263 (2d Cir. 1996)..............................................................................................11

In re Complete Management Inc. Sec. Lit.,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001).........................................................................12, 13

Dura Pharms., Inc. v. Broudo,
    544 U.S. 336 (2005)............................................................................................................9

ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009)..............................................................................................10

Friedman v. Arizona World Nurseries Ltd. Partnership,
    730 F. Supp. 521 (S.D.N.Y. 1990) ...................................................................................12

In re Global Crossing,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004)...............................................................................12

Hollin v. Scholastic Corp. (In Re Scholastic Corp. Sec. Litigation),
    252 F.3d 63 (2d Cir. 2001).............................................................................................4-5

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001)..............................................................................................11

In re MTC Electric Techs. Shareholders Litigation,
    898 F. Supp. 974 (E.D.N.Y. 1995) .....................................................................................3

In re MicroStrategy, Inc., Sec. Litigation,
    115 F. Supp. 2d 620 (E.D. Va. 2000) .........................................................................12, 13

Queen Uno Ltd. P'ship. V. Coeur D'Alene Mines Corp.,
    2 F. Supp. 2d 1345 (D. Colo. 1998)..................................................................................12

SEC v. PIMCO Advisors Fund Management LLC,
    341 F. Supp. 2d 454 (S.D.N.Y. 2004)..................................................................5

Sharkey v. Quarantillo,
    541 F.3d 75 (2d Cir. 2008).....................................................................................8

Stoneridge Investment Partners v. Scientific-Atlanta, Inc.,
    552 U.S. 148 (2008)...............................................................................................3

Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.,
    531 F.3d 190 (2d Cir. 2008)) (alteration in original ............................................10

In re Williams Sec. Litigation,
    339 F. Supp. 2d 1242 (N.D. Okla., 2003).......................................................12, 13

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998)..................................................................................3

## STATUTES

15 U.S.C. § 78u-4(b)..........................................................................................................9

Federal Rules of Civil Procedure 9(b) ..........................................................................1, 9

Federal Rules of Civil Procedure 12(b)(6)........................................................................1

This memorandum of law is respectfully submitted on behalf of defendant PKF, Certified Public Accountants, A Professional Corporation, ("PKF New York"), in further support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), for an order dismissing the putative class-action securities complaint as against PKF New York for failure to state a claim upon which relief may be granted and for failure to plead fraud with particularity or with the sufficiency required by the PSLRA.

## PRELIMINARY STATEMENT

Plaintiffs essentially concede that they do not have a claim for primary liability by PKF New York under section 10(b) of the Securities and Exchange Act of 1933. Indeed, they do not argue that the complaint alleges any fraudulent statement by PKF New York. The entire basis of their claim against PKF New York and their opposition to PKF New York's motion to dismiss is that PKF New York should be responsible for the acts of PKF Hong Kong. In other words, plaintiffs seek to hold PKF New York liable for an audit done by another firm. Plaintiffs' theory does not just stretch any reasonable interpretation of the Supreme Court and Courts of Appeals jurisprudence, it outright breaks from well established law. <u>Central Bank</u>, <u>Stoneridge</u>, <u>Wright v. Ernst & Young</u>, and many other cases have consistently held that primary liability under Section 10(b) does not extend to secondary actors, but only to those to whom specific fraudulent statements are attributed. Plaintiffs either ignore these cases or attempt to argue that they are not controlling. Either way, plaintiffs' arguments fail.

Plaintiffs offer two equally specious reasons to hold PKF New York liable for another accounting firm's allegedly deficient audit. First, they make the bald and

conclusory allegation that PKF New York directed the audit and drafted the audit report. However, plaintiffs make no factual allegations whatsoever in support of this conclusion. Plaintiffs also argue that potential investors would not be savvy enough to realize that PKF Hong Kong is a different firm from PKF New York, thus PKF New York should be held liable for PKF Hong Kong's alleged errors. Each of these arguments proffered by plaintiffs is meritless.

Finally, plaintiffs' attempts to circumvent the scienter pleading requirement fail because the law cited is either inapplicable or the factual allegations referenced are directed at PKF Hong Kong, not PKF New York. While imputing statements made by one entity to another may be permissible under limited circumstances, imputing one's scienter or state of mind is not.

In sum, plaintiffs' opposition to PKF New York's motion to dismiss amounts to nothing more than an attempt to hold one accounting firm liable for the alleged errors of another. Securities laws, and specifically Section 10(b), do not permit such claims.

