UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CARLOS MUNOZ, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>        -against-<br><br>CHINA EXPERT TECHNOLOGY, INC.; PKF NEW YORK, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORPORATION; PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS; BDO MCCABE LO LIMITED, CERTIFIED PUBLIC ACCOUNTANTS; BDO SEIDMAN, LLP,<br><br>        Defendants. | 07 Civ. 10531 (AKH)<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PKF HONG KONG'S MOTION TO DISMISS

ORRICK, HERRINGTON & SUTCLIFFE LLP
Michael C. Tu (*admitted pro hac vice*)
Steven J. Fink
Charles J. Ha
666 Fifth Avenue
New York, New York 10103-0001
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

December 14, 2009          *Attorneys for PKF Hong Kong*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND ................................................................................................ 3

III. DISCUSSION .................................................................................................... 6

    A.     Plaintiffs' SAC Is Subject to Heightened Pleading Standards Under the Private Securities Litigation Reform Act and Rule 9(b)........................................ 6

    B.     Plaintiffs Do Not Adequately Allege That PKF HK Acted with Scienter in Performing Its Audit. ........................................................................................... 8

        1.     Plaintiffs Do Not Allege That PKF HK Had *Any* Motive to Commit Fraud ................................................................................... 8

        2.     Plaintiffs' Conclusory Allegations That PKF *Must Have* Acted with Scienter Because It Did Not Detect CXTI's Fraud Are Insufficient. .................................................................................... 10

            a.     Plaintiffs' allegation that PKF HK violated GAAS in connection with two allegedly fraudulent contracts is insufficient to state a claim. ........................................ 12

            b.     Plaintiffs fail to sufficiently plead that PKF HK acted with scienter by ignoring alleged "red flags."..................................... 14

IV. CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*In re AOL Time Warner Sec. & "ERISA" Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004)................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).................................................................................3

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430 (S.D.N.Y. 2005)..................................................10, 11, 14

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)................................................................................9

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ..............................................................................8

*In re Doral Fin. Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008),
   *aff'd, W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
   2009 WL 2779119 (2d Cir. Sept. 3, 2009) ........................................9, 10, 12, 14

*Duncan v. Pencer*,
   No. 94 CIV 0321 (LAP), 1996 WL 19043 (S.D.N.Y. 1996)...............................8

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................7

*ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)................................................................................7

*In re FARO Techs. Sec. Litig.*,
   534 F. Supp. 2d 1248 (M.D. Fla. 2007)............................................................15

*Fidel v. Farley*,
   392 F.3d 220 (6th Cir. 2004) ............................................................................12

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ........................................................................15

*Hart v. Internet Wire, Inc.*,
   145 F. Supp. 2d 360 (S.D.N.Y. 2001)...............................................................10

# TABLE OF AUTHORITIES

Page

*In re IMAX Sec. Litig.*,
    587 F. Supp. 2d 471 (S.D.N.Y. 2008)...............................................................15

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)....................................................................7, 8, 9

*Ley v. Visteon Corp.*,
    543 F.3d 801 (6th Cir. 2008) ................................................................11, 12

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) ..............................................................12

*In re Marsh & Mclennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)..........................................................7

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    51 F. Supp. 2d 290 (S.D.N.Y. 1999)............................................................8

*Reiger v. PricewaterhouseCoopers LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000),
    *aff'd, DSAM Global Value Fund v. Altris Software*,
    288 F.3d 385 (9th Cir. 2002) ..............................................................7, 8, 9

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)........................................................................1, 3

*In re Scottish Re Group Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007).......................................................2, 10

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)........................................................................9

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
    124 F. Supp. 2d 505 (S.D. Ohio 2000) .......................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................6, 7

## TABLE OF AUTHORITIES

Page

*Zucker v. Sasaki,*
    963 F. Supp. 301 (S.D.N.Y. 1997) .........................................................................9, 10, 14

### STATE CASES

*Bily v. Arthur Young & Co.,*
    3 Cal. 4th 370 (1992) .....................................................................................................7, 8

### FEDERAL STATUTES

15 U.S.C. § 78u-4(b)..................................................................................................................6, 7

### MISCELLANEOUS

Fed. R. Civ. P. 9(b) .............................................................................................................1, 6, 7, 12

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 17

## DECLARATIONS AND EXHIBITS FILED IN SUPPORT OF MOTION

Declaration of Charles J. Ha

|  |  |  |
|---|---|---|
| Exhibit A: | CXTI's Annual Report on Form 10-KSB (filed March 14, 2006) | |
| Exhibit B: | CXTI's Current Reports on Form 8-K (filed July 12, 2005) | |
| Exhibit C: | Section 605-35-25 of the Financial Accounting Standards Board Standards Codification | |
| Exhibit D: | Interim Auditing Standard Section 110, published by the Public Company Accounting Oversight Board | |
| Exhibit E: | Interim Auditing Standard Section 230, published by the Public Company Accounting Oversight Board | |

Defendant PKF Hong Kong ("PKF HK") respectfully submits this memorandum in support of its motion to dismiss plaintiffs' claim against it in the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I.    INTRODUCTION

Plaintiffs' SAC against PKF HK is a quintessential example of why Congress enacted the Private Securities Litigation Reform Act (the "Reform Act") to eliminate baseless and abusive securities class action lawsuits at the pleading stage. Plaintiffs allege that China Expert Technology, Inc. ("CXTI") and its officers committed a complex and multi-layered fraud against CXTI's shareholders, and plaintiffs only recently amended their complaint to add a claim against Hong Kong-based accounting firm PKF HK (which conducted an independent audit of CXTI's financial statements for fiscal years 2003-04). That complaint has already been dismissed once by this Court with respect to the U.S.-based auditors of CXTI because of plaintiffs' failure to allege facts with the heightened particularity required under the Reform Act and Federal Rule of Civil Procedure 9(b).

