UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS MUNOZ, et al.,

            Plaintiffs,

            vs.

CHINA EXPERT TECHNOLOGY, INC.; PKF
NEW YORK, CERTIFIED PUBLIC
ACCOUNTANTS, A PROFESSIONAL CORP.;
PKF HONG KONG, CERTIFIED PUBLIC
ACCOUNTANTS; AND BDO MCCABE LO
LTD., CERTIFIED PUBLIC ACCOUNTANTS,

            Defendants.

07-CV-10531 (AKH)

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
ON GROUNDS OF FORUM NON CONVENIENS**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .................................................................1

II.   FACTUAL BACKGROUND ...................................................................2

III.  THE SAC SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM
      NON CONVENIENS ...........................................................................3

      A.   Lead Plaintiffs' Choice of Forum is Not Entitled to Significant Deference............4

           1.   The Relevant Evidence Is in Hong Kong and China ...................................5

           2.   The Forum Choice of Representative Plaintiffs Deserves Less
                Deference ...........................................................................6

           3.   Any Deference Due Plaintiffs' Forum Choice Does not Control ................7

      B.   Hong Kong is an "Adequate" Alternative Forum for Resolution of this
           Dispute ................................................................................7

           1.   Defendants Are Subject to Jurisdiction and Service of Process .................8

           2.   Hong Kong Provides Adequate Legal Claims and Remedies ....................9

      C.   The Relevant Private and Public Interests Favor Dismissal .................................10

           1.   The Relevant Private Factors Favor Dismissal.........................................10

                a.   No Compulsory Process for Key Witnesses in the United
                     States ...........................................................................11

                b.   The Cost and Inconvenience of Access to Sources of Proof .........13

                c.   Burden of Enforcing a U.S. Judgment Against Defendants ..........14

           2.   The Relevant Public Factors Favor Dismissal ...........................................16

IV.   CONCLUSION...................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adamowicz v. Barclays Private Equity France S.A.S.*,
No. 05-Civ-0961, 2006 U.S. Dist. LEXIS 11675 (S.D.N.Y. March 22, 2006) ............................ 4

*Aguinda v. Texaco, Inc.*,
303 F.3d 470 (2d Cir. 2002) ................................................................................................. 10

*Alcoa S.S. Co. v. M/V Nordic Regent*,
654 F.2d 147 (2d Cir. 1980) ................................................................................................... 7

*Alfadda v. Fenn*,
159 F.3d 41 (2d Cir. 1998) ........................................................................................... passim

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
994 F.2d 996 (2d Cir. 1993) ..................................................................................... 4, 15, 17

*Banco de Seguros del Estado v. J.P. Morgan Chase & Co.*,
500 F. Supp. 2d 251 (S.D.N.Y. 2007) .................................................................................. 6

*Blanco v. Mancera*,
997 F.2d 974 (2d Cir. 1993) ................................................................................. 3, 11, 13, 14

*Capital Currency Exch., N.V. v. National Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998) ................................................................................................. 17

*Cortec Corp. v. Erste Bank der Oesterreichischen Sparkassen AG*,
535 F. Supp. 2d 403 (S.D.N.Y. 2008) .................................................................................. 6

*DeYoung v. Beddome*,
707 F. Supp. 132 (S.D.N.Y. 1989) ....................................................................................... 6

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs.*,
949 F. Supp. 1123 (S.D.N.Y. 1997) .................................................................................. 7, 9

*Europe & Overseas Commodity Traders, S.A., v. Banque Paribas London*,
940 F. Supp. 528 (S.D.N.Y. 1996), *aff'd*, 147 F.3d 118 (2d Cir. 1998) .............................. 13

*Firebird Republics Fund, Ltd. v. Moore Capital Mgmt.*,
Civ No. 09-303, 2009 U.S. Dist. LEXIS 59982 (S.D.N.Y. July 14, 2009) ...................... 4, 10

*First Union Nat'l Bank v. Banque Paribas*,
135 F. Supp. 2d 443 (S.D.N.Y. 2001) .................................................................................. 7

*Gilstrap v. Radianz Ltd.,*
    443 F. Supp. 2d 474 (S.D.N.Y. 2006) ........................................................ 6, 7, 10

*Gross v. British Broadcasting Corporation,*
    386 F.3d 224 (2d Cir. 2004) ............................................................................... 17

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) ................................................................... 10, 14, 16, 17

*In re Air Crash off Long Island,*
    65 F. Supp. 2d 207 (S.D.N.Y. 1999) .................................................................. 10

*In re Livent, Inc. Sec. Litig.,*
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) .................................................................... 6

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir 2001) (en banc) ......................................................... passim

*Karlitz v. Regent Int'l Hotels, Ltd.,*
    No. 95 Civ 10136, 1997 WL 88291 (S.D.N.Y. Feb 28, 1997) ........................... 16

*Koster v. (American) Lumbermens Mut. Cas. Co.,*
    330 U.S. 518 (1947) ............................................................................................ 6

*LaSala v. Bank of Cyprus Pub. Co.,*
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) .................................................................. 6

