UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

CARLOS MUNOZ, INDIVIDUALLY AND       CASE No.: 07-CV-10531 (AKH)
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                                        ECF

        Plaintiffs,

        vs.

CHINA EXPERT TECHNOLOGY, INC.;
PKF NEW YORK, CERTIFIED PUBLIC
ACCOUNTANTS, A PROFESSIONAL
CORPORATION, PKF HONG KONG,
CERTIFIED PUBLIC ACCOUNTANTS;
AND BDO MCCABE LO LIMITED
CERTIFIED PUBLIC ACCOUNTANTS,

        Defendants.

-----------------------------------------------------------------X

MEMORANDUM OF LAW IN OPPOSITION TO BDO MCCABE LO LIMITED'S
AND PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS' JOINT
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
ON GROUNDS OF *FORUM NON CONVENIENS*

THE ROSEN LAW FIRM, P.A.

Laurence M. Rosen, Esq.  (LR 5733)
Email: lrosen@rosenlegal.com
Timothy W. Brown, Esq. (TB 1008)
Email: tbrown@rosenlegal.com
Julie Kamps, Esq. (JK 6041)
Email: jkamps@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
Email: pkim@rosenlegal.com
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

Lead Counsel for Plaintiffs and Class

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT…………………………………………..……...…………1

FACTUAL BACKGROUND……………………………………..…………...……………..…3

ARGUMENT…………………………………………………………………………4

    A.  3-Part Inquiry Governs Analysis of Motion to Dismiss on the Grounds
        of *Forum Non Conveniens*………..………...…………………………….…………4

    B.  Lead Plaintiffs' Choice of Forum Is Entitled to a Strong Degree of Deference………7

    C.  Hong Kong Is Not an Adequate Forum…….……………………….…………..15

    D.  The Balance of Private and Public *Gilbert* Factors Favor Plaintiffs' Choice
        of Forum……………………….……………………………………………..18

                i.   The Public Factors Strongly Favor The Southern District of New
                     York…………………………………………………………..18

                ii.   The Private Factors Strongly Favor The Southern District of New
                     York…………………………………………………..…………23

CONCLUSION…………………………………………………………………..34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009)....................................................................................5, 16, 17

*Adamowicz v. Barclays Private Equity France S.A.S.*,
  2006 WL 728394 (S.D.N.Y. Mar. 22, 2006) ..............................................................13 n.2

*Aguinda v. Texaco, Inc.*,
  303 F.3d 470 (2d Cir. 2002)........................................................................................24

*Agyenkwa v. American Motors Corp.*,
  622 F.Supp. 242 (D.C.N.Y. 1985) ..............................................................................25

*Alfadda v. Fenn*,
  5159 F.3d 41 (2d Cir. 1998)................................................................................ passim

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
  994 F.2d 996 (2d Cir.1993)................................................................................. passim

*Basic Inc. v. Levinson*,
  485 U.S. 224 L.Ed.2d 194 (1988)................................................................................20

*Bodner v. Banque Paribas*,
  114 F.Supp.2d 117 (E.D.N.Y. 2000) ................................................................... passim

*Calavo Growers of California v. Generali Belgium*,
  632 F.2d 963 (2d Cir.1980)..........................................................................................16

*Capital Currency Exchange, N.V. v. National Westminster Bank PLC*,
  155 F.3d 603 (2d Cir. 1998)....................................................................................21, 22

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
  70 F.3d 234 (2nd Cir. 2004)..........................................................................................8

*DeYoung v. Beddome*,
  707 F.Supp. 132 (S.D.N.Y. 1989),...........................................................................8, 9, 10

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir.2002)................................................................................... passim

*Fiorenza v. United States Steel Int'l, Ltd.*,
  311 F.Supp. 117 (S.D.N.Y.1969)..............................................................................25-26

*FUNB v. Arab African Intern. Bank*,
    48 Fed.Appx. 801 (2d Cir. 2002) ..............................................................................30

*Gilstrap v. Radianz Ltd.*,
    443 F.Supp.2d 474 (S.D.N.Y. 2006) ........................................................11, 24, 24 n.8

*Gomez v. Banco Bilbao Vizcaya, S.A.*,
    1993 WL 204990 (S.D.N.Y. June 7, 1993) ................................................................25

*Guidi v. Inter-Continental Hotels Corp.*,
    224 F.3d 142 (2d Cir.2000) ..............................................................................8, 22 n.7

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ............................................................................................ passim

*Henderson v. Metropolitan Bank & Trust Co.*,
    502 F.Supp.2d 372 (S.D.N.Y. 2007) .........................................................................27

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation*,
    28 F.Supp.2d 348 (S.D.N.Y. 2002) ...........................................................12, 25, 28

*In re CINAR Corp. Securities Litigation*,
    186 F.Supp.2d 279 (E.D.N.Y. 2002) ..................................................................... passim

*In re Livent, Inc. Securities Litigation*,
    78 F.Supp.2d 194 (S.D.N.Y. 1999) ........................................................................8, 11

*In re Philip Services Corp. Securities Litigation*,
    49 F.Supp.2d 629 (S.D.N.Y. 1999) ............................................................................9

*In re Vivendi Universal*, S.A.,
    242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................................20 n.5

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001) ................................................................................... passim

*Irish Nat'l Ins. Co. v. Aer Lingus Teoranta*,
    739 F.2d 90 (2d Cir.1984) .........................................................................................26

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947) .......................................................................................5, 6, 11

*Lloyd's Am. Trust Fund Litig.*,
    954 F.Supp. 656 (S.D.N.Y. 1997) .............................................................................12

*Manu Intern., S.A. v. Avon Products, Inc.*,
    641 F.2d 62 (2d Cir. 1981) .................................................................................. passim

*McKrell v. Penta Hotels (France), S.A.,*
    703 F.Supp. 13 (S.D.N.Y. 1989)........................................................................26

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
    16 F.3d 146 (2d Cir. 2005).................................................................... passim

*Nowak v. Tak How Investments, Ltd.,*
    94 F.3d 708 (1st Cir.1996)........................................................................25, 27

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)........................................................................................5

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003)...........................................................4, 14, 34 n.10

*R. Maganlal & Co. v. M.G. Chemical Co., Inc.,*
    942 F.2d 164 (2d Cir. 1991)........................................................................6, 18

*Rudetsky v. O'Dowd,*
    660 F.Supp. 341 (E.D.N.Y. 1987) ..............................................................25, 30

*Strategic Value Master Fund, Ltd. v. Cargill Financial Services, Corp.,*
    421 F.Supp.2d 741 (S.D.N.Y. 2006)..........................................................30, 34 n.10

*Sydow v. Acheson & Co.,*
    81 F.Supp.2d 758 (S.D. Tex. 2000) ..............................................................26

## STATUTES AND RULES

28 U.S.C. § 1404(a) ..................................................................................7, 8
Securities Exchange Act of 1934 § 2, 15 U.S.C. § 78b ...............................................20

Lead Plaintiffs Joseph Nunn, Basil Hantash, Bashar Hantash, Anna Hantash and Kenneth Price, and named plaintiff Carlos Munoz, individually and on behalf of all other persons similarly situated ("Plaintiffs"), respectfully submit this memorandum of law in opposition to the join motion to dismiss Plaintiffs' Second Amended Complaint ("Complaint")[1] on the grounds of *forum non conveniens* filed by BDO McCabe Lo Limited ("BDO") and PKF Hong Kong, Certified Public Accountants ("PKF HK").

## PRELIMINARY STATEMENT

Defendants are independent public auditors who now seek to foreclose the ability of the American plaintiff shareholders from pursing remedies for the wrongdoing of the auditors in an American court. In addition to practicing before the Public Company Accounting Oversight Board ("PCAOB"), the auditor defendants knowingly chose to accept an engagement to audit a U.S.-traded company's filings with the United States Securities and Exchange Commission, knowing that American investors would rely on their audit. Now, the auditors should not be able to shield themselves from being held accountable in an American court because being here is suddenly inconvenient, essentially foreclosing the ability of individual investors from being able to seek any remedy as a practical matter. That result is not the purpose of the doctrine of *forum non conveniens* and should not be allowed to happen here.

First, Hong Kong is an inadequate forum for several reasons. One of the defendants, PKF NY, has not consented to service of process there. Hong Kong courts are also inadequate because, as they do not recognize the "fraud-on-the-market" theory, Plaintiffs, who are members of a large class, will be unable to prove individual reliance, effectively leaving them with no legal claim against Defendants. The integrity of the United States capital markets, and the long-

---

[1] Citations to the Second Amended Complaint will be referred to herein as "¶" followed by the numeral corresponding to the specific paragraph(s) cited therein.

recognized notion that individual investors can and should be able to rely on market integrity when participating in those markets, is fundamental.