## POINT I

### PLAINTIFFS' ATTEMPTS TO EXPAND PRIMARY LIABILITY BEYOND THOSE WHO MAKE FRAUDULENT STATEMENTS IS UNAVAILING

The threshold issue presented by this motion is whether a non-speaker may be held liable under Section 10(b) for the statements of another. Specifically, the issue is whether PKF New York can be held liable for the audit report of PKF Hong Kong. Although plaintiffs seem to gloss over the well-established case law, the Supreme Court's holding in <u>Central Bank</u> and its progeny is unequivocal. According to that well-established case law, non-primary violators cannot be held liable under Section 10(b) in a

2468187.1

private cause of action. See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) (holding that Section 10(b) liability does not extend to mere aiders and abettors, as opposed to primary violators); Stoneridge Investment Partners v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008) (holding that Section 10(b)'s implied private right of action does not extend to secondary actors who neither make alleged misstatements nor engage in deceptive conduct, and rejecting private plaintiffs' use of scheme liability theory against secondary actors).

In Wright v. Ernst & Young LLP, 152 F.3d 169 (2d Cir. 1998), the Court of Appeals for the Second Circuit rejected an attempt to hold a party who did not make the allegedly fraudulent statement liable for the fraudulent statement of another. That court held, "a secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of its dissemination." Id. at 175. The court flatly rejected any theory of liability regarding a defendant providing "substantial assistance" to the alleged fraud as being a basis of liability under Section 10(b). Id. at 176; see also In re MTC Elec. Techs. Shareholders Litig., 898 F. Supp. 974, 987 (E.D.N.Y. 1995) ("[i]f Central Bank is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)").

Plaintiffs attempt to escape the inevitable conclusion forced by Wright by arguing that the allegedly fraudulent documents at the center of the Wright case were not audit reports and that "everyone knew the misleading statements clearly were not made by the defendant accountants." (Opposition Brief at 7). This argument does not actually support

3

plaintiffs' position because the type of allegedly false statement is irrelevant. Further, because the audit report in this case was issued by PKF Hong Kong, everyone knew that it was PKF Hong Kong making the statement. Thus, plaintiffs' attempt to distance itself from the Wright holding is unavailing.

Plaintiffs next argue that the Court of Appeals changed the rule set forth by Central Bank and applied in Wright by its decision in Hollin v. Scholastic Corp. (In Re Scholastic Corp. Sec. Litig.), 252 F.3d 63 (2d Cir. 2001). According to plaintiffs, in Scholastic, a claim was permitted to proceed against a company executive for statements issued by the company and "under Scholastic, PKF New York is liable under 10b-5 merely because it participated in the audits of CXTI, and also assisted in and directed the audits and the preparation of the misleading statements, regardless of whether defendants question whether public investors also attributed the misleading statements to PKF New York." (Opposition Brief at 12-13) (Emphasis in original.)

However, the Scholastic court reached no such conclusion. In Scholastic, the plaintiffs alleged that the company executive personally made false statements. As described by the court, "[t]he second set of [allegedly fraudulent] statements arises out of a conference call with analysts the day after the press release was issued, in which defendant Marchuk is alleged to have participated." Furthermore, the court concluded:

> Assuming plaintiffs' allegations to be true, Marchuk was primarily responsible for Scholastic's communications with investors and industry analysts. He was involved in the drafting, producing, reviewing and/or disseminating of the false and misleading statements issued by Scholastic during the class period. Marchuk had access to internal corporate documents and reports relating to trade sales and return data, conversed with other officers and employees and attended management and committee meetings. He helped prepare the Director's Books analyzing data and commenting on sales trends.

> These alleged facts are detailed enough to justify plaintiffs' belief that Marchuk was one of the senior officials involved in conversations with market analysts such as Merrill Lynch. As such, Marchuk would also have been in a position to know Scholastic's sales/return data and evaluate whether statements disseminated to the public accurately reflected such information.

In Re Scholastic, at 76. This quote clearly demonstrates that the executive was the person primarily involved with investor relations, so he was the individual who likely would have made the fraudulent statements to the analysts. Thus, the plaintiffs in that case did not need to allege specific attribution to the executive because the factual allegations support the conclusion that the executive actually made the fraudulent statement. As a result, the defendant executive could be liable, not because he was involved in the corporation's fraud, but rather because he was promulgating false statements himself. Id.; see also SEC v. PIMCO Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454, 466 (S.D.N.Y. 2004) ("while the operative complaint in Scholastic actually alleged on information and belief that the defendant had personally made misleading statements…").