Plaintiffs' claim against PKF HK is based on nothing more than conclusory allegations that it *must have* committed fraud because it did not detect CXTI's alleged fraud in connection with its audit of CXTI's financial statements. As the Second Circuit and other federal courts have consistently recognized, that does not come close to the particular details that plaintiffs are required to plead against PKF HK as an auditor defendant. Under the Reform Act and Rule 9(b), plaintiffs must describe with particularity conduct that represents "*an extreme departure from the standards of ordinary care*" such that it approximates "an *actual intent* to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (internal quotations omitted, emphasis added). Mere allegations of Generally Accepted Auditing Standards ("GAAS") violations fail to satisfy the heightened standard for pleading scienter.

---

[1] Defendants PKF Hong Kong and BDO Ltd. have concurrently filed a joint motion to dismiss on *forum non conveniens* grounds. If that motion is granted, this motion will become moot.

Instead, plaintiffs must plead facts demonstrating that PKF HK's "accounting practices were *so deficient* that the audit amounted to *no audit at all*." *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007) (internal quotations omitted, emphasis added).

Plaintiffs allege that PKF HK *must have* acted with scienter because it did not discover that two of CXTI's contracts were fraudulent. Plaintiffs admit that one of the contracts, with Dehua County, People's Municipality of Fujian Province ("Dehua"), was in fact a legitimate contract that CXTI performed work under and received payment for. SAC ¶¶ 176, 194. Moreover, plaintiffs' allegation that PKF HK violated GAAS by failing to seek confirmation of the second contract from the Jinjiang City E-Government Project Construction Command Bureau ("Jinjiang City") (SAC ¶ 294), is inconsistent with their own allegations—the SAC admits that the contract was not with Jinjiang City, but with a separate entity, Jinjiang Gongcheng Management Services Co., Ltd. ("Jinjiang Management"). *Id.* ¶¶ 134, 148. Plaintiffs do not allege that PKF HK failed to seek and receive confirmation of this contract, recognized revenues, and accounts receivables from CXTI's *customer*, Jinjiang Management.

Plaintiffs also allege that PKF HK *must have* acted with scienter because it supposedly ignored some "bright red flags." But those so-called "flags" are nothing of the sort. Under plaintiffs' view, an independent auditor would be required to treat as a "red flag" any time a company engaged in such commonplace occurrences as: (1) doing business in China; (2) using the percentage of completion accounting method (which is permitted under Generally Accepted Accounting Principles ("GAAP")), or (3) experiencing an increase in revenues. It is absurd to allege that the existence of these everyday business events should have alerted PKF HK to CXTI's alleged fraud.

In short, plaintiffs completely fail to meet their burden of pleading particularized facts raising a *strong inference* that PKF HK acted with scienter and performed "no audit at all." Indeed, plaintiffs do not, and cannot, even ascribe any motive as to why PKF HK would collude with CXTI in order to deceive CXTI's shareholders. PKF HK is a respected accounting firm with affiliates around the world, and the idea that it would knowingly or recklessly risk its

reputation to help CXTI (for whom they issued one audit opinion) perpetrate a fraud is unsubstantiated and irrational. The only plausible inference from the SAC is that PKF HK, in conducting its audit, was deceived by CXTI's alleged fraudulent conduct, just like plaintiffs, government regulators, other audit firms, and the public at large. This is a meritless suit aimed at a foreign "deep pocket" defendant whose connection to CXTI's alleged fraud is tenuous at best. The claims against PKF HK should be dismissed.

## II.    BACKGROUND

CXTI engaged PKF HK to perform an audit of its annual financial statements for fiscal years 2003 and 2004. SAC ¶ 18. PKF HK's audit opinion letter with regard to CXTI's 2003 and 2004 consolidated financial statements made clear that PKF HK *was not responsible* for preparing CXTI's financial statements. Instead, the "financial statements are the responsibility of [CXTI's] management," and PKF HK's responsibility as an auditor was limited to "express[ing] an opinion on [CXTI's] consolidated financial statements based on [PKF HK's] audits." *See* Declaration of Charles Ha ("Ha Decl."), Ex. A (Form 10-KSB at 14).[2] The audit conducted by PKF HK was governed by "the standards of the Public Company Accounting Oversight Board (United States)," which "require that [PKF HK] plan and perform its audit to obtain *reasonable assurance* about whether the financial statements are free of material misstatement." *Id*. (emphasis added).