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
    416 F.3d 146 (2d. Cir. 2005) ...................................................................... 3, 4, 5

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ............................................................................. 10, 11, 16

*Pollux Holding, Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) ................................................................................ 12

*PT United Can Co. v. Crown Cork & Seal Co.,*
    138 F.3d 65 (2d Cir. 1998) ........................................................................... 8, 10

*Pyrenee, Ltd. v. Wocom Commodities Ltd.,*
    984 F. Supp. 1148 (N.D. Ill. 1997) ...................................................................... 9

*Scottish Air Int'l v. British Caledonian Group, PLC,*
    81 F.3d 1224 (2d Cir. 1996) .............................................................................. 14

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.,*
    421 F. Supp. 2d 741 (S.D.N.Y. 2006) ..................................................... 12, 13, 16

*Yung v. Lee,*
No. 00 Civ 3965, 2002 U.S. Dist. LEXIS 16655 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 432
F.3d 142 (2d Cir. 2005) ............................................................................................. 8, 9

### OTHER AUTHORITIES

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 8 I.L.M. 37
(1969), *reprinted at* 28 U.S.C. § 1781 note............................................................. 11

### DECLARATIONS AND EXHIBITS FILED IN SUPPORT OF MOTION

Declaration of Cameron Smith

Exhibit A:  CXTI Annual Report (Form 10-KSB) (filed March 31, 2006)

Exhibit B:  CXTI Registration Statement (Form SB-2) (filed December 29, 2005)

Exhibit C:  CXTI Annual Report (Form 10-K) (filed April 12, 2007)

Exhibit D:  Table of Potential Witnesses

Declaration of Joseph Fok, S.C., J.P.

Exhibit E:  Curriculum Vitae

Exhibit F:  Extracts from the Basic Law of the Hong Kong Special Administrative
Region

Declaration of Dr. Xixin Wang

Exhibit G:  Curriculum Vitae

Declaration of Johnson Kong

Declaration of Derek Wan

Defendants BDO Limited (f/k/a BDO McCabe Lo Ltd.) ("BDO Ltd.") and PKF Hong

Kong (collectively, "Defendants"), respectfully submit this Memorandum of Law in Support of

Their Joint Motion To Dismiss the Second Amended Complaint on Grounds of *Forum Non*

*Conveniens.*

## I.      PRELIMINARY STATEMENT

Plaintiffs' claims have only the most tenuous connection to this forum and should be

adjudicated in Hong Kong.  Plaintiffs' entire case relates to conduct occurring in Hong Kong and

mainland China.  The alleged fraud and the allegedly improper audits occurred in Hong Kong

and mainland China.  Plaintiffs base the vast majority of their allegations upon conversations

with at least 24 nonparty witnesses who are located in Hong Kong and China, presumably do not

speak English as their primary language, and who cannot be compelled to travel to New York to

provide testimony in this forum.  If the case proceeds in New York, Defendants will be denied

access to these witnesses who may prove critical to the defense.  Also, the vast majority of

documentary evidence relevant to Plaintiffs' claims is written in Chinese and located in Hong

Kong or in China.  Requiring Defendants to produce this documentation in New York and

translate it into English for trial would be prohibitively expensive, inconvenient and prejudicial.

Courts routinely recognize that Hong Kong is an adequate and competent forum for the

adjudication of complex commercial claims, including allegations of securities fraud.  This Court

has broad discretion to determine that Hong Kong is a more convenient forum for adjudication of

this dispute, and any dismissal based on *forum non conveniens* would be reviewed only for clear

abuse of such discretion.  The location of relevant documents, witnesses and conduct compels

the conclusion that this case belongs in Hong Kong.

## II.    FACTUAL BACKGROUND

Plaintiffs' claims concern conduct and parties centered in Hong Kong and China. According to the Second Amended Complaint (the "SAC"), defaulted defendant China Expert Technology, Inc. ("CXTI") is a Nevada shell corporation that "operat[ed] its entire business in mainland China." (SAC ¶ 295.) CXTI's business derived "nearly all [its] revenue" from contracts entered into between its China-based, wholly owned subsidiary, Expert Network (Shenzhen) Company Limited ("Expert Network") and five local governments in China, primarily through private management companies that had authority to enter into contracts on behalf of the governments. (SAC ¶ 76; *id.* ¶¶ 78, 79, 85, 93, 99, 103.) Expert Network maintained offices in Shenzhen city, China and Jinjiang city, China (SAC ¶ 330; CXTI Annual Report (Form 10-KSB), at 9 (March 31, 2006) attached to the declaration of Cameron Smith ("Smith Decl.") as Exhibit A), and CXTI maintained its office in Hong Kong. (SAC ¶¶ 332-333; Smith Decl., Ex. A, at 3.) Plaintiffs do not allege that either CXTI or Expert Network maintained any office in the United States or conducted any business here.[1] Plaintiffs allege that CXTI fabricated nearly all the revenue pertaining to its government contracts, and that Defendants made fraudulent misstatements in the course of auditing CXTI's financial statements for the fiscal years 2003-2006.[2] (SAC ¶¶ 106-107, 306-329.)