Even if the Court finds Hong Kong an adequate forum, both the public factors and the private factors of the *forum non conveniens* analysis weigh heavily in favor of allowing the plaintiffs to pursue their claims in their forum of choice, here at home in the United States. The Court should follow Second Circuit law as established by *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) (*en banc*), and as applied in *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir.2002), to federal securities law class actions in which the majority of plaintiffs are U.S. residents, and deny the motion for *forum non conveniens*. This court has even greater reason to show strong deference to Plaintiffs' choice of forum because here all Plaintiffs purchased CXTI stock on U.S. stock exchanges and are Americans, whereas in *DiRienzo* only 80% of Plaintiffs were U.S. residents. *Id.* at 31-32.

The public factors strongly favor Plaintiffs in the exact same way as they did in *DiRienzo*: the United States has a strong interest in deciding disputes caused by defendants who seek out American investors, register on an American stock exchange, and make misrepresentations in statements filed with the SEC that plaintiffs in class action suits rely on. *Id.* at 31-34.

The private factors tilt much more towards Plaintiffs than they did in *DiRienzo* because here they will not be able to proceed in Hong Kong due to the prohibition there of contingency fees, the requirement of a bond to cover defendants' costs and fees, and the Hong Kong court's lack of recognition of the "fraud-on-the-market" theory. *Id.* at 30. Moreover, here litigation is long past the initial stage as Plaintiffs have obtained a judgment against one Defendant and have conducted extensive discovery. Other private factors -- including location of documentary evidence, the need to translate documentary evidence, the requirement for witnesses and parties

2

to travel, the difficulty to acquire or compel evidence and testimony, and the difficulty of impleading parties – favor Plaintiffs also. But even if they favored BDO and PKF HK, BDO and PKF HK fail under *DiRienzo* to show how such factors would be "oppressive" or "vexatious" such that the case should be dismissed to Hong Kong. *Id.*

 The law and equities here dictate that defendants should not both be able to practice before the PCAOB and then seek to avoid American courts when shareholders are damaged.

## FACTUAL BACKGROUND

China Expert Technology, Inc. ("CXTI") is a Nevada corporation that maintained its headquarters and operations in China at the time of the alleged fraud. ¶ 17. CXTI operated its entire business in the People's Republic of China (the "PRC") through its wholly-owned subsidiary, Expert Network (Shenzen) Company Limited ("Expert Network"). ¶ 76. CXTI claimed to have derived nearly all revenue from 16 contracts, which were actually fake, that were purportedly entered by Expert Network and five local Chinese governments. ¶¶ 70, 76, 78. BDO is an accounting firm based in Hong Kong. ¶ 23. Defendant BDO provided audit services for the 2005 and 2006 audits of CXTI's financial statements. *Id.* Defendant PKF HK is an accounting firm based in Hong Kong. ¶ 18. Defendant PKF New York ("PKF NY") is an accounting firm based in New York. ¶ 18. PKF HK together with PKF NY provided audit services for the 2003 and 2004 audits of CXTI's financial statements. ¶ 19. BDO Seidman, LLP ("BDO Seidman") who has been dismissed as a defendant, is an accounting firm based in New York. *See* First Amended Complaint, ¶ 23, attached as Exhibit 3 to Declaration of Timothy W. Brown made in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("Brown Decl.") at ¶ 5. BDO Seidman reviewed, corrected, and directed BDO's 2003 and 2004 audits of CXTI. Brown Decl. at ¶ 5; Ex. 3 (First Amended Complaint) at ¶ 24.

During the Class Period, CXTI's common stock was actively traded on the NASDAQ OTC Bulletin Board.  ¶ 30.  Defendants solicited investors located in the United States to purchase CXTI stock on the NASDAQ OTC Bulletin Board, registered CXTI stock with the Securities and Exchange Commission ("SEC"), and made misrepresentations in SEC filings and press releases.  ¶¶ 19, 23, 71.

PKF NY has not joined BDO's and PKF HK's motion to dismiss on the grounds of *forum non conveniens*.  PKF NY has not consented to service of process in Hong Kong.  *See* BDO's and PKF NY's Memorandum of Law in Support of their Joint Motion to Dismiss the Second Amended Complaint on Grounds of *Forum Non Conveniens* ("FNC Mem.") at p. 8.

## ARGUMENT

### A.  3-Part Inquiry Governs Analysis of Motion to Dismiss on the Grounds of *Forum Non Conveniens*

In *Iragorri v. United Technologies Corp.*, the Second Circuit adopted a three-part inquiry to govern analyses of motions to dismiss on the grounds of *forum non conveniens*. 274 F.3d 65, 71-75 (2d Cir. 2001) (*en banc*); *see Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

The first step of the analysis is to determine what degree of deference the Court should hold a plaintiff's choice of forum.  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (citing *Iragorri*, 274 F.3d at 73).  The "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum."  *Iragorri*, 274 F.3d at 71.  "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  *Id.* at 71-72.  *Irragori* explains how to recognize whether a plaintiff's choice of forum has been made for valid reasons: "the greater the plaintiff's or the

lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens." *Id.* at 72. When a plaintiff has chosen its home forum, "it is reasonable to assume that this choice is convenient." *Id.* at 71 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). The Second Circuit thus holds that the "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum." *Iragorri*, 274 F.3d at 71 (citing *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Piper*, 454 U.S. at 255-56.

The "second step of the analysis [as set forth in *Iragorri*], which requires the district court to consider the adequacy of the alternative forum, is pivotal." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009). The case must not be dismissed if an adequate and presently available alternative forum does not exist. *Norex*, 416 F.3d at 159. A forum is adequate if defendants are amenable to service of process and if it permits litigation of the dispute, but may not be "if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all." *Abdullahi*, 562 F.3d at 189.

If an adequate alternative forum is deemed to exist, the next and third step of the analysis as set forth in *Iragorri* is to weigh the balance of public and private factors, as laid out in *Gulf Oil Corp. v. Gilbert*, that affect the relative convenience to the parties in litigating plaintiff's claim in plaintiff's choice of forum and in the alternative forum to which the defendant moves to dismiss plaintiff's claim. 330 U.S. 501, 508-09 (1947). "The private interest factors enumerated in *Gilbert* include: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if

5

relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 29-30 (2d Cir. 2002) (citing *Gilbert*, 330 U.S. at 508; *Iragorri*, 274 F.3d at 73-74).

The public interest factors enumerated in Glibert include: "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home;' and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *DiRienzo*, 294 F.3d at 31 (citing *Gilbert*, 330 U.S. at 508-09; *Iragorri*, 274 F.3d at 74). In weighing the balance of the *Gilbert* factors, unless "the balance of convenience tilts strongly in favor of trial in the foreign forum," the motion to dismiss must be denied. *R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991).

When a plaintiff has chosen its home forum, "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Iragorri*, 274 F.3d at 70 (quoting *Gilbert*, 330 U.S. at 508). Indeed, "[t]his Court should not dismiss a complaint brought by American plaintiffs in favor of a foreign jurisdiction on *forum non conveniens* grounds unless trial in the United States is demonstrably 'unjust, vexatious, or oppressive.'" *Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 131 (E.D.N.Y. 2000); *see Koster*, 330 U.S. at 524.

"The defendant bears the burden to establish clearly each factor . . . and to demonstrate that the balance tilts strongly in favor of the purported alternative forum." PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 74 (2d Cir. 1998); *see also DiRienzo*, 294 F.3d at 30-31, citing *Gilbert*, 330 U.S. at 508 ("*Gilbert* tells us that unless the balance strongly favors defendant, plaintiffs' choice of forum 'should rarely be disturbed'" ).

### B.  Lead Plaintiffs' Choice of Forum Is Entitled to a Strong Degree of Deference

Defendants BDO and PKF HK assert without explanation, in citing a few decisions that are irrelevant or overruled by the Second Circuit, that because Plaintiffs' claim against them and PKF NY is made as a class action, a type of representative action, Plaintiffs' choice of forum is entitled no deference.  BDO and PKF HK are wrong.  Courts that offer less than strong deference to plaintiffs' choice of forum because the plaintiffs sued in a representative capacity, make such determinations after defendants have moved to transfer from one federal district to another federal district, pursuant to 28 U.S.C. § 1404(a).  In such class actions, because there are many, many plaintiffs residing in many, many districts throughout the United States, naturally courts found that their choices of one district over another district within the country could not be presumed to be based on their collective convenience any more than based on strategy.  However, *Irragori* reveals the intuitive: the fact that plaintiffs sue in their home forum in and of itself indicates that their choice of forum has been made for valid reasons of convenience.  274 F.3d at 72 ("the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens").  Indeed, "the reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient."  *Id.* at 71.