The remaining cases cited by plaintiffs are equally inapposite, or actually support dismissal of the present case. In PIMCO Advisors, for instance, the court concluded:

> While, as discussed below, Corba may be charged with aider and abettor liability on these facts for substantially assisting in the issuance of misleading disclosures by failing to correct statements he knew or should have known were misleading, the Court concludes that it would overstep the limitations imposed by Wright to charge Corba with primary liability for statements the Complaint does not allege he personally drafted or communicated to others. Id. at 467.

Like the case in PIMCO, the complaint here does not attribute any statements to PKF New York, but rather only to CXTI and PKF Hong Kong.

Plaintiffs also attempt to invoke those cases that permit "constructive attribution" to avoid dismissal of the claim against PKF New York. (Opposition Brief at 13) Under the "constructive attribution" theory, a person who makes a fraudulent statement cannot escape liability because she funneled the statement through an intermediary. A typical example, as cited by plaintiffs, is when a subsidiary company provides fraudulent financial information to a parent company knowing that the parent company will be disseminating that information to investors. See, e.g., In re Alston SA Sec. Litig., 406 F.Supp.2d 433, 466 (S.D.N.Y. 2005) (a subsidiary company may be liable when it transmits information to its parent company for incorporation into its parent company's financial statements disseminated to the public). Those cases are not analogous to anything pled here. Here, PKF Hong Kong is alleged to have been the auditor. PKF Hong Kong is alleged to have issued the fraudulent audit report. There is no indication or allegation that PKF New York drafted the allegedly fraudulent audit report or transmitted false information to PKF Hong Kong knowing that the false information would be used in the audit report. These types of allegations are not found in the complaint. Therefore, the "constructive attribution" theory is simply inapplicable.

Plaintiffs' further contention that the investing public "knows that when a foreign accounting firm certifies financial statements with the SEC, its U.S. affiliate must have participated in conducting the audit and making the statements" is also without merit. (Opposition Brief at 6; also at 9). First, that alleged knowledge by the investing public is not mentioned anywhere in the complaint. Second, there are absolutely no allegations in plaintiffs' complaint that any investor was led into concluding that PKF New York was involved in the audit. In fact, the CXTI audit reports are signed only by PKF Hong Kong

and there is no mention of PKF New York anywhere in that report. Only after this action was commenced and plaintiffs' counsel learned of PKF New York's engagement to consult with PKF Hong Kong did the plaintiffs have any inkling of PKF New York's involvement. Since there are no allegations that plaintiffs were even aware of PKF New York during the class period, it is unsupported speculation that any investor held any belief that PKF New York had some involvement with the audit or that such a belief had any impact on plaintiffs' investment decisions. Finally, although foreign accounting firms may sometimes consult with U.S. based accounting firms, in this case, PKF Hong Kong was under no obligation to engage any U.S. accounting firm, let alone PKF New York. As the complaint sets forth, PKF Hong Kong is itself registered with the PCAOB (comp. ¶ 16). Thus, plaintiffs' argument that when a foreign firm audits an SEC registered company, a U.S. based firm must have participated in the conducting the audit is without merit.

      Plaintiffs try to obscure PKF New York's limited role by constantly referring to PKF New York and PKF Hong Kong as "affiliates" and speculating that PKF New York may have participated in PKF Hong Kong's audits in some more meaningful fashion than is set forth in PKF New York's letter of engagement with PKF Hong Kong. First, plaintiffs' own allegations make clear that PKF New York and PKF Hong Kong are separate legal entities. While they may be member firms in common organization, they are not the same firm. Similarly, the complete absence of any factual allegation in plaintiffs' complaint even remotely supporting the argument that PKF New York may have acted as an assistant or supervisory auditor demonstrates that this argument is truly hollow.

2468187.1

Plaintiffs also assert as a prayer of last resort to avoid dismissal of their complaint that additional discovery is necessary. This prayer should remain unanswered. First, plaintiffs have already subpoenaed and received from PKF New York, all of its workpapers relating to this engagement. To now claim that they need discovery to make sufficient allegations is disingenuous given that they have had PKF New York's workpapers for over a year. Second, if there was something in those workpapers that could support their claim, one certainly would have expected plaintiffs to include that information in their amended complaint or, at the very least, in response to this motion.