The SAC's claims against PKF HK are based primarily on allegations from purported "private investigators" whom plaintiffs claim to have hired to interview witnesses and obtain documents within the People's Republic of China. SAC at 2, ¶ 116. As an initial matter, it is

---

[2] It is well established that it is proper for the Court to consider on a motion to dismiss documents that are integral to plaintiffs' claims, including the SAC and attached exhibits and documents incorporated by reference, publicly disclosed documents filed with the Securities and Exchange Commission, documents possessed by or known to plaintiffs and upon which they relied, and other matters subject to judicial notice. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *accord Rothman*, 220 F.3d at 88-89. PKF HK has concurrently submitted a request for judicial notice of these documents in support of this motion.

unlikely that plaintiffs could have conducted any "investigation" using reputable investigators within China as the fact-finding effort that they purport to have undertaken would have been considered illegal under established Chinese law.[3]  In any event, the allegations from plaintiffs' investigation are conclusory and insufficient to support any claims against PKF HK—the SAC does not allege that plaintiffs' investigation uncovered any evidence indicating that PKF HK engaged in any fraudulent activity or was complicit with CXTI's alleged fraud in any way.

Much of CXTI's revenue during fiscal years 2003 and 2004 came from two "e-government contracts":  the (i) Jinjiang Gongcheng 1st Phase Contract and (ii) Dehua 1st Phase Contract.[4]  The Jinjiang Gongcheng 1st Phase Contract, dated April 30, 2003, was between Jinjiang Management and CXTI's wholly owned subsidiary, Expert Network. *Id.* ¶¶ 134, 141. Jinjiang Management was an independent company that was "designated by the Municipal government of Jinjiang City to assume the direct investment responsibility and to appoint [a] contractor for the project." *Id.* ¶ 148 (internal quotations omitted).  The SAC alleges that Jinjiang Management did not have the authority to contract on behalf of the Jinjiang government and that its principal, Jiang Shaoheng, was also a Project Manager for Expert Network. *Id.* ¶¶ 155, 172.[5]  Plaintiffs also allege that PKF HK failed to send a third party confirmation letter to *Jinjiang City* confirming the existence of this contract, and the revenues recognized and accounts

---

[3] As described by Dr. Xixin Wang of the Peking University School of Law in his declaration submitted concurrently in support of the joint motion to dismiss on *forum non conveniens* grounds, it appears that plaintiffs' purported investigation within the People's Republic of China and their use of that information in this proceeding (as described on the face of the SAC) may have violated several Chinese laws governing the investigation and transmission of certain information outside China. *See* Declaration of Dr. Xixin Wang, ¶¶ 14-40.

[4] From January 1, 2003 through December 31, 2006, CXTI provided services under "e-government" contracts that were entered into between CXTI's wholly owned subsidiary Expert Network (Shenzen) Company Limited ("Expert Network"), and certain companies who were affiliated with Chinese municipal governments.  SAC ¶¶ 17, 76.

[5] Plaintiffs allege that Mr. Jiang was therefore in a position to "facilitate[] the forgery" of the contracts.  SAC ¶ 172.  The SAC does not allege that PKF HK, at the time it performed its audit, knew or was reckless in not knowing about Mr. Jiang and his dual roles.

receivable balances on this contract. *Id.* ¶ 294. Plaintiffs do not allege that PKF HK failed to obtain a third party confirmation from *Jinjiang Management*, the customer with which CXTI had its contract.

The Dehua 1st Phase Contract, dated April 9, 2004, was between Dehua County People's Municipality of Fujian Province and Expert Network. *Id.* ¶ 176. Expert Network was engaged "to undertake the project of Electronic Administration Planning, Design and Construction" for Dehua County. *Id.* ¶ 181 (internal quotations omitted). Plaintiffs admit that the Dehua 1st Phase Contract was a legitimate contract between Expert Network and the Dehua government (*id.* ¶ 194), but allege that Dehua County terminated the contract in 2004 because it lacked sufficient funds to pay for its completion. Plaintiffs allege that Dehua County paid CXTI 100,000 RMB for its work in 2004. *Id.* Plaintiffs, however, do not allege that Expert Network failed to actually perform the work under this contract that would have entitled it to recognize the $8.9 million in revenues that it reported in its audited financial statements for fiscal year 2004.[6] *See id.*

At the conclusion of its audit, PKF HK issued an audit opinion letter stating in part:

> *In our opinion*, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of China Expert Technology, Inc. and its subsidiaries as of December 31, 2004 and 2003 and the consolidated results of their operations and their cash flows for each of the three years in the period ended December 31, 2004 in conformity with accounting principles generally accepted in the United States of America.