---

[1]    In its securities filings, CXTI warned investors that "[a]ll or a substantial portion of our assets are located in China," that "our directors and officers are non-residents of the United States," and that it may not be possible to effect service of process in the U.S. upon CXTI's management or to enforce a U.S. judgment based on U.S. securities law against CXTI in Hong Kong or China. (*See* CXTI Registration Statement (Form SB-2), at 9 (Dec. 29, 2005) attached to Smith Decl. as Exhibit B; *and see* CXTI Annual Report (Form 10-K), at 15 (April 12, 2007) attached to Smith Decl. as Exhibit C.)

[2]    Plaintiffs have not actively prosecuted their claims against CXTI. (*See* Notice of Default, Dkt. No. 3, filed Jan. 22, 2008, which Plaintiffs have taken no action to enforce.)

Defendants BDO Ltd. and PKF Hong Kong are certified public accounting firms based in Hong Kong. (SAC ¶¶ 18, 21, 23.) Defendants performed their audits of CXTI in Hong Kong and in the Guangdong and Fujian provinces of the People's Republic of China. (Declaration of Johnson Kong ("Kong Decl."), at ¶¶ 7, 11; Declaration of Derek Wan ("Wan Decl."), at ¶ 9.) While some of the audit materials are in English, the vast majority of documentary evidence related to the audits is in Chinese and located in Hong Kong. (Kong Decl., at ¶ 14; Wan Decl., at ¶ 13.) All the witnesses named in the SAC appear to be located in Hong Kong or mainland China (*see* Table of Potential Witnesses, attached to Smith Decl. as Exhibit D),[3] and presumably do not speak English as their primary language, if at all. None of the BDO or PKF Hong Kong employees who performed the audits speak English as their primary language. (Kong Decl., at ¶ 11; Wan Decl., at ¶ 8.)

## III.    THE SAC SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS

*Forum non conveniens* motions are evaluated according to a three-step procedure. First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir 2001) (en banc). Second, a court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.* Finally, "a court balances the private and public interests implicated in the choice of forum." *Id.* The proper balance to afford those interests is committed to this Court's "broad discretion." *Blanco v. Mancera*, 997 F.2d 974, 979 (2d Cir. 1993). Courts routinely dismiss securities fraud claims, including claims for violations of § 10(b) of the Exchange Act of 1934 and Rule 10b-5,

---

[3]    The Complaint identifies only one witness who may be subject to jurisdiction and service of process in this forum: Henry Freire, an employee of PKF New York. (SAC at ¶ 45.)

on grounds of *forum non conveniens*. *See, e.g., Allstate Life Ins. Co. v. Linter Group Ltd.*, 994

F.2d 996, 1001-02 (2d Cir. 1993) (dismissing § 10(b) and Rule 10b-5 claims on grounds of

*forum non conveniens*); *Adamowicz v. Barclays Private Equity France S.A.S.*, No. 05-Civ-0961,

2006 U.S. Dist. LEXIS 11675 (S.D.N.Y. March 22, 2006) (dismissing §§ 10(b) and 20(a) claims

on grounds of *forum non conveniens*).  Here, all three parts of the *forum non conveniens* inquiry

compel the conclusion that this Court should dismiss this action in favor of adjudication in Hong

Kong.

### A.    Lead Plaintiffs' Choice of Forum Is Not Entitled to Significant Deference

The first step in a *forum non conveniens* analysis is determining the deference due a

plaintiff's choice of forum.  As this Court has explained, the plaintiff's choice "is only an entry

point on a 'sliding scale,' in which more deference is due as it appears more likely that the

choice was 'dictated by reasons that the law recognizes as valid'...." *Firebird Republics Fund,

Ltd. v. Moore Capital Mgmt.*, Civ No. 09-303, 2009 U.S. Dist. LEXIS 59982, at *4 (S.D.N.Y.

July 14, 2009) (quoting *Iragorri*, 274 F.3d at 71-72).  It is well-established that "neither the

plaintiff's citizenship nor residence ... necessarily controls the outcome." *Iragorri*, 274 F.3d at

74.  Instead, courts must consider "the totality of circumstances supporting a plaintiff's choice of

forum" in assessing how much deference to accord. *Norex Petroleum, Ltd.*, 416 F.3d at 154.

Courts will not afford a plaintiff's choice substantial deference unless the totality of

circumstances reveals that the lawsuit has a "bona fide connection" to the chosen forum.

*Iragorri*, 274 F.3d at 72.

Evaluating the totality of the circumstances in this case, Plaintiffs' choice of forum is not

entitled to substantial deference for two primary reasons.  First, given the limited availability of

witnesses, the cost of transporting the relevant evidence to New York, and the inconvenience of

litigating this case in New York, Plaintiffs' chosen forum is not genuinely convenient.  Second,

courts routinely hold that representative plaintiffs' choice of forum receives less deference because it lacks the "bona fide connection" of an individual suing on his own behalf in his home forum.