It is undisputed that CXTI stock was traded during the Class Period by on the NASDAQ OTC Bulletin Board, which is located in the Southern District of New York, and that Plaintiffs are investors in the United States who purchased CXTI stock on the NASDAQ OTC Bulletin Board.  ¶¶ 13, 30.  While it is reasonable to doubt that it is more convenient for Plaintiffs, taken collectively, to litigate this class action in the Southern District of New York than in the Eastern District of New York, the Central District of California, . . . or most other federal districts in the

United States -- because Plaintiffs are spread out throughout this country, it is obviously vastly more convenient for all the Plaintiffs to litigate in any district in the United States than in any foreign forum that is outside of the United States.

Indeed, the Second Circuit overruled a district court decision that because "Plaintiffs were not citizens of New York . . . the presumption in favor of their choice of the Southern District of New York was therefore weakened. *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 n.4 (2d Cir.2000). Rather, *Guidi* holds that "in a *forum non conveniens* case involving a foreign court, the 'home forum' for the [U.S.] plaintiff is any federal district in the United States, not the particular district where the plaintiff lives." *Id.*; see also *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2nd Cir. 2004) (there is a "presumptive validity of a United States resident's choice of a United States forum for litigation").

Determined to ignore the Second Circuit's reason for giving less than strong deference to plaintiffs' choice of forum in representative actions in deciding motions to transfer pursuant to 28 U.S.C. § 1404(a) -- that it is illogical to find one district in the United States more convenient to the collective body of plaintiffs than another district within the country if the plaintiffs reside in many districts within the United States -- BDO and PKF HK argue that no deference is due Plaintiffs' choice to litigate in a district court within the United States over a forum in a foreign country where no plaintiffs reside. BDO and PKF HK make this spurious argument without explaining why, but rather merely cite two district court decisions that have made the same mistake they have – that plaintiffs' choice of forum is entitled less deference merely because theirs is a representative action. Yet the Second Circuit in *DiRienzo v. Philip Services Corp.*, 294 F.3d 21 (2d Cir. 2002), has clearly **overruled** these two decisions: *DeYoung v. Beddome*, 707 F.Supp. 132 (S.D.N.Y. 1989), and *In re Livent, Inc. Securities Litigation*, 78 F.Supp.2d 194 (S.D.N.Y. 1999).

*DeYoung* was a class action based on various claims including one pursuant to federal securities laws in which Judge Mukasey gave less than strong deference to the plaintiffs' choice of forum in the Southern District of New York in deciding the motion to dismiss the case to a Canadian court on the grounds of *forum non conveniens*.  707 F. Supp. at 138-39.  First, the Second Circuit held that *DeYoung* "was actually decided on grounds of international comity. . . and its *forum non conveniens* comment was *dictum . . .*"  *DiRienzo v. Philip Services Corp.*, 232 F.3d 49, 64 (2d Cir. 2000) (citations omitted).  Second, the Second Circuit overruled the same Judge Mukasey for making precisely the same error in *In re Philip Services Corp. Securities Litigation*, 49 F.Supp.2d 629 (S.D.N.Y. 1999), a class action in which the defendants moved to dismiss it from the Southern District of New York to a forum in Canada.  *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 28-29 (2d Cir. 2002).

The Second Circuit explained clearly why Judge Mukasey erred in not giving strong deference to plaintiffs' choice of forum:

> To determine what amount of deference should have been given, *Iragorri* instructs that "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  274 F.3d at 71-72.

> Although less than all of the named plaintiffs in *DiRienzo* reside in the Southern District of New York, no evidence suggests they had an improper motive in bringing suit there. In fact, plaintiffs offered a quite valid reason for litigating in federal court: this country's interest in having United States courts enforce United States securities laws.  *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir.1993).  We recognize that this interest is not outcome-determinative in the weighing of relevant factors, *see Alfadda*, 159 F.3d at 47, but it nonetheless demonstrates a "bona fide" connection to the United States, that is, a valid reason.  *See Iragorri*, 274 F.3d at 72.  Further, considering that defendants sought out business opportunities in this country by registering stock on American exchanges, filing statements with the SEC and conducting the bulk of its business in the United States-as well as the claim that most plaintiffs conducted their stock transactions within the United States-a legitimate interest exists in trying this securities fraud litigation here.

*Id.* at 28.  Thus, in *DiRienzo*, the Second Circuit overruled the error of Judge Mukasey, which he also made earlier in *DeYoung*.  *DiRienzo* requires the Court to hold Plaintiffs' choice of forum with strong deference because under *Iragorri* Plaintiffs' choice has been made for a valid reason: "this country's interest in having United States courts enforce United States securities laws."  *Id.*

        **Additional** reasons that *DiRienzo* requires the Court to hold Plaintiffs' choice of forum with strong deference is that Defendants CXTI, BDO, PKF HK, and PKF NY "sought out business opportunities in this country by registering stock on American exchanges [and] filing statements with the SEC . . ."  *Id.*  Plaintiffs have thus demonstrated their "'bona fide' connection to the United States . . .," compelling strong deference for their choice of forum, because Plaintiffs are American investors from whom Defendants solicited business opportunities by selling stock on an American stock exchange and because Plaintiffs and the United States have an interest in having a United States court enforce the securities laws that govern the sales of securities on American stock exchanges.  *Id.*

        Here, the facts compel the Court to hold plaintiffs' choice of forum with strong deference even more so than the facts did in *DiRienzo* because, there, less than "80 percent of the shares traded in Philip's stock during the class period traded on United States exchanges."  *Id.* at 25. Thus, in *DiRienzo* for 20% of plaintiffs a forum outside of the United States may have been more convenient, whereas here, where it is undisputed that the class does not consist of non-U.S. residents who purchased stock on foreign exchanges, there is no doubt that the law of the Second Circuit requires the Court to hold Plaintiffs' choice of forum in the Southern District of New York with strong deference.  Thus, "[t]his Court should not dismiss [the C]omplaint brought by American plaintiffs in favor of a foreign jurisdiction on *forum non conveniens* grounds . . ." because "trial in the United States is [not] demonstrably 'unjust, vexatious, or oppressive.'"

*Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 131 (E.D.N.Y. 2000); *see Koster*, 330 U.S. at 524.

Defendants BDO and PKF HK attempt to mislead the Court by suggesting that it is part of the ordinary course of business for courts in the Second Circuit to dismiss securities fraud class actions to forums that are outside of the United States. The only other securities fraud class actions BDO and PKF HK can find that were dismissed to a non-U.S. forum were *Gilstrap v. Radianz Ltd.*, 443 F.Supp.2d 474 (S.D.N.Y. 2006) and *In re Livent, Inc. Securities Litigation*, 78 F.Supp.2d 194 (S.D.N.Y. 1999). *Livent* was decided before *DiRienzo* overruled it for the reasons laid out above. *Gilstrap* is irrelevant and in no way contradicts *DiRienzo* because *Gilstrap* found plaintiffs' choice of forum was to be given less than strong deference because it was a representative action in which only 40% of the class members were U.S. residents and 40% were residents of England, the forum to which the defendants moved to dismiss the case. *Gilstrap v. Radianz Ltd.*, 443 F.Supp.2d at 480 (not giving plaintiffs' choice of forum strong deference, but only "some deference" as the portion of plaintiffs that were U.S. residents, 40%, was still significant).