Plaintiffs' argument that PKF New York's possible direction or control of the audit of CXTI presents a question of fact preventing dismissal also lacks merit because plaintiffs have not has alleged any facts that, if true, would indicate any level of direction or control by PKF New York. While plaintiffs are correct that *factual* allegations must be accepted for purposes of this motion, legal conclusions without factual support are not sufficient. "[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quotation omitted). More than "labels and conclusions" are required, and "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

Rather than set forth factual allegations that satisfy the pleading requirements for a Section 10(b) claim, plaintiffs rely on conclusory allegations and statements clearly designed to mimic the language of the elements, without actually alleging any specific facts. Plaintiffs point to the multiple times they allege that PKF New York "directed and controlled" the audit (Opposition Brief at 8). Not once, however, do they offer even one

8

2468187.1

factual allegation to support that conclusion. There is not a single allegation that answers the question – "what is PKF New York alleged to have done to control PKF Hong Kong?"

Finally, the purpose of the PSLRA and Fed R. Civ. P. 9(b) could not be clearer – they are designed, at least in part, to prevent costly strike suits that are nothing more than fishing expeditions and extortionary litigation. This is exactly such a case, and in accordance with the statutes, rules and case law, it must be dismissed.

## POINT II

### PLAINTIFFS DO NOT ALLEGE SCIENTER AS TO PKF NEW YORK

Even if this Court were to permit attribution of the audit report issued by PKF Hong Kong to PKF New York, plaintiffs' claim still fails because they do not allege scienter on the part of PKF New York. Indeed, plaintiffs must "state with particularity facts giving rise to a strong inference" that **each defendant** acted with scienter. 15 U.S.C. § 78u-4(b)(2). In the context of securities fraud allegations, the PSLRA has expanded on Rule 9(b)'s pleading requirements. "The statute insists that securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; **and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"** Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1),(2)). Thus, while courts would normally draw reasonable inferences in the non-movant's favor, "the PSLRA 'establishes a more stringent rule for inferences involving scienter' because the PSLRA requires particular allegations giving rise to a strong inference of scienter." ECA, Local 134 IBEW Joint

Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009) (quoting Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 194 (2d Cir. 2008)) (alteration in original).

Plaintiffs' opposition to this point is that "[w]hen all of the factual allegations of the Complaint are read holistically and accepted as true, the only plausible inference is that PKF New York either knowingly or recklessly misled the investing public by performing none of the required audit procedures and falsely certifying as accurate CXTI's wholly fraudulent financial statements." (Opposition Brief at 19).

This argument fails for several reasons. First, plaintiffs' underlying premise is faulty. PKF New York did not conduct the audit. PKF New York did not certify any of CXTI's financial statements. There are no allegations that PKF New York personnel reviewed CXTI contracts, analyzed CXTI revenue, confirmed sources of income or verified any of the statements made by CXTI. Indeed, there are no allegations that PKF New York did anything constituting audit procedures, notwithstanding the fact that plaintiffs' counsel has had possession of PKF New York's file for over a year.

Without doubt, plaintiffs repeatedly state that PKF New York conducted the audit. However, conclusory statements, especially those belied by actual facts, are not to be given deference on a motion to dismiss. Here, the audit report unequivocally states that it is issued by PKF Hong Kong. This is not disputed, nor can it be. Thus, plaintiffs' factual allegations are limited to the following: (1) PKF Hong Kong conducted a deficient audit; (2) PKF Hong Kong issued an audit report; and (3) PKF New York was engaged by PKF Hong Kong to consult with regard to U.S. accounting standards. These facts do not create a "strong inference" of scienter. Rather, these facts create the opposite

inference, an inference that PKF New York merely rendered limited consultation to PKF Hong Kong.

The only time plaintiffs even approach scienter arguments relating to PKF New York, rather than PKF Hong Kong, is in their discussion of PKF New York's alleged motive to commit a massive securities fraud. According to plaintiffs, PKF New York would partake in such an "obvious" and "easily detectable" fraud in order to gain exposure to the Chinese audit market. Aside from the ridiculousness of this argument, the allegations supporting this theory appear nowhere in the complaint. Indeed, this theory of motive is nothing more than an ill-conceived attempt to overcome yet another pleading deficiency.