Ha Decl. Ex. A (Form 10-KSB at 14) (emphasis added). Shortly after this engagement concluded, CXTI switched to a different audit firm—BDO Ltd.—to serve as CXTI's auditor for future fiscal years. Ha Decl., Ex. B (Form 8-K's announcing change). BDO Ltd. subsequently

---

[6] CXTI did not receive any payments in connection with its e-Government contracts until it achieved the first milestone set out in the contract, typically six to nine months after the project commenced. Ha Decl., Ex. A (Form 10-KSB at 10). The revenue recognized by the company, however, was not tied to the cash receipts. Instead, the company recognized revenue according to the percentage of completion of its contracts, where revenue earned was recognized "in the ratio that costs incurred bear to total estimated contract costs." *Id.* at 23. This is an accepted method of revenue accounting under GAAP. *See* Ha Decl., Ex. C (FASB § 605-35-25-57).

performed the audit of CXTI's financial statements for the 2005 and 2006 fiscal years, and PKF HK is not alleged to have had any involvement with that work.  SAC ¶ 23.

On July 18, 2007, years after PKF HK had completed its audit of CXTI's 2003 and 2004 financial statements and following subsequent audits by BDO Ltd., CXTI's chief financial officer resigned, and CXTI requested an extension to file its quarterly report for the second quarter of 2007 due to delay caused by the resignation.  *Id*. ¶¶ 342-43.  On October 1, 2007, following other terminations and resignations of key officers, directors, and CXTI's then-auditor, BDO Ltd., the SEC issued an order halting trading of the company's stock because of questions concerning CXTI's financial performance and current financial condition.  *Id*. ¶ 348.

Plaintiffs filed the initial complaint in this action naming CXTI and its three highest officers as defendants on November 21, 2007.  (Dkt. 1.)  Plaintiffs apparently never served CXTI or its officers with the complaint, and well over a year later, on March 27, 2009, amended their complaint to add claims against PKF HK.  Plaintiffs did not serve PKF HK until August 31, 2009 (Dkt. 62), over twenty-one months after plaintiffs filed their original complaint and more than four years after PKF HK had issued its audit opinion.  On September 30, 2009, the Court granted the motions to dismiss of BDO Seidman with prejudice and PKF NY with leave to amend.  (Dkt. 54.)  On October 29, 2009, plaintiffs filed the SAC.  (Dkt. 63.)

## III.    DISCUSSION

### A.    Plaintiffs' SAC Is Subject to Heightened Pleading Standards Under the Private Securities Litigation Reform Act and Rule 9(b).

Plaintiffs' only claim against PKF HK is for a violation of Section 10(b).  In enacting the Reform Act, Congress "imposed heightened pleading requirements in actions brought pursuant to [Section] 10(b) and Rule 10b-5."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal quotations omitted).  In particular, a plaintiff must allege with specificity each allegedly misleading statement and the reasons why the statement is misleading, and must "state with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind." 15 U.S.C. § 78u-4(b). In order to adequately plead a violation of Section 10(b), a plaintiff must allege in detail: (1) that the defendant made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) reasonable reliance; (5) economic loss; and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Under the Reform Act's strict pleading requirements, plaintiffs' claim against PKF HK must be dismissed unless they plead particularized facts raising a strong inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. In the Second Circuit, scienter may be pled in two ways: (1) particularized allegations of motive and opportunity to commit fraud; or (2) particularized allegations providing strong circumstantial evidence of conscious misbehavior and recklessness. *ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Where the plaintiffs do not establish a motive to commit fraud under the first prong, an even higher burden must be met with respect to the second prong because "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (internal quotations omitted).[7]

The standard for pleading scienter against an auditor is "demanding." *In re Marsh & Mclennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 488, 489 (S.D.N.Y. 2006) (dismissing § 10(b) claims against auditor because of insufficient allegations of scienter). This is, in part, "because an independent accountant often depends on its client to provide the information base for the audit." *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007-08 (S.D. Cal. 2000), *aff'd*, *DSAM Global Value Fund v. Altris Software*, 288 F.3d 385 (9th Cir. 2002); *see also Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 399 (1992) ("An auditor is a watchdog, not a

---

[7] Plaintiffs' claim is also subject to the strict pleading requirement for claims of fraud under Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."

bloodhound.  As a matter of commercial reality, audits are performed in a client-controlled environment." (citation omitted)).

B.    **Plaintiffs Do Not Adequately Allege That PKF HK Acted with Scienter in Performing Its Audit.**

Plaintiffs' claim against PKF HK should be dismissed because plaintiffs do not plead particularized allegations of fact giving rise to a *strong inference* that PKF HK acted with scienter.  Plaintiffs do not even attempt to allege that PKF HK had any motive to join in CXTI's fraud, much less plead motive with the required heightened particularity.  Moreover, plaintiffs' remaining scienter allegations are premised on the theory that PKF HK *must have* acted with scienter because it did not identify CXTI's fraud, an allegation that says nothing about PKF HK's state of mind when it conducted its audit years ago.