### 1.    The Relevant Evidence Is in Hong Kong and China

Due to the unavailability of necessary witnesses and evidence in this forum and the extreme inconvenience and expense for all parties that would attend litigating Plaintiffs' claims here, the totality of circumstances dictates that Plaintiffs' chosen forum is not genuinely convenient and is not entitled to deference. *Norex*, 416 F.3d at 155; *Iraggori*, 274 F.3d at 72.

CXTI's alleged fraud was perpetrated in Hong Kong and China. The witnesses and evidence relevant to Plaintiffs' claims are located there. The SAC references at least 24 nonparty witnesses located in Hong Kong or China. (*See* Smith Decl., Ex. D.) These witnesses cannot be compelled to travel to New York to provide live testimony. Given their unavailability, requiring Defendants to litigate Plaintiffs' claims in New York without the benefit of live testimony from critical witnesses would be tremendously burdensome and prejudicial.

As the attached declaration of Mr. Johnson Kong, Managing Partner of BDO Ltd., makes clear, BDO Ltd. employees who performed the audits of CXTI reside in Hong Kong or mainland China, are not U.S. citizens, do not regularly travel to the United States and do not speak English as their primary language. (Kong Decl., at ¶¶ 10-12.) The same is true for PKF Hong Kong. (Wan Decl., at ¶¶ 7-10.) Notwithstanding the cost to bring members of the audit teams to the United States to provide deposition and trial testimony, the cost of interpreters and translation would be tremendously burdensome and inconvenient. In addition, BDO Ltd. and PKF Hong Kong are in possession of numerous documents from the audit engagements, and while some of these documents are in English, the vast majority are in Chinese and are located in Hong Kong.

(Kong Decl., at ¶ 14; Wan Decl., at ¶ 13.)  Translating and conveying documentary evidence to New York would be tremendously costly and inconvenient.

Hong Kong is the location of the relevant documents, witnesses, and allegedly fraudulent conduct.  Plaintiffs' choice of forum therefore merits "little, if any, deference."  *See Banco de Seguros del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 261 (S.D.N.Y. 2007) (holding that plaintiff's forum choice merited "little, if any, deference" where "nearly every event alleged in the Complaint either occurred in Uruguay, or involved a decision finalized in Uruguay.")[4]

### 2.    The Forum Choice of Representative Plaintiffs Deserves Less Deference

Further, Lead Plaintiffs' choice of forum is entitled to less deference because they have sued in a representative capacity.  *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("Plaintiffs' choice of forum is … entitled to less deference where, as here, they are suing in a representative capacity.") (citations omitted), *aff'd*, 233 F. App'x 83 (2d Cir. 2007); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 217 (S.D.N.Y. 1999) (same).  In a class action, a plaintiff's choice of forum is more likely to reflect litigation strategy than convenience. *DeYoung v. Beddome*, 707 F. Supp. 132, 138 (S.D.N.Y. 1989) (citing *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523-27 (1947)).  And "there is little sense to allowing a U.S. citizen to haul a group of foreign defendants into a U.S. court on transactions having little

---

[4]    *See also Cortec Corp. v. Erste Bank der Oesterreichischen Sparkassen AG*, 535 F. Supp. 2d 403, 408 (S.D.N.Y. 2008) (dismissing for *forum non conveniens* where "[n]one of the witnesses necessary to resolve [the] action resides in New York, and . . . . [m]ost or all of the relevant documentary evidence is likewise situated abroad" and was not written in English); *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 259 (S.D.N.Y. 2007) (dismissing for *forum non conveniens* where the "overwhelming majority of witnesses resides in Cyprus"); *First Union Nat'l Bank v. Banque Paribas*, 135 F. Supp. 2d 443, 454

or nothing to do with this country where there is an available foreign forum significantly better suited to handling the litigation in a prompt, efficient and effective manner." *Gilstrap*, 443 F. Supp. 2d at 480 (citation omitted). Because the Plaintiffs have sued in a representative capacity, their forum choice is entitled to less deference.

### 3.    Any Deference Due Plaintiffs' Forum Choice Does Not Control

Just as the Plaintiffs' citizenship does not control the question of deference, the degree of deference to which the choice of forum is entitled does not control the outcome of the three-step *forum non conveniens* analysis. *Iragorri*, 274 F.3d at 74 (citing *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 152 (2d Cir. 1980) (en banc) ("American citizenship alone is not a barrier to dismissal on the ground of forum non conveniens.")). As shown below, the adequacy of Hong Kong as an alternative forum and the overwhelming public and private factors that favor litigating in Hong Kong compel dismissal on *forum non conveniens* grounds regardless of the deference due to Plaintiffs' choice. *See Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998) (affirming dismissal where foreign forum "will be most convenient and will best serve the ends of justice") (internal quotation omitted).