While a great portion of all federal securities law class actions in the United States are filed in the Second Circuit, BDO and PKF HK cannot find a single case within the Second Circuit, in which the majority of plaintiffs are American investors, that was dismissed to a non-U.S. forum post-*DiRienzo*. In fact, Plaintiffs are aware of only a handful of decisions on motions to dismiss securities class actions to non-U.S. forums. *See In re CINAR Corp. Securities Litigation*, 186 F. Supp. 2d 279, 297 (E.D.N.Y. 2002) (denying motion to dismiss securities class action to a forum in Canada, "*Philip Services* specifically refutes the position that plaintiffs' choice of forum in class action suits involving questions of federal law is entitled to less deference merely because the class could claim many potential "home fora" given the number of

plaintiffs involved. . . . Accordingly, the Court finds that plaintiffs' choice of a United States forum is entitled to the high level of deference afforded to those who have a legitimate connection to the forum under the *Iragorri* standard").  *See also In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation*, 228 F.Supp.2d 348, 351-52 (S.D.N.Y. 2002), citing *DiRienzo*, 294 F.3d at 28-29 (denying motion to dismiss a non-securities law class action to European forums and finding that "[t]here appears to be no reason to doubt the bona fides of the Cornell and Schenker plaintiffs' choice of a U.S. forum: every single named plaintiff is a U.S. resident, and litigation abroad would likely raise costs and necessitate the retention of foreign counsel. . . . plaintiffs' choice of forum is entitled to strong deference under the Circuit's sliding-scale approach in *Iragorri*.  Such deference is due notwithstanding the fact that plaintiffs are acting in a representative capacity"); *Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 131 (E.D.N.Y. 2000) (denying motion to dismiss a non-securities law class action to France because "[a]s plaintiffs are American citizens and the proposed alternative forum is a foreign jurisdiction, their choice of forum is entitled to significant deference by this Court"); *Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 672-74 (S.D.N.Y. 1997) (giving strong deference to plaintiffs' choice of forum in class action for breach of trust in deciding a motion to dismiss to England).  BDO's and PKF HK's reliance on three federal securities law cases that were dismissed to forums outside of the United States is wholly misplaced because none of these cases was a class action, none of them arose from defendants taking advantage of American securities laws by soliciting plaintiffs on U.S. stock exchanges, and each involved facts in which the plaintiffs' choice of forum was not based on a bona fide connection with the United States.[2]

---

[2] *See Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998) ("dispute between a Netherlands Antilles corporation and Saudi Arabian shareholders over the conduct of a French bank"); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 997, 1002 (2d Cir. 1993) (institutional investors,

Notwithstanding that under *DiRienzo*, Plaintiffs' choice of forum is entitled strong

deference that should not be disturbed because Plaintiffs consist of a class of American investors

who purchased CXTI's stock on American stock exchanges, other valid reasons of convenience

for Plaintiffs' choice of forum, as discussed below, are: Plaintiffs would not be able to retain

counsel or pursue litigation of this case at all in Hong Kong where a contingency fee is not

allowed, and where a bond to cover defendants' costs and attorney fees must be posted with the

Hong Kong court; Hong Kong courts would not admit evidence collected from the PRC, which

the PRC would consider "state secrets," whereas it is undisputed that this Court would admit

such evidence; Plaintiffs would lack a "common ingredient" and not be able to litigate as a

representative action in Hong Kong because Hong Kong law does not recognize the concept of

fraud on the market under which plaintiffs do not have to prove they read and relied directly on

defendants' statements that contained misrepresentations; Plaintiffs would have no cause of

action in Hong Kong as the vast majority of Plaintiffs could not prove that they read and relied

on Defendants' misrepresentations since Hong Kong law does not recognize the concept of fraud

on the market; and the ease of access to witnesses who are or were employed at BDO Seidman,

LLP and PKF NY.

Another reason that independently justifies the presumption that Plaintiffs' choice of

forum is due strong deference is that the Defendants are all amenable to suit in the Southern

---

including insurance companies and mutual funds, that sued a company for omitting in its
registration statement the fact that its subsidiaries agreed to guarantee its debt to Australian and
New Zealand banks, and where deference was given to foreign bankruptcy proceedings);
*Adamowicz v. Barclays Private Equity France S.A.S.*, 2006 WL 728394, at *1, 3-4 (S.D.N.Y.
Mar. 22, 2006) (a plaintiff having a controlling interest in a privately held family of corporations,
where all but one of eighteen defendants were foreign citizens or corporations, and where the
plaintiff was a party to a shareholder's agreement, which contained a French forum selection
clause).

District of New York, but some Defendants are not in Hong Kong. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003), quoting *Iragorri*, 274 F.3d at 72-73 ("We observed that '[o]ne of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit'"). It is reasonable for Plaintiffs to have expected that the auditor defendants, like all independent accounting firms that audit and certify financial statements of companies filing annual financial statements with the SEC, and which are thus required to adhere to the auditing standards of the Public Company Accounting Oversight Board, would not contest service of process or the jurisdiction of this Court. ¶ 262. Indeed, no Defendant disputes that it must accept service of process and jurisdiction of this Court, and no Defendant has raised any such defense. Yet if Plaintiffs were to sue Defendants in Hong Kong, it is reasonable for Plaintiffs to have expected that PKF NY and former Defendant BDO Seidman, LLP would not accept service in Hong Kong. Indeed, the validity of this reason of convenience is revealed by the fact that PKF NY does not join BDO and PKF HK in their motion to dismiss on the grounds of *forum non conveniens*. Moreover, a Hong Kong court would not be able to compel PKF NY to accept service of process or personal jurisdiction. *See* Declaration of Joseph Dellapenna made in Opposition to BDO's and PKF HK's Motion to Dismiss the Second Amended Complaint on the Grounds of *Forum Non Conveniens* ("Dellapenna Decl.) at ¶¶ 11-14. BDO and PKF NY apparently concede the same. *See* FNC Mem at p. 8.

Furthermore, the Court should give Plaintiffs' choice of forum even stronger deference because it is obvious that BDO's and PKF HK's motive for making their motion on the grounds of *forum non conveniens* is to escape all liability for the fraud that they intentionally perpetrated on the American public by exploiting the American financial markets that are stable due to federal securities laws and the enforcement thereof by the courts of the United States. No one doubts that BDO and PKF HK are aware that Plaintiffs' cause of action against them will

terminate with finality if the Court grants their motion – because in Hong Kong the prohibition of a contingency fee and the requirement of posting a bond to cover defendants' costs and legal fees means that Plaintiffs cannot retain counsel there; because in Hong Kong Plaintiffs cannot make a representative action as the theory of fraud on the market is not recognized there; and because in Hong Kong Plaintiffs could not prove reliance, a necessary element of their cause of action.

Defendants BDO's and PKF HK's motive in making this motion to dismiss on the grounds of *forum non conveniens* is clearly one of strategy, not one of convenience, for another reason: they know that it is not only <u>in</u>convenient for Defendant PKF NY to litigate in Hong Kong, but that a Hong Kong court cannot compel PKF HK to accept service of process and personal jurisdiction, and that neither has PKF HK consented to the same. *See* Dellapenna Decl. at ¶¶ 11-14. For this reason alone -- that BDO and PKF HK are making this motion out of the most heinous of motives, their motion must be denied. *See DiRienzo*, 294 F.3d at 29, quoting *Iragorri*, 274 F.3d at 75 ("Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of forum-shopping reasons").

### C.  Hong Kong Is Not an Adequate Forum

The motion to dismiss on the grounds of *forum non conveniens* must be dismissed because Hong Kong is not an adequate and presently available alternative forum. *Norex*, 416 F.3d at 159. A forum is adequate if defendants are amenable to service of process and if it permits litigation of the dispute, but may not be "if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all."

*Abdullahi*, 562 F.3d at 189.  A Hong Kong court would not be able to compel PKF NY to accept service of process or personal jurisdiction.  *See* Dellapenna Decl. at ¶¶ 11-14.  BDO and PKF NY apparently concede the same.  *See* FNC Mem. at p. 8.  Although this impediment to Hong Kong's being an adequate forum could theoretically be overcome if PKF NY were to consent to service in Hong Kong, PKF NY has not done so, and therefore, Hong Kong is indubitably, as a matter of law, an inadequate forum.  *See*, *e.g.*, *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir.1980) (observing that *forum non conveniens* dismissal should have been conditioned on the agreement of all defendants consenting to service in the alternative jurisdiction).[3]

An independent reason that Hong Kong is an inadequate forum is that Plaintiffs will not be able to prove reliance, which is a necessary element of their cause of action in Hong Kong courts, known as the "tort of deceit," because Hong Kong courts do not recognize the "fraud-on-the-market" theory of liability.  *See* Declaration of Joseph Fok made in support of FNC Mem. ("Fok Decl.") at ¶¶ 27-29; Dellapenna Decl. at ¶¶ 16, 22.  Because Hong Kong does not recognize the "fraud-on-the-market" theory of liability, American Plaintiffs will be denied relief that they would be entitled to in the United States.  The "fraud-on-the-market" theory allows a plaintiff who has not read or otherwise relied upon the defendants' false statements or disclosures, but instead has depended solely upon the integrity of the financial markets, to bring a claim of fraud.  *In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 298 (E.D.N.Y.