Courts have routinely dismissed such generalized motive theories. For example, in Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001), the court stated that in order to support a "strong inference" of fraudulent intent as required by the PSLRA, plaintiffs' allegations of motive must "entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." Id. at 138-139 (internal citations omitted). Motives that can be ascribed to "virtually all corporate insiders," or "any publicly owned, for profit endeavor" are not sufficient to support a claim of fraud. Id.; Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996).

Here, plaintiffs' theory of motive is that PKF New York wanted general exposure to unspecified potential clients in the Chinese market. While it may be true that an accounting firm may want access to the Chinese market, there is no suggestion as to how PKF New York was advancing this cause by teaming with another accounting firm that was already located in China and would presumably want to keep any opportunities

11

arising in China for itself. The only apparent benefit to this engagement was the limited fees PKF New York might receive. However, this limited motivation cannot serve as the motive required to be pled.

> Courts have also recognized, however, that it is a reality of the business world that accountants and accounting firms do not work for free and that, consequently, to infer scienter from the mere fact that an auditor received compensation for professional services would subject every independent auditor to suit and "effectively abolish the requirement, as against professional defendants in a securities fraud action, of pleading facts which support a strong inference of scienter." Given this, the general rule is that, without more, "receipt of professional fees is not sufficient to raise a strong inference that an accounting firm committed fraud."

In re MicroStrategy, at 655 (quoting Friedman v. Arizona World Nurseries Ltd. Partnership, 730 F. Supp. 521, 532 (S.D.N.Y. 1990) and (Queen Uno Ltd. P'ship. V. Coeur D'Alene Mines Corp., 2 F. Supp. 2d 1345, 1360 (D. Colo. 1998). Thus, plaintiffs' theory of motive is insufficient.

Plaintiffs rely upon a series of cases in which auditors were found to have sufficient motive when they "abandoned its obligations as an independent auditor" to secure lucrative consulting fees. See, e.g., In re Global Crossing, 322 F.Supp.2d 319 (S.D.N.Y. 2004); In re Complete Mgmt. Inc. Sec. Lit.,153 F.Supp.2d 314, 334 (S.D.N.Y. 2001); In re MicroStrategy, Inc., Sec. Litig., 115 F.Supp.2d 620, 654 (E.D. Va. 2000); In re Williams Sec. Litig., 339 F.Supp.2d 1242, 1265 (N.D. Okla., 2003). However, in each of those cases, the auditor served a dual role as auditor and consultant, and the fees associated with the consultant aspect of the engagement far outweighed the fees associated with the audit aspect of the engagement. In re Global Crossing, at 346 ("Andersen's consulting work for the Companies is alleged to have generated almost $ 12 million, nearly six times what it received in auditing fees."); In re Complete Mgmt. Inc.

Sec. Lit., at 335 ("Andersen not only audited CMI's finances, but also provided considerable consulting services to CMI. The complaint alleges that during the class period Andersen was paid over $ 1 million for consulting work."); In re MicroStrategy, Inc., Sec. Litig., at 654 (E.D. Va. 2000) ("the Complaint alleges that, by agreeing to sell MicroStrategy's products and to serve as a consultant with regard to those products, PwC took on a vested interest in the performance and profitability of the Company beyond that related to a desire to be paid for its auditing services"); In re Williams Sec. Litig., at 1265 ("[t]he Complaint sets forth allegations which draw into question Ernst & Young's motive and independence based on the fact that its consulting fees from WMB were far greater than the fees received from WMB for auditing services"). Here, there are no allegations that PKF New York received consulting fees. There are no allegations that PKF Hong Kong received consulting fees. Indeed, there are no allegations even approaching the motive allegations set forth in the cases cited by plaintiff. In sum, while the recitation of the law may be accurate, there are no factual allegations in this case to invoke that analysis.

## CONCLUSION

For all the foregoing reasons, defendant PKF New York respectfully requests that this Court grant its motion and dismiss the claim as against PKF New York in its entirety.

Dated: White Plains, New York
July 31, 2009

                                                  Respectfully submitted,

                                                  Wilson, Elser, Moskowitz, Edelman &
                                                  Dicker LLP

                                                  By: _____
                                                  Thomas R. Manisero (TM 8548)
                                                  Peter J. Larkin (PL 9645)
                                                  William J. Kelly (WK 5966)
                                                  *Attorneys for Defendant*
                                                  *PKF, Certified Public Accountants,*
                                                  *A Professional Corporation*
                                                  3 Gannett Drive
                                                  White Plains, New York 10604
                                                  (914) 323-7000
                                                  Fax: (914) 323-7001