1.    **Plaintiffs Do Not Allege That PKF HK Had *Any* Motive to Commit Fraud.**

It is well established that a plaintiff pleading motive against an outside auditor must surmount a high hurdle under the federal securities laws because it is "economically irrational" for a large independent accounting firm to "condone a client's fraud in order to preserve a fee that, at best, is an infinitesimal percentage of its annual revenues and, by doing so, jeopardize its reputation and license, as well as subject itself to potential damages literally tens of thousands of times as large as its fee."  *Duncan v. Pencer*, No. 94 CIV 0321 (LAP), 1996 WL 19043, at *10 (S.D.N.Y. 1996); *see also Reiger*, 117 F. Supp. 2d at 1007 ("[A] large independent accountant will rarely, if ever, have any rational economic incentive to participate in its client's fraud.").  Federal courts have consistently recognized that "[a]n accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work.  Fees for two years' audits could not approach the losses [an accountant] would suffer from a perception that it would muffle a client's fraud."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999) (rejecting motive allegations against independent auditor); *Kalnit*, 264 F.3d at 140-41 ("Where plaintiff's view of

the facts defies economic reason, it does not yield a reasonable inference of fraudulent intent."
(internal quotations & alterations omitted)).  General allegations such as the "mere receipt of
compensation and the maintenance of a profitable professional business relationship for auditing
services do[] not constitute a sufficient motive for purposes of pleading scienter." *Zucker v.
Sasaki*, 963 F. Supp. 301, 308 (S.D.N.Y. 1997); *see also Kalnit*, 264 F.3d at 139-40 (motives
generally possessed by entities similar to defendants are "too generalized to demonstrate
defendants' 'concrete and personal benefit' from the alleged fraud").  This is consistent with the
requirement that allegations of motive must involve some "'concrete benefits that could be
realized by one or more of the false statements.'"  *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d
Cir. 1996) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)).

     The SAC is silent regarding any alleged motive for PKF HK to participate in CXTI's
alleged fraud.  Plaintiffs offer no theory or incentive to explain why PKF HK would engage in a
scheme to defraud CXTI's shareholders.  There is no allegation (nor could there be) that PKF
HK benefitted in any way from CXTI's allegedly inflated stock price, that PKF HK had a long
term relationship with CXTI, or that it received any benefit from CXTI other than the audit fees
that it would have received from auditing any company of a similar size and engaged in a similar
line of business.  Shortly after PKF HK issued its sole audit opinion letter for CXTI (for the
2003-04 fiscal years), it was terminated and replaced by BDO Ltd. as CXTI's auditor.  No
plausible motive is pled or exists to suggest that PKF HK aided CXTI in perpetrating a fraud on
investors, and the SAC fails to raise any plausible inference that PKF HK acted with scienter
when performing its audit.[8]  *Reiger*, 117 F. Supp. 2d at 1007 (dismissing 10(b) claim against

---

[8] While the SAC makes an allegation directed to *PKF NY*'s alleged motive (SAC ¶ 313),
it contains no similar allegation against PKF HK.  Even if the allegation against PKF NY was
amended to apply to PKF HK, the alleged motive is insufficient.  It describes only a general
desire to "maintain[] and build[]" a client relationship with CXTI, precisely the kind of
generalized motive rejected by *Zucker*, 963 F. Supp. at 308.  *See also In re Doral Fin. Corp. Sec.
Litig.*, 563 F. Supp. 2d 461, 465 n.1 (S.D.N.Y. 2008) ("the allegation that PwC received fees
from Doral for auditing, consulting, and tax services and wished to continue to receive fees" is
too general and insufficient to plead motive), *aff'd*, *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
2009 WL 2779119 (2d Cir. Sept. 3, 2009).

auditor for lack of sufficiently detailed allegations of motive to allow the court to make the "irrational inference that the accountant would risk its professional reputation to participate in the fraud of a single client").

> **2.    Plaintiffs' Conclusory Allegations That PKF *Must Have* Acted with Scienter Because It Did Not Detect CXTI's Fraud Are Insufficient.**

Plaintiffs' scienter allegations amount to nothing more than an argument that PKF HK *must have* violated GAAS requirements and therefore *must have* acted with scienter because it did not uncover CXTI's alleged fraud.  Courts have time and again rejected such circular allegations as nothing more than an impermissible attempt to plead fraud by hindsight.

*First*, it is well-settled that mere allegations of GAAS violations are insufficient to plead scienter.  *See Doral*, 563 F. Supp. 2d at 466 (rejecting "allegations that an independent auditor violated GAAP and GAAS" in the absence of evidence of corresponding fraudulent intent); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 449-50 (S.D.N.Y. 2005) (finding alleged violations of "internal company policy, GAAP, and [GAAS]" insufficient to create an inference of scienter); *Zucker*, 963 F. Supp. at 307-08 ("[G]eneral allegations of GAAP and GAAS violations fail to satisfy the scienter requirements of Section 10(b) and Rule 10b-5.").  Indeed, "even an egregious failure to gather information will not establish 10b-5 liability as long as the defendants did not deliberately shut their eyes to the facts."  *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2001) (internal quotations omitted).  Rather, plaintiffs must allege particularized facts establishing that PKF's audit was so deficient that it amounted to "*no audit at all*, or an egregious refusal to see the obvious."  *Scottish Re Group*, 524 F. Supp. 2d at 385 (internal quotations omitted, emphasis added).