### B.    Hong Kong Is an "Adequate" Alternative Forum for Resolution of this Dispute

Federal courts have consistently deemed Hong Kong to be an adequate alternative forum for the resolution of complex commercial disputes and claims of securities fraud. *See, e.g., Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs.*, 949 F. Supp. 1123, 1129 (S.D.N.Y. 1997) (Hong Kong adequate forum for litigation of claims including, *inter alia*, claim for violation of § 10(b) of the Exchange Act of 1934 and Rule 10b-5). A court of this district has previously dismissed a similar securities fraud action alleging violations of § 10(b) of the

---

(S.D.N.Y. 2001) (dismissing for *forum non conveniens* where "[t]he proof all is in

7

Exchange Act of 1934 against the BDO affiliate in Hong Kong on grounds of *forum non conveniens* so that the case could be litigated in Hong Kong. *See Yung v. Lee*, No. 00 Civ 3965, 2002 U.S. Dist. LEXIS 16655, at *6 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 432 F.3d 142 (2d Cir. 2005) ("Hong Kong has uniformly been considered an adequate alternative forum for commercial disputes"). Hong Kong provides an adequate alternative forum because (1) the defendants are subject to jurisdiction and service of process there, and (2) Hong Kong permits litigation of the subject matter of the dispute (*i.e.*, fraud in the sale of securities and accounting services). *See Alfadda*, 159 F.3d at 45 (discussing adequate forum analysis).

### 1.    Defendants Are Subject to Jurisdiction and Service of Process

As the accompanying declaration by an experienced Hong Kong practitioner demonstrates, Defendants would be subject to jurisdiction and service of process in Hong Kong because they either are located in Hong Kong or allegedly engaged in tortious conduct there. (*See* Declaration of Joseph Fok, S.C., J.P. ("Fok Decl."), at ¶¶ 20-21, 31-33.) BDO Ltd. and PKF Hong Kong acknowledge that they are subject to personal jurisdiction and service of process in Hong Kong. (*See* Kong Decl., at ¶¶ 4-5; Wan Decl., at ¶ 14.) PKF New York, which has persuasively argued that the claims against it are not well-pleaded, may soon be eliminated from this action if its motion to dismiss is successful.[5] As to CXTI, it has failed to appear or to otherwise defend and has been defaulted. Nonetheless, CXTI is subject to jurisdiction in Hong Kong because it maintained its executive offices there. (*See* SAC ¶¶ 332-333; Smith Decl., Ex.

---

London or closer to London than to New York").

[5]    This Court may condition its dismissal on grounds of *forum non conveniens* on all remaining defendants stipulating to jurisdiction and service of process in the alternative forum. *See, e.g., PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 75 (2d Cir. 1998) (conditioning *forum non conveniens* dismissal on defendant's stipulation to jurisdiction of the alternative forum).

A, at 3; *id.*, Ex. B, at 2; *id.*, Ex. C, at 3.)  Because each of the Defendants is subject to or will

consent to jurisdiction in Hong Kong, the first requirement for adequacy is satisfied.

### 2.    Hong Kong Provides Adequate Legal Claims and Remedies

To be "adequate" the alternate forum must permit adjudication of the subject matter of

the Plaintiffs' suit.  *See Alfadda*, 159 F.3d at 45.  Hong Kong permits litigation of an action

based on securities fraud.[6]  (*See* Fok Decl., at ¶¶ 28, 29, 37.)  Allegations of fraud in the sale of

securities or the auditing of financial statements are capable of supporting causes of action in

Hong Kong as torts of deceit and misrepresentation, for which damages are an available remedy.

(*See* Fok Decl., at ¶¶ 4, 28-30, 37.)

Several courts, including those in this district, have found that Hong Kong is an adequate

alternative forum that permits adjudication of securities fraud claims.  *See, e.g., Yung*, 2002 U.S.

Dist. LEXIS 16655, at *5-6 (dismissing securities fraud claim brought in New York against the

BDO affiliate in Hong Kong in favor of adjudication in Hong Kong despite "strong favorable

presumption" given to plaintiffs' choice of New York forum); *Dragon Capital Partners L.P.*,

949 F. Supp. at 1129 (Hong Kong adequate forum for litigation of claim for fraud in the sale of

securities and commodities); *Pyrenee, Ltd. v. Wocom Commodities Ltd.*, 984 F. Supp. 1148,

1164 (N.D. Ill. 1997) (Hong Kong adequate forum for litigation of fraud claim).  As these courts

recognized, securities fraud claims can be pursued in Hong Kong as "causes of action for fraud,

deceit or misrepresentation." *Dragon Capital Partners L.P.*, 949 F. Supp. at 1129; *Pyrenee*,

---

[6]    Defendants do not concede that Plaintiffs' allegations state a claim for securities fraud
under the pleading standards of the United States or Hong Kong.

*Ltd.*, 984 F. Supp. at 1162.[7]  Because Hong Kong permits litigation of the subject matter of

Plaintiffs' claims, the second requirement for adequacy is satisfied.

### C.    The Relevant Private and Public Interests Favor Dismissal

The third step in the *forum non conveniens* analysis requires the court to balance the

private and public interests implicated in the choice of forum to determine whether adjudication

in Hong Kong "will be most convenient and will best serve the ends of justice." *Alfadda*, 159

F.3d at 46 (internal quotation omitted); *and see Firebird Republics Fund, Ltd.*, 2009 U.S. Dist.

LEXIS 59982, at *6.