---

[3]  BDO and PKF HK also bear the burden of proving Plaintiffs' cause of action against all Defendants in Hong Kong will not be barred by the statute of limitations.  BDO and PKF HK have failed to meet that burden, and therefore Hong Kong is an inadequate forum.  *See Norex*, 416 F.3d at 158 ("The second step of *forum non conveniens* analysis does not concern itself with the reason why an alternative foreign forum is no longer available; its singular concern is the fact of present availability").

2002).  By far the vast majority of shareholder-plaintiffs in class actions such as the instant one

do not rely on the defendants' misrepresentations found in SEC filings and press releases, but

rather bought shares relying on the accuracy of the stock exchange market price.  Thus,

transferring the action to Hong Kong will effectively deny Plaintiffs any remedy at all, changing

the rules on the Plaintiffs long after they purchased their shares in reliance on the integrity of the

U.S. securities markets.

That BDO and PKF HK contend that Plaintiffs will be able to join a Hong Kong

representative action is irrelevant; Plaintiffs will nevertheless be unable to state a cognizable

cause of action.  *Id.*  Defendants' general argument -- that even if moving to the case to Hong

Kong were to cause an unfavorable change in the substantive or procedural law, it would not

make Hong Kong an inadequate forum -- is wrong.  Indeed, a forum may be inadequate "if the

forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no

remedy at all."  *Abdullahi*, 562 F.3d at 189; *see Manu Intern., S.A. v. Avon Products, Inc.*, 641

F.2d 62, 67 (2d Cir. 1981) (denying a motion to dismiss to Taiwan, and holding: "It is almost a

perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name of expediency,

to a forum in which, realistically, it will be unable to bring suit when the defendant would not be

genuinely prejudiced by having to defend at home in the plaintiff's chosen forum").  While the

Second Circuit has not yet decided whether the absence of "fraud-on-the-market" theory renders

a forum inadequate, the Court should deny BDO's and PKF HK's instant motion for, among so

many other reasons, that Hong Kong is an inadequate forum because it does not recognize

"fraud-on-the-market."  *See In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d at  298

(explaining that in *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 58 (2d Cir. 2000, the Second Circuit stated that ruling on the matter is better left to the district court).[4]

### D.  The Balance of Private and Public *Gilbert* Factors Favor Plaintiffs' Choice of Forum

In weighing the balance of the *Gilbert* factors, unless "the balance of convenience tilts strongly in favor of trial in the foreign forum," the motion to dismiss must be denied.  *R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991).  Under the law of the Second Circuit, in the instant matter the balance of the *Gilbert* factors tilts strongly in favor of the Southern District of New York.  Therefore, BDO's and PKF HK's motion to dismiss on the grounds of *forum non conveniens* must be denied.

### i.    The Public Factors Strongly Favor The Southern District of New York

The public interest factors enumerated in *Gilbert* include: "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home;' and (4) avoiding difficult problems in conflict of laws and the application of foreign law."  *DiRienzo*, 294 F.3d at 31 (citing *Gilbert*, 330 U.S. at 508-09; *Iragorri*, 274 F.3d at 74). The Second Circuit, in *DiRienzo*, 294 F.3d at 31-34, establishes binding law for how district courts must weigh the public factors in deciding a motion to dismiss a federal securities law class action in which the vast majority of the class are purchasers on stock exchanges in the United States to a forum outside of the United States.  *DiRienzo* conflates its analysis of the factor it characterizes as "unfairness of imposing jury duty on a community with no relation to the

---

[4] BDO and PKF HK also must prove that the statute of limitations will not bar Plaintiffs' cause of action in a Hong Kong court in order for Hong Kong to be an adequate forum.  Alternatively, all Defendants, including PKF NY, must stipulate to waive any statute of limitations defense.

litigation" with that of the factor it characterizes as the "local interest in having localized controversies decided at home." *Id.*

Under *Dirienzo*, the United States has a strong interest in having Defendants' fraud decided in courts in the United States. *Dirienzo* requires that BDO's and PKF HK's instant motion be denied because, just as in that class action, here Defendants sought out American investors, registered on an American stock exchange, made misrepresentations in statements filed with the SEC. *See id.* at 32-33. *Dirienzo* explains why the public factors based on these facts tilt strongly in Plaintiffs' favor as follows:

> *DiRienzo* does not involve Americans who sought out involvement with a foreign forum. It was Philip who came to them by registering its stock on American exchanges, filing statements with the SEC, and conducting the bulk of its business-including multiple corporate acquisitions-in the United States. Plaintiffs are involved in this lawsuit precisely because of aggressive selling techniques by Philip within the United States that targeted United States investors as potential purchasers of its stock.

*Id.* at 32. *DiRienzo* elaborates that because the fraudulent statements and sales were perpetrated here in America, **regardless of where the audit and the business of the company that was audited took place**, United States courts have a strong interest in deciding the dispute. *Id.* Indeed the Second Circuit reveals clearly why:

> dismissing this case is no more appropriate than dismissing a products liability case brought in the United States against Toyota simply because the design and manufacture of the automobile took place in Japan. While the complaint alleges a fraud that was largely executed in Ontario, neither the dissemination of the allegedly misleading statements nor the plaintiffs' losses were localized there.

*Id.* So, under *DiRienzo*, regardless of the fact that CXTI's only operating subsidiary did its business in the PRC and that some of its auditor defendants may have done most of their work involved in auditing CXTI in Hong Kong, the actions of Defendants that are the subject matter of

Plaintiffs' cause of action took place in the United States, and thus the United States has a strong

interest in deciding Plaintiffs' case.[5]

Moreover, under Second Circuit law, BDO's and PKF HK's instant motion must be

denied because, as *DiRienzo* holds:

> A strong public interest favors access to American courts for those who use American
> securities markets. The fraud on the market theory itself illustrates investors' reliance on
> accurate and complete information. *See Basic Inc. v. Levinson*, 485 U.S. 224, 245-47,
> 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). For securities markets to function efficiently,
> securities fraud law must be clear and enforceable. As the statute explaining the need for
> regulation and control of transactions in securities exchanges and over-the-counter
> markets states, these transactions are "affected with a national public interest." Securities
> Exchange Act of 1934 § 2, 15 U.S.C. § 78b. Thus, those laws must also be applied
> consistently with regard to the significant majority of the putative class who bought their
> securities on American markets.

*Id.* at 33. As is explained repeatedly herein, without a class action mechanism and without the

protection of U.S. federal securities laws, Plaintiffs in this case, like plaintiffs in any other class

action made under U.S. securities laws would effectively be unable to continue their claim in any

non-U.S. forum. *See Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981)

("It is almost a perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name

of expediency, to a forum in which, realistically, it will be unable to bring suit when the

---

[5] *See also In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 300 (E.D.N.Y. 2002)
("The public interest factors strongly favor the plaintiffs in this case. Once again, CINAR's
attempt to cast this suit as a purely Canadian dispute is unpersuasive. The United States has a
great interest in adjudicating this case because it involves fraud on American investors, whom
CINAR specifically targeted with stock offerings on the NASDAQ and stock purchase
agreements with American companies. Although the decision to engage in tax fraud no doubt
occurred in Canada, much of the conduct giving rise to these suits occurred in the United States.
The tax fraud was only a prelude to misstated SEC filings and fraudulent financial reports
dangled before American investors to attract their money"); *In re Vivendi Universal*, S.A., 242
F.R.D. 76, 106 (S.D.N.Y. 2007), citing *DiRienzo*, 294 F.3d at 32 ("Where, as here, the Court has
determined that significant alleged conduct occurred in the United States warranting application
of the federal securities laws to foreign actors, . . . the United States has a strong interest in the
enforcement of those laws where applicable").

defendant would not be genuinely prejudiced by having to defend at home in the plaintiff's chosen forum"). If U.S. courts were to permit such a result, then foreign companies would be insulated from liability for committing the type of fraud from which federal securities laws protect purchasers whose basis for purchasing the securities in question is what they assume to be the integrity of the U.S financial markets. If foreign companies were not liable for committing securities fraud on such purchasers of securities in this country, then the market would lose confidence in the representations made by foreign companies, and the pricing of the stock of these foreign companies would lose its stability. Therefore, *DiRienzo* makes clear that the United States has a strong interest in deciding and enforcing United States securities laws.[6]