*Second*, even if allegations of GAAS violations were sufficient to adequately plead scienter—which they are not—plaintiffs have failed to adequately plead particularized facts indicating that any such GAAS violation occurred.  Fundamental GAAS principles and controlling case law recognize that an auditor does not violate GAAS simply because it failed to

detect fraud. Under GAAS, an auditor is not tasked with determining with certainty, or guaranteeing, that a company's financial statements are presented in accordance with GAAP.[9] Instead, "the auditor's opinion on the financial statements . . . is based on the concept of obtaining reasonable assurance" that the financial statements are free from misstatement due to error or fraud. Ha Decl., Ex. E (AU 230.10, AU 230.13). "[A]n audit conducted in accordance with [GAAS] *may not detect . . . a material misstatement*." *Id.* (AU 230.10 ) (emphasis added).[10]

Thus, as courts have uniformly recognized, plaintiffs' circular and conclusory allegations are wholly insufficient to satisfy their burden of pleading particularized facts giving rise to the strong inference of scienter—that PKF HK's audit amounted to "no audit at all." *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[T]he failure of a non-fiduciary accounting firm to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability."); *BISYS*, 397 F. Supp. 2d at 450 (rejecting plaintiffs' allegation that the auditor acted with scienter because it "should have discovered the [accounting] irregularities" as such allegations suggested—at most—that the auditor acted negligently, and failed to raise the strong inference of scienter necessary to state a claim under Section 10(b)).[11]

---

[9] Plaintiffs make the conclusory allegation that PKF HK "issued, caused to be issued or directed the issuance of . . . [their client's] financial statements" (SAC ¶ 362), and that it "certified" CXTI's financial statements (*id.* ¶ 306). But such allegations represent a fundamental misunderstanding of the role of an auditor and the function of an audit under applicable GAAS standards and controlling case law. GAAS states that "[t]he financial statements are management's responsibility" and that management is responsible for "the fair presentation of financial statements in conformity with generally accepted accounting principles," and "the auditor's responsibility for the financial statements . . . *is confined to the expression of his or her opinion on them*." Ha Decl., Ex. D (AU 110.03) (emphasis added).

[10] Indeed, GAAS also expressly recognizes that fraud, as opposed to error, is especially difficult to detect: "Because of the characteristics of fraud, a properly planned and performed audit" may not detect fraud. *Id.*, Ex. E (AU 230.12). Where collusion is occurring, for example between the audit client and third parties, audits performed in accordance with GAAS may be particularly ineffective at detecting fraudulent misstatements. *Id.*

[11] *See also Ley v. Visteon Corp.*, 543 F.3d 801, 816 (6th Cir. 2008) (allowing an inference of scienter based on the existence or magnitude of fraud "would eviscerate the principle that

11

> a.    **Plaintiffs' allegation that PKF HK violated GAAS in connection with two allegedly fraudulent contracts is insufficient to state a claim.**

Plaintiffs allege that PKF HK violated GAAS by failing to seek third-party confirmations for two allegedly fraudulent contracts and thereby acted with scienter.[12]  The SAC readily concedes that its allegations in this regard are based solely on the conclusion that PKF HK *must not have* performed GAAS procedures because it did not discover CXTI's alleged fraud.  *See, e.g.*, SAC ¶ 302 ("The Auditor Defendants did not perform the required procedures.  If they had, they would have discovered the fraud.").  As noted above, however, the mere fact that PKF HK did not discover CXTI's alleged fraud does not indicate that PKF HK either acted with scienter or that it even violated GAAS.  Nor, for that matter, do any of plaintiffs' other allegations regarding the allegedly fraudulent contracts.[13]

*First*, plaintiffs' allegations regarding the Dehua contract not only fail to raise an inference of scienter, they do not even indicate that CXTI's 2003 and 2004 financial statements failed to comply with GAAP.  Plaintiffs acknowledge that Expert Network did in fact have a valid contract with Dehua and did provide services to Dehua, and that Dehua terminated this

---

accounting errors alone cannot justify a finding of scienter" (quoting *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004))); *Doral*, 563 F. Supp. 2d at 466 (finding it "impossible to draw a strong inference of PwC's scienter from either the length or the extent of the [client's] fraud"); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 516 (S.D. Ohio 2000) (rejecting "allegations of an auditor's failure to discover accounting errors" as "an example of pleading fraud in hindsight, the exact type of claims that . . . Rule 9(b) and the PSLRA were designed to weed out at the pleading stage"); *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58-59 (D. Mass. 1995) (allegations that alleged fraud would have been discovered "if proper accounting standards had been employed" were insufficient to plead scienter and nothing more that "fraud by hindsight").

[12] Plaintiffs allege generally that GAAS required PKF HK "to contact [CXTI's] customers directly to confirm the validity of the contracts, the revenue recognized, and the accounts receivable balance."  SAC ¶ 280; *id.* ¶¶ 276-79 (citing AU 330.04; 330.06; 326, 330.07, 330.09, 330.34, 330.35).

[13] As plaintiffs acknowledge, only two government contracts out of the eighteen that they reference are relevant to the 2003 and 2004 financial statements and their claim against PKF HK, the Dehua and Jinjiang Management contracts.  *See* SAC ¶ 93.

contract not because of dissatisfaction with CXTI's work, but because Dehua lacked sufficient capital to pay CXTI for the project.  SAC ¶ 194.