### 1.    The Relevant Private Factors Favor Dismissal

Factors pertaining to the private interests of the litigants include (1) "availability of

compulsory process for attendance of unwilling" witnesses; (2) the "relative ease of access to

sources of proof"; (3) "the cost of obtaining attendance of willing witnesses"; (4) "the

enforceability of a judgment if one is obtained"; and (5) "all other practical problems that make

trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, at

241 n.6 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *and see Iragorri*, 274

F.3d at 73-74.  This Court has explained that "the relevant private interests amount to the

convenience of the litigants." *Firebird Republics Fund, Ltd.*, 2009 U.S. Dist. LEXIS 59982, at

---

[7]    Substantive differences in Hong Kong law or procedural differences between Hong Kong and the United States are irrelevant to the adequacy analysis so long as Hong Kong permits adjudication of the subject matter of this case.  "The availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum." *PT United Can Co.*, 138 F.3d at 74.  Similarly, a foreign forum is adequate even if adjudication there may impose a strategic or procedural disadvantage upon the plaintiff. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir. 2002); *Gilstrap*, 443 F. Supp. 2d at 482 ("[T]he unavailability of such procedural mechanisms as class actions . . . does not render a foreign forum inadequate as a matter of law.").  "The possibility that the alternative forum might result in an unfavorable change in the law for the plaintiff is not accorded substantial weight." *In re Air Crash off Long Island*, 65 F. Supp. 2d 207, 211 (S.D.N.Y. 1999).

*6. Here, convenience of the litigants is best served by trial in Hong Kong, and an order of dismissal would be reviewed only for "clear abuse of discretion." *Blanco*, 997 F.2d at 978 (quoting *Reyno*, 454 U.S. at 257).

        **a.**        **No Compulsory Process for Key Witnesses in the United States**

Without compulsory process over critical witnesses in this forum, trial in New York would be burdensome for all parties and highly prejudicial for Defendants, a factor that weighs strongly in favor of dismissal. The SAC identifies numerous nonparty witnesses in Hong Kong who would be critical to a defense against Plaintiffs' claims but who cannot be compelled to testify in the United States. (*See* Smith Decl., Ex. D.) In addition, several important witnesses who performed the audits of CXTI are no longer employees of Defendants and thus cannot be made available for trial without the compulsory process that would be available only in Hong Kong. (*See* Kong Decl., at ¶ 10; Wan Decl., at ¶ 7.)

The difficulty in obtaining evidence from abroad is particularly acute with respect to witnesses and documents located in China. China expressly prohibits any foreign person from conducting an investigation or collecting evidence for use in foreign legal proceedings except as authorized by the relevant Chinese authorities. (*See* Declaration of Xixin Wang ("Wang Decl."), at ¶¶ 11, 15-16, 23-24, 27, 37-39, 41(b).) Under Article 2 of the Hague Convention[8] and Article 261 of China's Civil Procedure Law, all such requests must be approved by the Bureau of International Judicial Assistance, Ministry of Justice of the PRC. (*Id.*, at ¶¶ 9-12, 41.) However, according to the United States Department of State, in practice, no one from the United States has *ever* successfully obtained any evidence from China under this process. (*Id.*, at ¶ 13.) The

---

[8]    "Hague Convention" refers to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 8 I.L.M. 37 (1969), *reprinted at* 28 U.S.C. § 1781 note.

pitfalls involved in gathering evidence in China are highlighted by the fact that, if the allegations in the SAC are to be believed, Plaintiffs appear to have already violated Chinese law in this regard through: (1) conducting an investigation in China in connection with this litigation (*id.*, at ¶¶ 14-16, 41(b)); and (2) disclosing financial statements and government records obtained in violation of China's State Secret Protection Law (*id.*, at ¶¶ 17-19, 27, 31-36, 41), and its Archives Law. (*Id.*, at ¶¶ 21-25, 41(d).)

Even if discovery could be obtained through the Hague Convention or letters rogatory, courts have recognized that such methods are "cumbersome and time consuming." *Cortec*, 535 F. Supp. 2d at 412. Obtaining documentary evidence and deposition testimony in Hong Kong through the Hague Convention would unnecessarily delay these proceedings (Fok Decl., ¶¶ 23-24), and even if such evidence could be obtained it would be a poor substitute for live testimony. Live testimony is particularly critical in cases alleging fraud, where such testimony from key witnesses is "necessary so that the trier of fact can assess the witnesses' demeanor." *Alfadda*, 159 F.3d at 48 (dismissing § 10(b) claim on grounds of *forum non conveniens*); *see also Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006) ("The Second Circuit has held that a witness's live-in court testimony is the preferred method of presenting his or her testimony."). Where the number of nonparty witnesses is large, coupled with courts' natural preference for live testimony and the time-consuming nature of using letters rogatory or letters of request, this factor weighs heavily in favor of dismissal. *Strategic Value Master Fund, Ltd.*, 421 F. Supp. 2d at 766 ("The fact that defendant's nonparty witnesses are not subject to the Court's compulsory process weighs heavily in favor of dismissal.") (citing *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)).