While it is true that the Second Circuit has stated in *Capital Currency Exchange, N.V. v. National Westminster Bank PLC*, 155 F.3d 603 (2d Cir. 1998), that "we have never held in the United States' interest in applying its laws is a determinative factor to be considered in weighing convenience," *Capital Currency* did not govern a federal securities laws class action, a class action, or securities laws at all. BDO and PKF HK also inaptly rely on *Alfadda v. Fenn*, 159 F.3d 41, 47 (2d Cir. 1998), and *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993), for the their statement that the interest in enforcing U.S. securities laws taken alone does not prohibit courts from dismissing cases to non-U.S. forums. But, as stated above, *Alfadda* and *Allstate* are not class action cases and neither do they concern American investors who purchased stock due to exclusive reliance on the integrity of the pricing of U.S. stock exchanges. *See Alfadda*, 159 F.3d at 46 ("dispute between a Netherlands Antilles corporation

---

[6] *See also In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 300-01 (E.D.N.Y. 2002) ("United States courts have a special interest in preserving the integrity of American financial markets as well-an interest that should be given due weight. . . . Foreign companies seeking American capital would be hard-pressed to state their case to potential investors if those investors did not enjoy ready access to their own courts and jurisprudence").

and Saudi Arabian shareholders over the conduct of a French bank"); *Allstate*, 994 F.2d at 997, 1002 (institutional investors, including insurance companies and mutual funds, that sued a company for omitting in its registration statement the fact that its subsidiaries agreed to guarantee its debt to Australian and New Zealand banks, and where deference was given to foreign bankruptcy proceedings).  Thus, in cases such as *Alfadda*, *Allstate*, and *Capital Currency* -- which incidentally were decided before *DiRienzo*, the interest of the United States in enforcing federal securities laws is at most *de minimis* because there plaintiffs were not sought out in the United States by defendants to purchase stock.  As stated above, BDO and PKF HK cannot find a single class action case, in which the majority of plaintiffs are American investors, that was dismissed to a non-U.S. forum post-*DiRienzo*.

Hong Kong's interest in deciding this dispute is minute because all the Plaintiffs are located in the United States, which is also where significant elements of the fraud occurred. Moreover, given the difficulty of such issues as whether to allow a representative action or the dim possibility of admitting evidence classified as a state secret in the PRC, it would not be surprising if Hong Kong courts would not be welcoming to this litigation.  *See* Dellapenna Decl. at ¶ 30.[7]

---

[7] Despite that the Southern District of New York is "heavily overburdened," the Second Circuit considers this factor to have little or no significance in weighing the relative convenience of litigation there and the alternative forum.  *See DiRienzo*, 294 F.3d at 31; *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147, n.5 (2d Cir. 2000).   While the Southern District of New York might be busier than Hong Kong courts, because "the representative action in Hong Kong is a relatively limited form of multi-party action," the Hong Kong courts have much less experience than this Court in litigating sophisticated securities litigation as in the instant matter, so in Hong Kong this litigation would proceed with much less efficiency.  *See* Fok Decl. at ¶ 14; Dellapenna Decl. at ¶¶ 21, 30.  It is undisputed that there would be no conflict of law problems here, where federal securities law will govern Plaintiffs' claims.  In Hong Kong, there will not be a conflict of law because if this action were brought there, it would be premised on the common law claims for fraud and deceit.  *See* Fok Decl. at ¶¶ 16, 27-29; Dellapenna Decl. at ¶ 29.

ii.    **The Private Factors Strongly Favor The Southern District of New York**

The private interest factors enumerated in *Gilbert* include: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *DiRienzo*, 294 F.3d at 29-30 (2d Cir. 2002) (citing *Gilbert*, 330 U.S. at 508; *Iragorri*, 274 F.3d at 73-74). *DiRienzo* finds the inconvenience to foreign defendants caused by long distance travel, the difficulties in compelling evidence and trial testimony, etc., to be slight relative to the degree that the public factors favor the plaintiffs in a securities law class action in which the majority of plaintiffs are U.S. residents – indeed, such inconvenience was effectively asked for by defendants, who therefore cannot escape from liability in the United States, which would otherwise cause American investors injustice and destabilize U.S. financial markets. *DiRienzo*, 294 F.3d at 30-31. In holding that the plaintiffs' choice of forum is entitled strong deference and that the public factors strongly favor plaintiffs, *DiRienzo* denies the motion for *forum non conveniens* while specifically finding that the effect on convenience of transporting the "bulk of relevant documents" from Canada to the United States is to be afforded "less weight," that the need for "most of the potential witnesses" to travel from Canada to the United States is not burdensome; and c) and despite that "the number of witnesses for whom these accommodations [use of letters rogatory] would have to be made and the preference for live testimony" weighs in favor of the defendants, "the balance of the private interest factors is close. *Gilbert* tells us that unless the balance strongly favors defendant, plaintiffs' choice of forum 'should rarely be disturbed.'" *Id.* While in *DiRienzo* the motion to dismiss to a forum in Canada was denied despite its finding there was some inconvenience caused by the Southern District of New York's limited ability to compel

witnesses to testify, here Plaintiffs' case is even stronger than that of plaintiffs in *DiRienzo* because here, unlike in *DiRienzo*, a contingency fee is prohibited in the alternative foreign forum. Moreover, *DiRienzo* did not consider additional relevant facts that tremendously inconvenience Plaintiffs here: that upon initiating their cause of action in Hong Kong, Plaintiffs must post a bond to cover defendants' attorney fees and costs, and that because Hong Kong does not recognize the "fraud-on-the-market" theory, Plaintiffs cannot make a representative action and cannot prove reliance in either individual or representative actions.

Interestingly, BDO and PKF HK cite *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir. 2002) and *Gilstrap v. Radianz Ltd.*, 443 F.Supp.2d 474, 482 (S.D.N.Y. 2006) for holding that the lack of a foreign forum's class action procedure does not render it inadequate. However, in *Aguinda*, in which "[a]ll plaintiffs, as well as members of their putative classes, live in Ecuador or Peru . . . [and] Plaintiffs sustained their injuries in Ecuador and Peru, and their relevant medical and property records are located there," there is no discussion about how the lack of a contingency fee (or class action procedure) affects the balance of the public and private factors. 303 F.3d at 479. The Southern District of New York in *Gilstrap*, in which only 40% of plaintiffs were U.S. residents, recognized that "the unavailability of such procedural mechanisms as class actions and contingent fees . . . may be relevant to the balancing of the public and private interest factors." 443 F.Supp.2d at 480.[8] As Hong Kong does not allow contingency fees, Plaintiffs, each with a small stake in the law suit, would not realistically be able to litigate their cause of action in Hong Kong – thus, the private factors strongly favor plaintiffs' choice of forum,

---

[8] In *Gilstrap*, which dismissed the class action to England, 40% of the class were residents of England, and the district court found that for the only named American plaintiff, who owned 20% of outstanding options in the defendant company, the lack of a contingency fee was not an impediment to his alternative plan to bring suit in England. *Id.* at 488.

*Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 720 (1st Cir.1996) (finding the fact that Hong Kong courts prohibit contingent fees made Hong Kong an inconvenient forum for plaintiffs); Dellapenna Decl. at ¶¶ 17-18, 23. Courts within the Second Circuit find that where foreign forums prohibit contingency fees it is a significant private factor that weighs against dismissal of class actions. *See*, *e.g.*, *Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 132 (E.D.N.Y. 2000) (finding that as to a class action of U.S. citizens in which defendants are banking institutions operating in France "there would be financial difficulty in obtaining French legal representation to commence an action in France because contingent fee arrangements are unavailable there"); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation*, 228 F.Supp.2d 348, 366 (S.D.N.Y. 2002) ("The need to rely on local counsel is also significant because plaintiffs have presented evidence that they would be barred from making a contingency fee arrangement with lawyers in Switzerland and Italy"). *See also Gomez v. Banco Bilbao Vizcaya, S.A.*, 1993 WL 204990, at *3 (S.D.N.Y. June 7, 1993) ("The lack of a contingency fee system in the alternative forum is, to the extent that it erects a pecuniary barrier to the plaintiff's commencement of a lawsuit there, a significant, though not determinative, factor in *forum non conveniens* analysis"); *Rudetsky v. O'Dowd*, 660 F.Supp. 341 (E.D.N.Y. 1987) ("The court must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum. . . The inability of a plaintiff to retain counsel in the alternative forum is therefore a significant factor counseling against dismissal") (internal quotations omitted); *Agyenkwa v. American Motors Corp.*, 622 F.Supp. 242, 245 (D.C.N.Y. 1985) ("As to plaintiff's alleged inability to obtain counsel in Ghana, the absence of a contingent fee system 'is a factor which favors . . . retention of jurisdiction, though it is not determinative . . .") (internal quotations omitted); *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir.1981) (lack of contingent fees one of factors in reversing dismissal); *Fiorenza v. United States Steel Int'l*,

*Ltd.*, 311 F.Supp. 117, 120 (S.D.N.Y.1969) (jurisdiction retained where impecunious foreign plaintiff would be denied benefit of contingent fee system in Bahamas); *Irish Nat'l Ins. Co. v. Aer Lingus Teoranta*, 739 F.2d 90, 91 (2d Cir.1984) (holding that *forum non conveniens* dismissal is inappropriate where trial in alternative forum will realistically never occur); *McKrell v. Penta Hotels (France), S.A.,* 703 F.Supp. 13, 14-15 (S.D.N.Y. 1989) (same).