The *only* allegation in plaintiffs' SAC indicating that the Dehua contract was not everything it was represented to be is plaintiffs' allegation that, because of Dehua's lack of funds, it did not pay CXTI all of the $8.9 million in revenue that CXTI disclosed in its SEC filings for this contract during fiscal year 2004.  But it is well-recognized under GAAP that *revenue is not the same as cash receipts*.  As disclosed in CXTI's Form 10-K filing for 2004, CXTI recognized revenues using a percentage of completion method based on the costs that it incurred as a percentage of total costs estimated at completion, and not on a cash basis. Moreover, CXTI specifically disclosed that it would not receive any cash payments in connection with its e-Government contracts until the company achieved the first milestone set out in the contract, typically six to nine months after the project commenced.  Ha Decl., Ex. A (Form 10-KSB at 10).  Plaintiffs do not allege any facts indicating that CXTI failed to perform the work or incur the costs necessary to recognize $8.9 million in revenues in 2004.  Nor do they allege any other facts suggesting that CXTI did not properly recognize its revenues from the Dehua contract during 2004.  Thus, plaintiffs' allegations fail to raise *any* inference, let alone the required strong inference, that CXTI's accounting for this contract in its 2003 and 2004 financial statements violated GAAP.

*Second*, plaintiffs allege that CXTI improperly recognized revenues from a contract with Jinjiang Management in its 2003 and 2004 financial statements because the contract from which these revenues were derived was fraudulent and did not exist.  Plaintiffs also allege generally that PKF HK *must have* failed to contact Jinjiang City because, if it had, it would have discovered that CXTI's government contracts were fraudulent.  *See* SAC ¶ 294.[14]

---

[14] Plaintiffs have alleged that GAAS requires an auditor to contact its client's customer to confirm various facts regarding its contracts.  *Id*. ¶ 275.

The problem with plaintiffs' argument is that CXTI's customer was Jinjiang Management, not Jinjiang City. *Id*. ¶ 134. Plaintiffs do not allege (nor can they allege) that PKF HK failed to send a third party confirmation letter to Jinjiang Management requesting confirmation of the contract, revenues recognized, and accounts receivable. Nor do they allege that Jinjiang Management failed to provide PKF HK with such confirmation.[15] The SAC even concedes that the principal of Jinjiang Management was also a project manager at Expert Network, and thus in a position to facilitate the alleged fraud. *Id*. ¶¶ 155, 172.

Plaintiffs offer no support for their conclusory allegations that PKF HK's audits failed to fully comply with GAAS, and, as noted above, mere GAAS violations, without more, are not enough under the Reform Act and well-established law within the Second Circuit. *See Doral*, 563 F. Supp. 2d at 464-65; *BISYS*, 397 F. Supp. 2d at 449-50; *Zucker*, 963 F. Supp. at 307-08. Plaintiffs fall far short of establishing, through particularized facts, that PKF HK's audit was so deficient that it amounted to "*no audit at all*."

### b. Plaintiffs fail to sufficiently plead that PKF HK acted with scienter by ignoring alleged "red flags."

Plaintiffs next allege that PKF HK *must have* acted with scienter by ignoring three "bright red-flags for fraud" that should have put PKF HK on notice that CXTI's revenues were fraudulent: (1) CXTI's operations were in China; (2) CXTI used "percentage of completion" accounting to recognize the revenue earned from its contracts; and (3) CXTI's revenue and accounts receivable were increasing, as was the ratio of accounts receivable to revenue. SAC ¶¶ 290, 293, 295; *see also* Pls.' Mem. in Opp'n to BDO MTD (Dkt. 43) at 21-22. Again, the mere fact that PKF HK did not discover CXTI's alleged fraud is wholly insufficient to satisfy the

---

[15] Plaintiffs' allegation that they could not locate Jinjiang Management during their investigation, years after the alleged fraud was perpetrated, does not indicate that it did not exist in 2004. The inability of plaintiffs' investigator to speak with a representative of Jinjiang Management (SAC ¶¶ 168-69) says nothing about what PKF HK did or did not do—or knew or did not know—when performing its audit.

requisite pleading standards.  None of these alleged "red flags," taken either individually or as a whole, come anywhere close to creating an inference of scienter.

"Red flags" are not known, ordinary factors that potentially affect companies' financial statements; they are only those unique conditions that "'would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors.'" *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (quoting *In re AOL Time Warner Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 240 n.51 (S.D.N.Y. 2004)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1268-69 (11th Cir. 2006) (rejecting purported "red flags" as insufficient to plead scienter).  Plaintiffs' alleged "red flags" say nothing unique about CXTI's operations—they are all commonplace factors that apply to many companies.

Plaintiffs first assert that merely because CXTI operated "its entire business in mainland China . . . . there was obvious and substantial fraud risk."  SAC ¶ 295.  This argument is preposterous, and PKF HK's counsel is not aware of a single decision in which a court has held that the mere fact of a company's location overseas, let alone in China, constituted a "red flag" that the company might be engaging in fraud.  To the contrary, this precise argument was recently rejected in *In re FARO Technologies Securities Litigation*, 534 F. Supp. 2d 1248 (M.D. Fla. 2007), where a plaintiff argued that the auditor should have known of the fraud because it knew of "the fact that FARO conducted significant operations across international borders, including in Asia, where differing business environments and cultures exist."  *Id.* at 1266-67 (internal quotations omitted).  The court rejected this contention out of hand, stating, "The mere fact that a corporation is doing business outside of the United States does not mean an auditor should presume that business is necessarily being conducted fraudulently."  *Id.* at 1267.