**b.    The Cost and Inconvenience of Access to Sources of Proof**

Nearly all the relevant documents and witnesses are located in Hong Kong or China. (*See* Smith Decl., Ex. D; Kong Decl., at ¶¶ 10, 11, 14; Wan Decl., at ¶¶ 7, 12, 13.) Nearly every document relevant to Plaintiffs' claims and essential for Defendants' case will be written in Chinese. (*See* Kong Decl., at ¶ 14; Wan Decl., at ¶ 13.) Dismissal is "favored" where "most of the witnesses and documentary evidence reside in a foreign country" because of the "significant burdens" imposed on the parties. *Strategic Value Master Fund, Ltd.*, 421 F. Supp. 2d at 766.

Making documents and witnesses available in the United States and translating volumes of documents and testimony for use during pre-trial proceedings and trial will be prohibitively burdensome and expensive. *See Europe & Overseas Commodity Traders, S.A., v. Banque Paribas London*, 940 F. Supp. 528, 538 (S.D.N.Y. 1996) (cost to transport witnesses to the U.S. "would impose a prohibitive cost on defendants"), *aff'd*, 147 F.3d 118 (2d Cir. 1998). In Hong Kong, by contrast, many of the District and High Court Judges are native Chinese speakers and are proficient with written Chinese. (Fok Decl., at ¶ 13.5.) The Hong Kong court may direct that a trial be heard before a bilingual Judge to maximize the efficiency and fairness of a trial. (Fok Decl., at ¶¶ 13.4, 13.5.) Legal representatives who are proficient in Chinese and Chinese document translation services and interpreters are readily available in Hong Kong. (Fok Decl., at ¶ 13.5.) If a witness chooses to give evidence in a language other than English, and translation of oral testimony is necessary, interpretation facilities are readily available for translation of oral testimony. (Fok Decl., at ¶ 13.5.) Trial or deposition in Hong Kong will be less burdensome for the witnesses in this case and far less costly to the parties than bringing critical witnesses to New York for depositions and trial. *See, e.g., Blanco*, 997 F.2d at 982 (dismissing case in favor of

Venezuela where most, if not all, of the witnesses whose testimony would be required were located there).

By proceeding in Hong Kong, all of the discovery that will be necessary can be reviewed in the first instance by legal advisors in Hong Kong in Chinese, without the additional expense of translation, so that only those documents to be introduced into evidence need be translated into English. Therefore, the expenses and burden involved in litigating this dispute will be far lower in Hong Kong, a factor that weighs heavily in favor of dismissal. *See, e.g., Blanco*, 997 F.2d at 982-83 (where the documentary evidence was in Spanish, as would be trial or deposition testimony, concluding that "[t]his factor militates strongly in favor of Venezuela" as the more appropriate forum).

### c.    Burden of Enforcing a U.S. Judgment Against Defendants

Hong Kong is not a party to any convention governing the recognition and enforcement of a United States civil judgment. (Fok Decl., at ¶ 25.) Any such judgment would have to be enforced under Hong Kong common law, which would entail commencing a new action in Hong Kong. (Fok Decl., at ¶¶ 25-26.) Maintaining this action in New York would be wasteful and duplicative; adjudication in Hong Kong would be more efficient and convenient, and would provide greater certainty about the enforceability of the ultimate judgment. Such considerations also weigh in favor of dismissal. *See Gilbert*, 330 U.S. at 508 (considering as factor "questions as to the enforceability of a judgment if one is obtained"); *Scottish Air Int'l v. British Caledonian Group, PLC*, 81 F.3d 1224, 1233 (2d Cir. 1996) (affirming *forum non conveniens* dismissal where, *inter alia*, injunctive relief sought would be unenforceable in Great Britain and enforcement of any damages awards would require additional proceedings in British courts).

The burden of proceeding in the U.S. given the unenforceability of a U.S. judgment against a Hong Kong entity would fall on Plaintiffs and Defendants alike. Although there has been a default judgment against CXTI, the company and its management remain an important party and key source of evidence in this dispute. Under the U.S. securities laws' proportionate fault rules, Defendants would need to provide evidence regarding CXTI's conduct to establish their relative proportionate fault compared to CXTI and its officers. If the Hong Kong-based accounting firms are forced to litigate the propriety of their work in the U.S. in this case, they will not be able effectively to bring related claims against former CXTI management or other parties located in Hong Kong for their false representation letters, false confirmations or other efforts to assist CXTI in defrauding BDO Ltd. and PKF Hong Kong. Defendants would have to litigate these issues without being able to compel evidence or testimony from CXTI, its management or others in Hong Kong in this U.S. action. Then, because a U.S. judgment could not be enforced in Hong Kong, Defendants would have to commence a new, essentially duplicative action there. As the Second Circuit has held in dismissing § 10(b) and Rule 10b-5 claims, such a burden on Defendants is a factor favoring dismissal. *Allstate Life Ins. Co.*, 994 F.2d at 1002 ("[T]he inability to implead other parties is a factor favoring dismissal on the ground of forum non conveniens.") (citation omitted).