Under *DiRienzo*, the motion on the grounds of *forum non conveniens* must be denied because as discussed above, the public factors favor plaintiffs' choice of forum in exactly the same way as in *DiRienzo*, the basis for giving Plaintiffs' choice of forum strong deference is even greater than that in *DiRienzo* (as all of CXTI stock was traded on U.S. stock exchanges and sold in the U.S. to U.S. residents), and the private factors are more in favor of Plaintiffs than in *DiRienzo* because here, unlike in *DiRienzo*, a contingency fee is prohibited in the alternative foreign forum.  Indeed, the alternative forum in *DiRienzo*, Canada, allows contingency fees (and class actions).   *See Sydow v. Acheson & Co.*, 81 F.Supp.2d 758, 762 (S.D. Tex. 2000) ("Canadian breast implant claims were liquidated through a class action filed in British Columbia, Canada.  On February 16, 1999, the Supreme Court of British Columbia approved a $25 million settlement reached by the Canadian breast implant claimants and Dow-Corning, with payments beginning in late 2000. That court also approved a contingency fee agreement for class counsel, subject to the actions of an independent administrator"); *see also* Canadian Justice Statute Law Amendment Act, 2002, S.O. 2002, c. 24 - Bill 213, attached as Exhibit 4 to Brown Decl at ¶ 6.

Additional reasons – that are not considered in *DiRienzo* -- that the private factors favor Plaintiffs more strongly than they did in *DiRienzo* are that upon initiating their cause of action in Hong Kong, Plaintiffs must post a bond to cover Defendants' attorneys' fees and costs, and that because Hong Kong does not recognize the "fraud-on-the-market" theory, Plaintiffs cannot make

26

a representative action and cannot prove reliance in either individual or representative actions. If the motion for *forum non conveniens* were granted, Plaintiffs would not practically be able to litigate their cause of action in Hong Kong because the bond in the amount of Defendants' potential court and attorney fees that Plaintiffs would be required to post with the Hong Kong court would be an insurmountable obstacle. *See* Dellapenna Decl. at ¶¶ 19, 23; *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 720 (1st Cir.1996) (finding the bond that plaintiffs must post for defendant's costs in Hong Kong courts made Hong Kong an inconvenient forum for plaintiffs). Indeed, in *Henderson v. Metropolitan Bank & Trust Co.*, the Southern District of New York denied a motion for *forum non conveniens* upon reconsideration of the large filing fee required of plaintiffs after formerly granting it upon finding <u>both the public and the private factors favored a court in the Philippines</u>. 502 F.Supp.2d 372, 379 (S.D.N.Y. 2007).

An additional reason that Hong Kong is an extremely inconvenient forum is that Plaintiffs will not be able to prove reliance, which is a necessary element of their cause of action in Hong Kong courts, known as the "tort of deceit," because Hong Kong courts do not recognize the "fraud-on-the-market" theory of liability. *See* Fok Decl. at ¶¶ 27-29; Dellapenna Decl. at ¶ 22. Because Hong Kong does not recognize the "fraud-on-the-market" theory of liability, American Plaintiffs will be denied relief that they would be entitled to in the United States. The "fraud-on-the-market" theory allows a plaintiff who has not read or otherwise relied upon the defendants' false statements or disclosures, but instead has depended solely upon the integrity of the financial markets, to bring a claim of fraud. *In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 298 (E.D.N.Y. 2002). By far, the vast majority of shareholder-plaintiffs in class actions such as the instant one do not rely on defendants' misrepresentations found in SEC filings and press releases, but rather bought shares relying on the accuracy of the stock exchange market price. Thus, transferring the action to Hong Kong will effectively deny Plaintiffs any

remedy at all.  That BDO and PKF HK contend that Plaintiffs will be able to join a Hong Kong representative action is irrelevant; Plaintiffs will nevertheless be unable to state a cognizable cause of action, even individually.  *Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981) (denying a motion to dismiss to Taiwan, and holding: "It is almost a perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name of expediency, to a forum in which, realistically, it will be unable to bring suit when the defendant would not be genuinely prejudiced by having to defend at home in the plaintiff's chosen forum").

Moreover, that Hong Kong courts do not recognize the "fraud-on-the-market" theory will in fact prevent Plaintiffs from making a representative action because each Plaintiff will have a different basis for proving reliance.  Dellapena Decl. at ¶¶ 16, 20, 22.  As Plaintiffs have different bases for proving reliance, they will not pass the "same interest," or the slighltly less stringent "common ingredient" test for making a representative action in Hong Kong under RHC Order 15, Rule 12.   Dellapena Decl. at ¶¶ 16, 20, 22; Fok Decl. at ¶ 14.  Thus, because Hong Kong does not recognize the "fraud-on-the-market" theory, Plaintiffs will not be able to make a representative action, which will be the death-knell of any cause of action in Hong Kong.

Another reason the private factors favor plaintiffs' choice of forum even more than in *DiRienzo* is that here the litigation is not at the initial phase.  Indeed, not only have Plaintiffs obtained a judgment against CXTI, but they have engaged in extensive discovery including deposition testimony and documents.  *See In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation*, 228 F.Supp.2d 348 (S.D.N.Y. 2002) ("Plaintiffs would also have to hire new lawyers to refile each of their claims . . . Plaintiffs' current lawyers are not qualified to make trial decisions in a Slovakian court or in any of the other civil-law jurisdictions that defendants suggest. . . Many of the skills of plaintiffs' current lawyers would be wasted in European civil-law systems which do not provide for pretrial discovery").

BDO and PKF HK incorrectly argue that it is more convenient to litigate in Hong Kong because the translation of many documents from Chinese, which would be required, would be easier in Hong Kong.  As BDO and PKF HK know and admit, actions in Hong Kong courts are bilingual, which means that a great deal of the evidence will have to be made available in both English and Chinese for the benefit of the litigants and attorneys, if not of the judges.  Fok Decl. at 13.5; Dellapena Decl. at ¶ 25.  So, whatever documents need to be translated into English must be translated whether this Court presides over the case or a Hong Kong court does.  It goes without saying that there is no shortage of people who are fluent in both Chinese and English in New York City, so translating here should be no more inconvenient here than in Hong Kong. Dellapena Decl. at ¶ 25.  Moreover, if this Court hears the case, keeping the case in New York will reduce the burden of translation because there will be no need to translate from English to Chinese.

Defendants BDO and PKF HK also argue that Hong Kong is a more convenient forum because documents in China and Hong Kong are easier to exchange between litigants in Hong Kong than to have to send them to New York.  However, *DiRienzo* holds that transporting the "bulk of relevant documents" between countries is to be afforded "less weight."  294 F.3d at 30-31 ("defendants have failed to explain how transporting the documents or copies of them would be 'oppressive' or 'vexatious,' nor does the district court offer a satisfactory explanation").  *See also Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 133 (E.D.N.Y. 2000) (holding on a motion to dismiss to France: "the advances of modern technology and the development of a global economy with instant access to information worldwide severely undercut defendants' claim . . . The costs involved to defendants in defending this action in New York are significantly mitigated by the time- and money-saving tools including e-mail, fax, scanners, digital photography, and global access to the internet").