Plaintiffs also assert that CXTI's use of percentage of completion accounting is a red flag for fraud.  SAC ¶ 295.  Plaintiffs *do not* assert that revenue recognition on a percentage of completion basis is itself inherently problematic—nor could they, because percentage of completion is a commonly used method of revenue recognition that is expressly permitted by

15

GAAP.  *See* SAC ¶ 259; Ha Decl., Ex. C (FASB § 605-35-25-57).[16]  Nor do plaintiffs deny that

percentage of completion accounting is permissible for e-government contracts like those at issue

here.  Instead, plaintiffs allege that the conditions for percentage of completion accounting were

not met because the contracts "were faked and had never been entered into by the purported

counter-parties."  SAC ¶ 260; *see also id.* ¶ 261.  This is nothing more than a circular argument

that PKF HK should have known CXTI's business was fraudulent because its business was

fraudulent.  Plaintiffs provide *no explanation* for why PKF HK "should have known" that

CXTI's use of percentage of completion accounting was improper at the time of the audit.

Plaintiffs finally argue that PKF HK should have known CXTI was committing fraud

because CXTI's revenues and accounts receivable were increasing and its ratio of accounts

receivable to revenue was also increasing.  *Id.* ¶ 292.  Plaintiffs do not allege that the change in

revenue between 2003 and 2004—the only time period relevant to PKF HK's audit—was a "red

flag."  *See id.* (referring to growth in accounts receivable balance for 2005 and 2006.)  Plaintiffs'

argument does nothing more than recognize the regular course of events for a young company—

namely that an increase in revenue and accounts receivable is to be expected.  PKF HK audited

the first two years of CXTI's e-Government business.  In the first year, CXTI entered into one

contract—reportedly worth $24.7 million total—and recognized $4.7 million in revenue.  *Id.*

¶ 100.  The next year, CXTI continued to perform work on that contract, recognizing an

additional $17.8 million in revenue.  *Id.*  It also entered into a second contract—reportedly worth

$15.6 million total—and recognized $8.9 million in revenue from that contract.  *Id.*  Thus, the

fact that CXTI's revenues increased from 2003 to 2004 is entirely sensible as CXTI had a full

year to work on its first contract, and added the revenues from its second.  Similarly, the fact that

---

[16] GAAP provides guidance regarding when percentage of completion is appropriate, instructing that it is proper whenever "reasonably dependable estimates . . . of the extent of progress toward completion, contract revenues, and contract costs" can be made.  Ha Decl., Ex. C (FASB § 605-35-25-56).  Indeed, when those circumstances are present, "*[t]he percentage-of-completion method is considered preferable as an accounting policy*."  *Id.* (FASB § 605-35-25-57) (emphasis added).

CXTI's additional work would generate additional accounts receivable merely reveals the ordinary course of business; it is not a "flag" for extraordinary fraudulent conduct.

It is commonplace in today's international economy for a company to conduct business in China and to experience increased revenues and accounts receivable in a given year. Moreover, percentage of completion accounting is a well-established method of accounting for revenues that is recognized and accepted under GAAP. None of these things taken together or separately would be considered a "red flag" by any reasonable auditor. Plaintiffs' purported "red flags" fall far short of demonstrating that PKF HK knew of and recklessly disregarded risks that CXTI's financial statements were fraudulent. There is nothing pled in the SAC to contradict the fundamental facts that at the time PKF HK performed its audit it observed a young company operating in China, in the first two years of its e-Government business, generating revenue based on two new contracts, and recognizing that revenue in a manner accepted by GAAP.[17]

//

//

//

---

[17] While not identified as a "red flag" in the SAC, plaintiffs also appear to allege that PKF HK acted with scienter because of a difference in revenue reported by CXTI in its Form 10-KSB and by Expert Network in the financial statements it filed with the Chinese government. *See* SAC ¶¶ 239-56, 309. This argument is unavailing. Expert Network's 2004 annual report was filed with the Industry and Commerce Administrative Bureau of Shenzen City on March 2, 2005 (*id.* ¶ 246), which is 8 days *after* PKF HK issued its audit opinion letter (Ha Decl., Ex. A (Form 10-KSB at 14)). Plaintiffs do not allege how PKF HK could have been aware of Expert Network's annual report at the time it conducted its audit, or that PKF HK was egregiously reckless in not knowing of it.

IV.    **<u>CONCLUSION</u>**

For the reasons set forth above, Defendant PKF HK respectfully requests that the Court grant its motion to dismiss plaintiffs' claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: December 14, 2009

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:                    */s/ Michael C. Tu*
                    Michael C. Tu

Michael C. Tu (*admitted pro hac vice*)
Steven J. Fink
Charles J. Ha
666 Fifth Avenue
New York, New York 10103-0001
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for PKF Hong Kong*