The fact that CXTI has not entered an appearance and was defaulted in this case demonstrates this Court's limited capacity to reach parties and evidence half a world away. CXTI's securities filings warned investors that CXTI's business, management personnel and assets were located in Hong Kong and China, and that it might be impossible to effect service on CXTI's directors in the U.S. or to enforce a U.S. civil judgment against them. The near impossibility of serving or enforcing a judgment against CXTI personnel was even disclosed in

CXTI's Registration Statement that all of the CXTI shareholders are presumably familiar with and relying on.[9] Defendants were never served in the United States and had no expectation of being subject to jurisdiction or service of process in this forum.[10] The difficulty of enforcing a U.S. judgment in Hong Kong, which would essentially require the parties to try this case twice, weighs heavily in favor of dismissal.

## 2.    The Relevant Public Factors Favor Dismissal

The public factors bearing on the question of dismissal include the "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; ... and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper*, 454 U.S. at 241 n.6; *Gilbert*, 330 U.S. at 508-09.

In light of the logistical impediments discussed above, trying this case in New York would be complex and time-consuming and would only further burden this Court.  Given the amount of congestion in the Southern District, *see Strategic Value Master Fund, Ltd.*, 421 F. Supp. 2d at 744, and fact that Hong Kong courts are not unduly congested (Fok Decl., at ¶ 17), it is appropriate that this Court should decline to exercise jurisdiction over cases, such as this one, that clearly have a much stronger connection to another forum. *Karlitz v. Regent Int'l Hotels, Ltd.*, No. 95 Civ 10136, 1997 WL 88291, at *3 (S.D.N.Y. Feb 28, 1997).

This action has only the most tenuous connection to the United States – CXTI, now allegedly "vanished" (SAC ¶ 17), filed its financial statements with the Securities and Exchange Commission and listed its shares on an American exchange.  Since CXTI is "no longer an

---

[9]    *See* Smith Decl., Ex. B (CXTI Registration Statement (Form SB-2) at 9 (Dec. 29, 2005)); *and see* Smith Decl., Ex. C (CXTI Annual Report (Form 10-K), at 15 (Apr. 12, 2007)).

[10]    Defendants' lack of presence in this forum, one where they are not amenable to service of process, suggests a greater overall burden on Defendants to defend the instant action in

operating company" and has "disappeared into the ether" (SAC ¶ 17), its minimal connection to the United States is not relevant for any analysis of convenience. Moreover, Defendants have little connection to the United States. Defendants did not work in the United States, and the allegedly fraudulent conduct at issue here is centered entirely in Hong Kong and China. Hong Kong has a vital interest in having events that occurred in its jurisdiction "decided at home." *Gilbert*, 330 U.S. at 509; *see also Allstate Life Ins. Co.*, 994 F.2d at 1002 (explaining that where the fraudulent actions were carried out in Australia by Australian corporations, "there is a strong local interest" in litigating in Australia). Hong Kong's interest in regulating the allegedly fraudulent conduct within its borders allegedly perpetrated by Hong Kong auditors and companies outweighs the U.S. public interest in a "vanished" company. This is particularly true here, where the alleged fraud involved transactions with local Chinese governments. America's public interest in enforcing its own securities laws is insufficient alone to defeat a *forum non conveniens* motion. *See Capital Currency Exch., N.V. v. National Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998) ("[W]e have never held that the United States' interest in applying its laws is a determinative factor to be considered in weighing convenience."), *cert. denied*, 526 U.S. 1067 (1999); *Alfadda*, 159 F.3d at 47; *Allstate Life Ins. Co.*, 994 F.2d at 1002 ("[I]nterest in enforcing United States securities laws ... alone does not prohibit [courts] from dismissing a securities action on the ground of forum non conveniens."). The citizens of New York should not be burdened with jury service for a case that properly belongs in Hong Kong.

---

New York. *Gross v. British Broadcasting Corporation*, 386 F.3d 224, 231-32 (2d Cir. 2004).

IV.    **CONCLUSION**

For all the foregoing reasons, this Court should exercise its broad discretion to dismiss

the SAC on grounds of *forum non conveniens* in favor of adjudication in Hong Kong, where this

case properly belongs.

Dated: December 14, 2009                    Respectfully Submitted,

                                            LATHAM & WATKINS LLP

                            By:             *Cameron Smith*
                                            Peter Wald (*pro hac vice* pending)
                                            James J. Farrell (*pro hac vice* pending)
                                            Cameron Smith
                                            885 Third Ave.
                                            New York, New York 10022
                                            Telephone: (212) 906-1200
                                            Facsimile: (212) 751-4864

                                            *Attorneys for BDO Ltd.*


                                            ORRICK, HERRINGTON & SUTCLIFFE LLP

                            By:             *Michael Tu*
                                            Michael C. Tu (admitted *pro hac vice*)
                                            Steven J. Fink
                                            Charles J. Ha
                                            666 Fifth Avenue
                                            New York, New York 10103-0001
                                            Telephone: (212) 506-5000
                                            Facsimile: (212) 506-5151

                                            *Attorneys for PKF Hong Kong*