29

Defendants BDO and PKH HK also argue that it will be very inconvenient for witnesses and parties who must testify, the majority of which they contend reside in China or Hong Kong, to travel to New York.  However, the Second Circuit holds in *DiRienzo* that travel between countries is not burdensome in terms of cost or time.  294 F.3d at 30.  *See also Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981) ("It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit. Jet travel and satellite communications have significantly altered the meaning of '*non conveniens*'"); *FUNB v. Arab African Intern. Bank*, 48 Fed.Appx. 801, 804 (2d Cir. 2002) ("the burden of establishing that it would be overly expensive to transport witnesses to New York lies with defendants, who failed to show that 'these costs are excessively burdensome'"); *Rudetsky v. O'Dowd*, 660 F.Supp. 341, 347-48 (E.D.N.Y. 1987) ("videotaped depositions frequently make corporeal transportation of foreign witnesses unnecessary").  Defendants hope to persuade the Court that based on *Strategic Value Master Fund, Ltd. v. Cargill Financial Services, Corp.* it should find the transportation of witnesses to New York very inconvenient.  421 F.Supp.2d 741 (S.D.N.Y. 2006).  However, in *Strategic Value Master Fund, Ltd. v. Cargill Financial Services, Corp.* the plaintiffs were not U.S. residents themselves, so that decision is irrelevant.  *Id.*  It should be noted that experts on disclosures made to purchasers on U.S. stock exchanges and conduct consistent with GAAS are generally located in the United States, and they would have to travel to Hong Kong if the case were dismissed there.  Also, witnesses at BDO Seidman and employees and partners of Defendant PKF NY would have to travel to Hong Kong were the case dismissed to a Hong Kong court.  Moreover, if the case were dismissed to Hong Kong, thousands of Plaintiffs would have to travel to Hong Kong to individually testify on their reliance because the theory of "fraud-on-the-market" is not recognized by Hong Kong courts.  Therefore, the cost in terms of time and

money of traveling to another forum would be greater if this case were dismissed to Hong Kong than if it remained in this Court.

Defendants BDO's and PKF HK's last argument is that the private factors favor Hong Kong because it will be difficult to compel documentary and witness evidence from Hong Kong and China.

First, BDO and PKF HK provide declarations that various of their employees are residing in Hong Kong, but no longer employed by them, such that letters rogatory will be required to compel their testimony. However BDO and PKF HK have failed to meet their burden to prove that these persons no longer of their employ are persons with sufficient knowledge of their audits of CXTI that any of the parties would want to call them as witnesses. Likely, the partners (or employees) with the most relevant knowledge are still employees or partners of BDO and PKF HK; the Court cannot assume otherwise without BDO and PKF HK proving it. Moreover, while it is true that a court in the United States would have to send a letter of request pursuant to the Hague Convention, which is a slow and cumbersome process, that is equally true for obtaining evidence in the United States for use in a Hong Kong proceeding. Therefore, in a Hong Kong court BDO and PKF HK will have to go through the same burdensome process to get significant evidence regarding the activities of former defendant BDO Seidman (and Defendant PKF NY, if PKF NY is dismissed), as well as regarding the filing of various documents, the effect of those documents on the U.S. markets, etc. Dellapenna Decl at ¶ 24.

Second, even if employees of BDO and PKF HK with knowledge of their audits of CXTI are no longer of their employ, BDO's and PKF HK's work-papers should maintain a record of everything that any employee could testify to anyway -- such that the evidence of the most importance is the work-papers of the Auditor Defendants.

Third, as much as it may be an obstacle for BDO and PKF HK to implead any Chinese or Hong Kong parties if the case remains in this Court, it will be as much of an obstacle if the case proceeds in a Hong Kong court to implead BDO Seidman, PKF NY—if they are dismissed, or any other parties located in the United States. Moreover, BDO and PKF HK have failed to meet their burden of proving that they are likely to implead any party located in Hong Kong or China. As Defendants have acknowledged – and emphasized -- in their various motions to dismiss the Complaint, CXTI has vanished. For this reason, Plaintiffs have not attempted to enforce their judgment against CXTI and do not expect the Auditor Defendants to seek damages from CXTI, whether the case is heard here or in Hong Kong.

Fourth and most significant is BDO's and PKH HK's statement that investigations in the PRC violate Chinese law because the PRC will classify the evidence collected as "state secrets." Declaration of Xixin Wang made in support of FNC Mem. ("Wang Decl.") at pp. 10-41. While this may impede the discovery process if the case proceeds here, the evidence will be admissible in this Court. Dellapenna Decl. at ¶¶ 26-27. However, while the state secrets laws of the PRC would not be a serious problem if the case proceeds in this Court, if the case proceeds in a Hong Kong court, these laws would create a barrier that is most likely insurmountable. Because Hong Kong courts defer to China's expanded concept of state secrecy, not only would it be in violation of law to collect evidence for litigation of this case in a Hong Kong court, but such evidence would be inadmissible in Hong Kong.[9] Dellapenna Decl. at ¶¶ 26-27.

---

[9] BDO and PKF HK ingenuously suggest that Plaintiffs improperly obtained information contained in the Complaint because the Complaint contains information about Defendants' fraudulent misconduct that was obtained through, among other means, investigations carried out in the PRC. However, if Plaintiffs conduct was in any way improper, then BDO and PKF HK are "guilty" of the same in that they submitted the results of their own investigation within the PRC, including a declaration of fact signed in Beijing. Wang Decl.

While the factor of compelling documentary and witness evidence from China and Hong Kong if the case remains in this Court, or compelling the same from the United States if the case proceeds in Hong Kong, strongly favors the Southern District of New York, even if it favored Hong Kong, under Second Circuit law the motion to dismiss to Hong Kong must be denied. *DiRienzo*, 294 F.3d at 30 (denying the motion for *forum non conveniens* and holding that despite that "the number of witnesses for whom these accommodations [use of letters rogatory] would have to be made and the preference for live testimony" weighs in favor of the defendants, "the balance of the private interest factors is close.  *Gilbert* tells us that unless the balance strongly favors defendant, plaintiffs' choice of forum 'should rarely be disturbed'"); *In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 301 (E.D.N.Y. 2002) (in a class action, holding: "Yet this one factor [inability to compel any testimony of certain witnesses, and that deposition testimony would have to substitute for live testimony of other witnesses], taken with the rest of the private law factors is still not enough to tilt the balance in defendants' favor. When combined with the great weight of the public law factors, the balance certainly does not weigh heavily in favor of trial in the alternative forum . . . Moreover, given the strong presumption in favor of plaintiff's choice of forum that this Court must adopt in light of *Iragorri*, defendants have not met their burden"); *Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981) ("It is almost a perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name of expediency, to a forum in which, realistically, it will be unable to bring suit when the defendant would not be genuinely prejudiced by having to defend at home in the plaintiff's chosen forum. Here, it will be simpler and no more expensive for Avon to defend in New York than in Taiwan.

The only possible prejudice could be the <u>absence of process over the Taiwanese manufacturers</u>")

(emphasis added).[10]

## CONCLUSION

For the foregoing reasons, BDO's and PKF HK's joint motion to dismiss Plaintiffs'

Second Amended Complaint on the grounds of *forum non conveniens* should be denied.

Respectfully submitted,

Dated January 28, 2010 **THE ROSEN LAW FIRM, P.A.**

/s/ Timothy W. Brown
Laurence M. Rosen, Esq. (LR 5733)
Timothy W. Brown, Esq. (TB 1008)
Julie Kamps, Esq. (JK 6041)
Phillip Kim, Esq. (PK 9384)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: tbrown@rosenlegal.com
Email: jkamps@rosenlegal.com
Email: pkim@rosenlegal.com

Lead Counsel for Plaintiffs and the Class

---

[10] BDO's and PKF NY's reliance on *Strategic Value Master Fund, Ltd. v. Cargill Financial Services, Corp.* for the idea that getting evidence from Hong Kong and China for New York litigation requires dismissal is misplaced because in *Strategic Value Master Fund* the plaintiffs were not U.S. residents. 421 F.Supp.2d 741 (S.D.N.Y. 2006). BDO's and PKF NY's reliance on *Pollux Holding Ltd. v. Chase Manhattan Bank* is similarly misplaced because it arises out of notes that Liberian corporations had purchased from a defendant-bank in London, that is not based on violation of securities laws, is not a class action, and the "[n]otes elect both English law and exclusive English jurisdiction." 329 F.3d 64, 67-69 (2d Cir. 2003).

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2010, a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO BDO McCABE LO LIMITED'S AND PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS' JOINT MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT ON GROUNDS OF FORUM NON CONVENIENS was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Notice was provided via mail to:

China Expert Technology, Inc.,
C/O Registered Agent
Incorp Services, Inc.
3155 East Patrick Lane, Suite 1
Las Vegas, NV 89120-3481

/s/ Timothy W. Brown

35