UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS MUNOZ, INDIVIDUALLY, AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

               Plaintiff,

          -against-

CHINA EXPERT TECHNOLOGY, INC.; PKF
NEW YORK, CERTIFIED PUBLIC
ACCOUNTANTS, A PROFESSIONAL
CORPORATION; PKF HONG KONG,
CERTIFIED PUBLIC ACCOUNTANTS; BDO
MCCABE LO LIMITED, CERTIFIED PUBLIC
ACCOUNTANTS; BDO SEIDMAN, LLP,

               Defendants.

07 Civ. 10531 (AKH)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PKF HONG KONG'S MOTION TO DISMISS

ORRICK, HERRINGTON & SUTCLIFFE LLP
Michael C. Tu (*admitted pro hac vice*)
Steven J. Fink
Charles J. Ha
666 Fifth Avenue
New York, New York 10103-0001
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for PKF Hong Kong*

March 12, 2010

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 3

     A.     Plaintiffs Are Subject to Heightened Standards for Pleading Scienter Against PKF HK. ...................................................................................... 3

     B.     Plaintiffs Fail to Allege Any Specific Facts or Evidence Supporting the Inference That PKF HK Conducted "No Audit at All." ....................................... 4

          1.     Plaintiffs do not plead specific facts establishing that PKF HK did not send out third-party confirmation letters regarding the Jinjiang or Dehua contracts. ................................................................. 4

          2.     None of plaintiffs' other allegations are sufficient to establish a violation of GAAS. ......................................................................... 7

          3.     Alleged GAAS violations, without more, are insufficient to satisfy plaintiffs' burden to plead scienter. ......................................... 8

     C.     None of Plaintiffs' Purported "Red Flags" Would Lead Any Reasonable Auditor to Suspect That CXTI Was Engaging in Fraud. ...................................... 10

     D.     The Most Compelling Inference Drawn from Plaintiffs' Allegations About the Jinjiang and Dehua Contracts Is That PKF HK Was Deceived. ...................... 12

III.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)..............................................................................11

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005)................................................................................9

*In re Complete Mgmt. Inc. Sec. Litig.*,
  153 F. Supp. 2d 314 (S.D.N.Y. 2001)..............................................................................10

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ...........................................................................................2

*In re Doral Fin. Corp. Sec. Litig.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008),
  *aff'd sub nom. W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
  344 F. App'x 717 (2d Cir. 2009) .................................................................................9, 14

*Duncan v. Pencer*,
  No. 94 CIV 0321 (LAP), 1996 WL 19043 (S.D.N.Y. 1996).............................................4

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..............................................................................................3

*Hart v. Internet Wire, Inc.*,
  145 F. Supp. 2d 360 (S.D.N.Y. 2001)................................................................................9

*In re IMAX Sec. Litig.*,
  587 F. Supp. 2d 471 (S.D.N.Y. 2008)..............................................................................10

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..............................................................................................4

*In re LaBranche Sec. Litig.*,
  405 F. Supp. 2d 333 (S.D.N.Y. 2005)..............................................................................11

*In re Leslie Fay Cos. Sec. Litig.*,
  835 F. Supp. 167 (S.D.N.Y. 1993) ..................................................................................10

*Limited, Inc. v. McCrory Corp.*,
  683 F. Supp. 387, 394 (S.D.N.Y. 1988).............................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) .........................................................................................6

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) ....................................................................................9

*In re Marsh & Mclennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).........................................................................10, 11

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ...............................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    51 F. Supp. 2d 290 (S.D.N.Y. 1999)....................................................................................9

*In re Philip Servs. Corp. Sec. Litig.*,
    383 F. Supp. 2d 463 (S.D.N.Y. 2004).................................................................................10

*Reiger v. PricewaterhouseCoopers LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000),
    *aff'd, DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ...............................................................................................4

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .............................................................................................15

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...............................................................................................1, 4

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    380 F. Supp. 2d 509 (D.N.J. 2005) ....................................................................................10

*In re Scottish Re Group Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007)..................................................................................4

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
    124 F. Supp. 2d 505 (S.D. Ohio 2000) ................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).....................................................................................................2, 12

## TABLE OF AUTHORITIES
### (continued)

Page

*Whalen v. Hibernia Foods PLC*,
  No. 04 Civ. 3182, 2005 WL 1799370 (S.D.N.Y. Aug. 1, 2005) ......................................11

*In re Winstar Commc'ns*,
  No. 01 CV 3014 (GBD), 2006 WL 473885 (S.D.N.Y. Feb. 24, 2006) ............................11

*In re Worldcom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288 (DLC), 2003 WL 21488087 (S.D.N.Y. Jun. 25, 2003).........................9

*Zucker v. Sasaki*,
  963 F. Supp. 301 (S.D.N.Y. 1997) ...........................................................................6, 8, 9

## FEDERAL RULES

Fed. R. Civ. P. 12(h) ....................................................................................................3

## DECLARATIONS AND EXHIBITS FILED IN SUPPORT OF MOTION

Declaration of Charles J. Ha

> Exhibit F:    Interim Auditing Standard Section 316, published by the Public Company Accounting Oversight Board
>
> Exhibit G:    Interim Auditing Standard Section 330, published by the Public Company Accounting Oversight Board

## I.    <u>INTRODUCTION</u>

One of the fundamental elements of a securities fraud case is that plaintiffs must plead a "cogent and compelling" theory of scienter.  Plaintiffs do not dispute that defendant PKF Hong Kong ("PKF HK") had absolutely no motive to assist China Expert Technology, Inc. ("CXTI") in allegedly defrauding its shareholders, or to risk its reputation by completely abandoning its duties and performing "no audit at all" of CXTI's 2003 and 2004 financial statements.  Plaintiffs are required to plead particularized allegations providing a "strong circumstantial" inference that PKF HK acted with scienter in order to survive PKF HK's motion to dismiss.  For an independent auditor such as PKF HK, plaintiffs must plead particularized facts showing "an actual intent to aid in the fraud being perpetrated by the audited company."  *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (internal quotations omitted).  Plaintiffs do not come close to alleging any facts giving rise to any inference why PKF HK would assist CXTI in perpetrating a fraud.

The gravamen of plaintiffs' claim against PKF HK is that it failed to seek any third-party confirmations regarding two allegedly fraudulent contracts that CXTI's subsidiary, Expert Network, entered into:  the first signed by Jinjiang Gongcheng Management Services Co., Ltd. ("Jinjiang Management") on behalf of the Jinjiang City E-Government Project Construction Command Bureau ("Jinjiang"), and the second signed by Dehua County Electronic Administration Management Company Limited ("Dehua Management") on behalf of the Dehua County, People's Municipality of Fujian Province ("Dehua").  But plaintiffs plead nothing more than conclusory assertions without any basis or support by any particularized allegation.  There is no allegation of any witness, document, third party, or any other purported fact or evidence for plaintiffs' unsupported claim that PKF HK did not in fact seek and receive all appropriate audit confirmations.  There is simply no allegation of *any fact or evidence whatsoever* that PKF HK did not perform this or any other audit procedure.

Instead, plaintiffs resort to repeatedly claiming, in hindsight, that PKF HK "must have" failed to perform various audit procedures because PKF HK did not discover CXTI's fraud during its audit. But the Second Circuit has consistently recognized that such attempts at pleading fraud by hindsight are insufficient as a matter of law to satisfy the heightened pleading standards for scienter under the federal securities laws.

In fact, the only reasonable inference that can be drawn is the opposite inference that PKF HK did not commit fraud. Plaintiffs concede that they are required under the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) to plead particularized facts that raise a *strong inference of scienter* that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." However, the inferences that plaintiffs seek to draw from their conclusory allegations are neither reasonable nor rational, let alone cogent and compelling.

For example, plaintiffs allege that if PKF HK had only performed the basic audit procedure of seeking a third-party confirmation—a procedure that any reasonable auditor would have taken—then CXTI's fraud would have been revealed. But plaintiffs' theory requires one to believe that the fraudsters at CXTI were able to perpetrate a fraud over many years that deceived its investors, government regulators, and the public, but yet were so incompetent that they failed to take even rudimentary steps to conceal their scheme from the certainty that its auditors would seek third-party confirmations of CXTI's contracts and therefore discover its fraud. Plaintiffs' theory further requires one to believe that CXTI managed to hire not one but two major Hong Kong accounting firms, who, without any alleged motive, acted so recklessly that they did not send out any third-party confirmations. That would not be a rational or reasonable inference even if plaintiffs had any semblance of an alleged fact to support their claims, which they do not, and it certainly is not a cogent and compelling one. *See, e.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("People sometimes act irrationally, but indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud.").

The only reasonable inference is that PKF HK sent third-party confirmation letters to the management companies who signed the Jinjiang and Dehua contracts and were managing those projects and who, according to plaintiffs' own allegations, were likely collaborators in CXTI's alleged fraud and that those companies provided PKF HK with false confirmations.  PKF HK cannot simply rebut plaintiffs' unsupported and irrational allegation by submitting evidence in support of its motion to dismiss that it followed proper audit procedures.  It is precisely to prevent this type of baseless claim from proceeding into expensive discovery proceedings that Congress enacted the Private Securities Litigation Reform Act (the "Reform Act") to require plaintiffs to plead with particularity *specific facts* that form the basis for their allegations before they will be allowed to proceed.

## II.    ARGUMENT

### A.    Plaintiffs Are Subject to Heightened Standards for Pleading Scienter Against PKF HK.

Plaintiffs concede that in order to satisfy the heightened pleading standards for scienter in the Second Circuit, they *must* plead either:  (1) particularized allegations of motive and opportunity to commit fraud; or (2) particularized allegations providing strong circumstantial evidence of conscious misbehavior and recklessness.  *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); Opp'n at 8.[1]

Plaintiffs do not even attempt to plead any motive for PKF HK to have participated in CXTI's alleged fraud.  Nor could they.  PKF HK issued just one audit opinion letter and is not alleged to have had any long-term relationship with CXTI.  Indeed, PKF HK was replaced by a new auditor only months after issuing its sole audit opinion letter for CXTI.  Plaintiffs do not

---

[1] PKF HK's motion to dismiss focuses primarily on plaintiffs' failure to allege any viable theory of scienter in their complaint, but does not, as plaintiffs suggest, concede that plaintiffs have satisfied any of the other elements required to plead a § 10(b) claim.  A challenge to the sufficiency of plaintiffs' complaint for failure to state a claim for relief on any basis is not waived under Federal Rule of Civil Procedure 12(h) if not raised in the context of this particular motion, and PKF HK expressly reserves the right to challenge the sufficiency of the complaint with respect to any of the elements of their claim.

allege any conceivable benefit that PKF HK—described by plaintiffs as "one of the larger accounting firms in the world" (Opp'n at 18)—could realize by helping CXTI defraud government regulators and the investing public.[2]

Because plaintiffs attempt to establish scienter by satisfying only the second prong, which requires "particularized allegations providing strong circumstantial evidence" of scienter, they face an even higher burden. Without any allegation of a motive for fraud, the strength of their circumstantial evidence "*must be correspondingly greater.*" *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (internal quotations omitted, emphasis added).

Moreover, because PKF HK is an independent auditor, plaintiffs are further required to allege with particularity conduct that represents such "*an extreme departure from the standards of ordinary care*" that it approximates "an *actual intent* to aid in the fraud being perpetrated by the audited company." *Rothman*, 220 F.3d at 98 (internal quotations omitted, emphasis added). Plaintiffs must plead facts demonstrating that PKF HK's "accounting practices were *so deficient* that the audit amounted to *no audit at all.*" *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007) (internal quotations omitted, emphasis added).

**B.     Plaintiffs Fail to Allege *Any* Specific Facts or Evidence Supporting the Inference That PKF HK Conducted "No Audit at All."**

**1.     Plaintiffs do not plead specific facts establishing that PKF HK did not send out third-party confirmation letters regarding the Jinjiang or Dehua contracts.**

The "central allegation" of plaintiffs' claim is that PKF HK violated Generally Accepted Auditing Standards ("GAAS") by failing to seek third-party confirmations in connection with two of the sixteen allegedly fraudulent contracts entered into by Expert Network on CXTI's

---

[2] Courts have long recognized that it is "economically irrational" for a large, independent accounting firm to participate in or condone a client's fraud at the risk of its greatest assets—its reputation for honesty and for careful work. *Duncan v. Pencer*, No. 94 CIV 0321 (LAP), 1996 WL 19043, at *10 (S.D.N.Y. 1996); *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000) (a finding of motive would require the wholly "irrational inference that the accountant would risk its professional reputation to participate in the fraud of a single client"), *aff'd*, *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).

behalf.  *See, e.g.*, Opp'n at 15.[3]  But while the SAC contains numerous allegations concerning *CXTI's* alleged fraud, it lacks *any* particularized factual allegations relating to *PKF HK's* conduct during its audit of CXTI's 2003 and 2004 financial statement.

Plaintiffs' opposition refers numerous times to the "facts" that supposedly support their claim against PKF HK.  But plaintiffs' own recitation of these "facts" reveals the complete absence of any support for their claim that PKF HK did not send out third-party confirmation letters.  Plaintiffs summarize the purported "facts" against PKF HK as follows:

> Plaintiffs have alleged facts based on the findings of its private investigator, which were corroborated by several independent investigations (and by public documents filed with local Chinese governments), that practically every contract from which CXTI supposedly earned any revenue was completely fake, that none of the money from the phony contracts was ever received, and that PKF HK could not possibly have made confirmations with third parties without realizing CXTI's gargantuan fraud.

Opp'n at 25.  All of these alleged facts relate to CXTI, *not PKF HK*.  Plaintiffs in their opposition attempt to implicate PKF HK in the entire course of CXTI's allegedly fraudulent conduct over a four-year period, even though PKF HK issued a single audit opinion letter at a time when CXTI was first starting its e-government business (and more than a year before the start of the class period), and before it was replaced as CXTI's auditor.  For example, plaintiffs refer to "sixteen contracts with the five Chinese local governments" even though only two of those contracts are alleged to be relevant to their allegations against PKF HK.  *See* Opp'n at 2.  Similarly, plaintiffs refer to the alleged failure to confirm "even a tiny portion of the $134 million of reported revenue," even though the vast majority of that revenue was reported long after PKF HK had been replaced as CXTI's auditor.  *Id.* at 2-3.  By referring to contracts and revenue that PKF HK could not have, and absolutely did not have any involvement with, plaintiffs' opposition attempts to obfuscate the fact that PKF HK was not tasked with performing audit work in connection with the vast majority of the SAC's allegedly fraudulent contracts, as

---

[3] The contracts were signed by Jinjiang Management and Dehua Management.  SAC ¶ 134; Declaration of Elizabeth Hickey, Ex. D at 23 (Dkt. 74-5).

well as the absence of any particularized factual allegations in the SAC showing that PKF HK performed "no audit at all."

Indeed, the SAC is completely and noticeably devoid of any actual facts related to PKF HK's audit work. Plaintiffs do not allege that their private investigator uncovered any evidence that PKF HK failed to send out third-party confirmation letters, that any of the purported investigations revealed a lack of such confirmation letters, that there are any documents or witnesses indicating that PKF HK did not send out such confirmations, or that any of CXTI's customers allege that they never received confirmations from PKF HK. There are no allegations of *any evidence whatsoever* supporting plaintiffs' conclusory assertion that PKF HK failed to seek third-party confirmations or otherwise performed "no audit at all," much less allegations of any specificity to suggest that PKF HK did not send third-party confirmation letters to Jinjiang Management and Dehua Management.

Instead, plaintiffs rely solely on the assumption that because PKF HK did not discover CXTI's alleged fraud, it must not have made any third-party confirmations. *See, e.g.*, SAC ¶ 302 ("The Auditor Defendants did not perform the required procedures. If they had, they would have discovered the fraud."). This is an unsupported and conclusory allegation based on nothing more than hindsight. Courts have consistently held that such allegations amount to nothing more than fraud by hindsight, and are therefore wholly insufficient to satisfy the heightened pleading standards for scienter under the Reform Act. *See, e.g.*, *Zucker v. Sasaki*, 963 F. Supp. 301, 306 (S.D.N.Y. 1997) (rejecting as "nothing more than an example of fraud by hindsight" allegations that auditor failed to learn at the time that the accounting treatment for a transaction would later turn out to be erroneous (internal quotations omitted)).[4] The law is clear that PKF HK, as an

_____

[4] *Accord In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 516 (S.D. Ohio 2000) (rejecting "allegations of an auditor's failure to discover accounting errors" as "an example of pleading fraud in hindsight, the exact type of claims that . . . Rule 9(b) and the PSLRA were designed to weed out at the pleading stage"); *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58-59 (D. Mass. 1995) (allegations that alleged fraud would have been discovered "if proper accounting standards had been employed" were insufficient to plead scienter and nothing more that "fraud by hindsight").

independent auditor, cannot be held liable for securities fraud based simply on its failure to detect CXTI's fraud. Rather, plaintiffs are required to plead specific facts establishing that PKF HK's accounting practices were *so deficient* that the audit amounted to *no audit at all*. Plaintiffs' complaint does not come close.

2.      <u>None of plaintiffs' other allegations are sufficient to establish a violation of GAAS.</u>

Plaintiffs also argue that PKF HK violated GAAS by failing to seek additional third-party confirmations, such as: a confirmation of the Jinjiang contract not only with Jinjiang Management, but also with Jinjiang City, the entity on whose behalf Jinjiang Management allegedly worked; confirmation from the local Chinese government that Jinjiang Management had a current operating license in 2004; and confirmation that the financial statements Expert Network filed with the local Chinese government for fiscal year 2003 were the same as the financial statements that were provided to PKF HK by management during its audit.[5]  Plaintiffs also assert that PKF HK performed "no audit at all" because it did not confirm Dehua's ability to pay. *See* Opp'n at 21-23.[6]

It is all too easy for plaintiffs, years after PKF HK's audit had been conducted, to concoct in hindsight all kinds of additional audit procedures that might or might not have uncovered CXTI's fraud, or to claim that every fact discovered by their investigator should have been

---

[5] Plaintiffs' allegation regarding the alleged failure to confirm that the revenue reported from Expert Network's contracts was consistent with revenue Expert Network reported in financial statements filed with the Chinese government is particularly ironic given the fact that, according to plaintiffs, the financial statements that Expert Network filed with the Chinese government must also have been false. Plaintiffs allege that Expert Network reported $1.5 million in revenue to the Chinese government, but that CXTI earned just $12,000 from the work Expert Network performed during that time. SAC ¶¶ 226, 246-50.

[6] GAAS does not require an auditor to send a third-party confirmation regarding its *client's customer's* ability to pay. Plaintiffs have not alleged any facts to suggest that, during its audit, PKF HK did not receive reasonable assurance from CXTI that Dehua had paid and was able to continue paying its bills. Absent some reason to suspect that CXTI was not being paid by its customers—which plaintiffs have not alleged—PKF HK had no reason to confirm Dehua's ability to pay with third parties.

7

discovered by PKF HK. PKF HK is not a private investigator, it is an auditor. Its responsibilities as an auditor are governed by GAAS, and GAAS requires only that auditors obtain "reasonable assurance" that the financial statement assertions made by management are accurate. 12/14/2009 Declaration of Charles Ha in Support of PKF Hong Kong's Motion to Dismiss, Ex. E (AU 230.10) (Dkt. 68-6). The "reasonable assurance" standard under GAAS does not require an auditor to engage in the speculative procedures referred to by plaintiffs.

Plaintiffs rely (solely) on Interim Auditing Standard 330 for their argument that GAAS required PKF HK to take these actions. *See* Opp'n at 20 (citing SAC ¶¶ 275-77 (citing AU 330.04, 330.06, 330.09)). But nothing in AU 330 requires an independent auditor to seek confirmation from any particular party or to confirm any of the facts that plaintiffs' private investigator uncovered. Rather, AU 330 requires only that, when an auditor seeks a third party confirmation, it seek confirmation from a "third party who the auditor believes is knowledgeable about the information to be confirmed." 3/12/2010 Declaration of Charles Ha in Support of PKF Hong Kong's Reply in Support of PKF Hong Kong's Motion to Dismiss ("Ha Decl."), Ex. G (AU 330.26).[7] PKF HK would have clearly satisfied that standard by sending confirmation letters to Jinjiang Management and Dehua Management, the companies who signed the Jinjiang and Dehua contracts. Plaintiffs have not plead any allegation of fact to the contrary.

### 3.    Alleged GAAS violations, without more, are insufficient to satisfy plaintiffs' burden to plead scienter.

It is well-established that "general allegations of GAAP and GAAS violations fail to satisfy the scienter requirements of Section 10(b) and Rule 10b-5." *Zucker*, 963 F. Supp. at 307-

---

[7] Plaintiffs' allege in the SAC that GAAS requires an auditor to seek a third-party confirmation of a contract from its client's "customer." SAC ¶ 294. As pointed out in PKF HK's moving papers, Jinjiang Management—not Jinjiang—was CXTI's customer, and plaintiffs' allegations provide no basis to support any inference that PKF HK did not perform a third-party confirmation with Jinjiang Management. In their opposition, plaintiffs shift gears and now argue that PKF HK was obligated to go *beyond* CXTI's customers to seek third-party confirmation from *other* third parties. But as noted above, GAAS says nothing about seeking such confirmations from the client's customers or otherwise.

08; *see also In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008), *aff'd sub nom. W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 449-50 (S.D.N.Y. 2005). Even where there is an "egregious failure to gather information," GAAS violations will not create 10b-5 liability "as long as the defendants did not deliberately shut their eyes to the facts." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2001) (internal quotations omitted). Instead, scienter may only be inferred if the alleged GAAS violations are so pervasive that PKF HK performed the equivalent of "no audit at all." *Zucker*, 963 F. Supp. at 307.

The facts alleged in plaintiffs' SAC, whether considered individually or collectively, fall far short of this requirement. Even if plaintiffs could adequately allege that PKF HK failed to perform any or all of the audit procedures that plaintiffs allege—which they cannot—there is nothing at all to indicate that any such failure was the result of PKF HK having "deliberately shut their eyes to the facts." *Hart*, 145 F. Supp. 2d at 369 (internal quotations omitted). As courts in this district have held, "'[e]ven if [the auditor] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those [fraudulent] practices on [the auditor's] part,' an auditor's failure to do more is 'legally insufficient.'" *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 218 (S.D.N.Y. 1999) (second and fourth alterations in original) (quoting *Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 394 (S.D.N.Y. 1988)).

Plaintiffs cite a series of cases purportedly standing for the proposition that alleged GAAS or GAAP violations are sufficient to state a § 10(b) claim against an independent auditor. However, all of those cases are inapposite because they involved particularized factual allegations showing: (1) contemporaneous knowledge that the client was engaging in improper accounting practice;[8] (2) that the auditor actively engaged in the client's fraudulent

---

[8] *See In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2003 WL 21488087, at *4 (S.D.N.Y. Jun. 25, 2003) (auditor had been "notified that WorldCom had made entries after the books had closed" that altered accounting by over $30 million); *In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 293 (S.D.N.Y. 1999) (third-party and government

conduct;[9] (3) genuine "red flags" revealing specific conditions that the client was engaging in fraud;[10] or (4) a viable motive to commit fraud.[11] There are no such particularized factual allegations here, or any other allegations that suggest that PKF HK conducted "no audit at all."

**C.    None of Plaintiffs' Purported "Red Flags" Would Lead Any Reasonable Auditor to Suspect That CXTI Was Engaging in Fraud.**

Plaintiffs also argue that PKF HK ignored the same insufficient "red flags" set forth in the SAC without providing *any* explanation for why these "red flags" should have put PKF HK on notice of CXTI's potential misconduct to such a degree that its failure to detect CXTI's fraud approximates scienter. *See* Opp'n at 23.

Plaintiffs do not dispute that red flags are only those unique conditions that would "place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors" such that PKF HK's failure to investigate further in light of those conditions amounts to no audit at all, or an egregious refusal to see the obvious. *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (internal quotations omitted); *see also In re*

---

investigators had previously told auditor that company's accounting system was unreliable and internal controls were "severely deficient"); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 568-69 (D.N.J. 2005) (auditors told that reported proved reserves were "vulnerable and non-compliant with SEC rules" and auditors received "actual notice of booking improprieties"); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 653 (E.D. Va. 2000) (auditor knew of and reviewed three specific agreements and knowingly allowed company to recognize revenue from those agreements in violation of GAAP).

[9] *See In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 471-72 (S.D.N.Y. 2004) (audit partner advised client to treat certain losses as training losses, rather than actual losses, despite knowing that such accounting treatment was improper under GAAP).

[10] *See id.* at 475 ("red flags" include letter from former employee alleging questionable and improper accounting practices, obvious lack of an adequate financial reporting system, a previous qualified audit opinion concerning difficulty in verifying inventory levels, and a "massive" spike in inventory drastically out of line with market conditions)

[11] *See In re Leslie Fay Cos. Sec. Litig.*, 835 F. Supp. 167, 174 (S.D.N.Y. 1993) (in pre-Reform Act case, relying in part on auditor's motive to find scienter); *MicroStrategy*, 115 F. Supp. 2d at 654-55 (auditor acted as sales consultant for client thus had a "direct stake in the success of MicroStrategy"); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 335 (S.D.N.Y. 2001) (auditor had motive through receipt of over $1 million in consulting fees from client).

*Marsh & Mclennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 487 (S.D.N.Y. 2006) ("Merely labeling allegations as red flags, however, is insufficient to make those allegations relevant to a defendant's scienter."). Plaintiffs concede that the only three alleged "red flags" on which they rely are: (1) CXTI did business overseas; (2) CXTI used percentage of completion accounting; and (3) CXTI was experiencing growth in its revenue and accounts receivable. Opp'n at 23. As described in PKF HK's opening brief, none of these factors are unique conditions that would put a reasonable auditor on notice that fraud is occurring. (Dkt. 70 at 14-17.)

The cases cited in plaintiffs' opposition are inapposite as they merely state the general proposition that scienter may be inferred where an auditor has disregarded *genuine* red flags.[12] None of those cases hold that the mere facts of doing business overseas, using percentage of completion accounting, or experiencing growth are, as plaintiffs argue, "bright red flags" for fraud. Opp'n at 24. Nor do plaintiffs provide any explanation for why one or all of these three characteristics should be considered "red flags" that fraud is actually occurring. If that were so, courts would have to treat every nascent foreign services company as a presumptively fraudulent entity. Such an inference would obviously be neither rational nor fair.[13]

---

[12] *See In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 359-62 (S.D.N.Y. 2005) (finding alleged red flags sufficient to allege scienter against certain officers and directors where, among other things, the NYSE fined the company multiple times for the improper trading practices that created the alleged accounting misstatements); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004) (referring to liability of inside officers in connection with company's financial statements); *In re Winstar Commc'ns*, No. 01 CV 3014 (GBD), 2006 WL 473885, at *4 n.7 (S.D.N.Y. Feb. 24, 2006) (alleging 13 specific red flags, many relating to highly suspicious timing of transactions such that "tens of millions of dollars of product" was being shipped "in the last few hours of each quarter"); *Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182. 2005 WL 1799370, at *3 (S.D.N.Y. Aug. 1, 2005) (red flags included, among other things, company repeatedly defaulting on payments to lenders and suppliers, resulting in lawsuits being filed against company, and recognizing revenue without purchase orders and on products that had never been shipped).

[13] The absence of actual red flags is fatal to plaintiffs' attempt to plead scienter against PKF HK. As noted above, plaintiffs failed to provide any particularized allegations concerning the actual conduct of PKF HK's audits. In the absence of such facts, the only way to infer PKF HK's intent would be if PKF HK disregarded facts that would have placed any reasonable auditor on notice that the company was likely engaging in fraud; that is, if it disregarded actual red flags. *See Marsh*, 501 F. Supp. 2d at 489. Plaintiffs have done nothing more than cite

**D.    The Most Compelling Inference Drawn from Plaintiffs' Allegations About the Jinjiang and Dehua Contracts Is That PKF HK Was Deceived.**

Not only have plaintiffs failed to allege any particularized facts or evidence supporting their theory of scienter, those facts that plaintiffs have alleged show that the more compelling inference—indeed, the only cogent inference that can reasonably be drawn from the facts alleged—is that PKF HK did in fact send third-party confirmations, and that CXTI's co-conspirators provided PKF HK with false confirmations.

Plaintiffs agree that in order to satisfy the heightened pleading standard under the Reform Act, they must plead particularized facts raising a strong inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Plaintiffs' theory of scienter, however, requires many illogical and improbable inferences.

First, plaintiffs' theory is based on the allegation that because PKF HK did not discover CXTI's fraud it must not have sought any third-party confirmations and therefore conducted "no audit at all."  *See* Opp'n at 6-7.  In order for plaintiffs' theory to be cogent, the Court must accept the premise that any third party receiving a confirmation from PKF HK would have revealed CXTI's fraud.  But as plaintiffs' own allegations establish, this assumption cannot be true because Jinjiang Management and Dehua Management—the companies who signed the Jinjiang and Dehua contracts and who allegedly managed these projects (and who would be the most reasonable companies from whom an auditor would seek third-party confirmations regarding these contracts)—were themselves co-conspirators in CXTI's fraud.  Plaintiffs allege that these management companies were not authorized to sign those contracts, did not work on behalf of Jinjiang and Dehua, and were not licensed to do business in China.[14]  Indeed, with respect to

general characteristics common to many companies.  Thus, plaintiffs cannot establish scienter through PKF HK's alleged disregard of red flags.

[14] Plaintiffs allege that Jinjiang Management entered into a contract with Expert Network on April 30, 2003 for the provision of e-government services to Jinjiang.  SAC ¶¶ 134, 141. Plaintiffs allege that this contract was fraudulent because:  (a) an employee of Jinjiang had never heard of Jinjiang Management, (b) Jinjiang Management was not authorized to do business, and (c) Jinjiang Management had disappeared by the time plaintiffs' investigator sought to locate

Jinjiang Management specifically, plaintiffs allege that the company's principal was also a project manager for Expert Network, and thus in a position to "facilitate[] the forgery" perpetrated by CXTI.  SAC ¶ 172.

Under these circumstances, it is simply not rational to assume—as plaintiffs urge the Court to do—that these alleged cohorts in CXTI's fraudulent scheme would have simply revealed their misdeeds in response to PKF HK's confirmation letters.  The only cogent and compelling inference that can be drawn from these allegations is that these management companies, upon receiving confirmation letters from PKF HK, provided false confirmations to further CXTI's fraud.

Moreover, plaintiffs allege that CXTI concocted a multi-year, multi-million dollar fraudulent scheme that evaded the detection of two independent auditors, government regulators, and the investing public.  Yet plaintiffs urge the Court to assume that those same fraudsters were so incompetent that they did nothing to protect their scheme from being detected by a basic auditing procedure—a third-party confirmation—that any reasonable auditor would have performed.  That is not a rational assumption.  The only rational inference that can be drawn is that CXTI anticipated that PKF HK would seek confirmations and took steps—arranging for its co-conspirators at the management companies to send PKF HK false confirmations—to conceal its fraud from PKF HK.

Furthermore, plaintiffs urge the Court to assume that not one but two major Hong Kong auditors independently failed to send any third-party confirmations and effectively performed no

---

them.  *Id*. ¶¶ 155, 167-72.  Plaintiffs also allege that Dehua entered into a contract with Expert Network on April 9, 2004 for the provision of e-government services.  *Id*. ¶¶ 176, 181.  Dehua Management signed this contract on behalf of the Dehua government.  *See* Declaration of Elizabeth Hickey, Ex. D at 23 (Dkt. 74-5).  Plaintiffs allege that this contract was fraudulent because:  (a) an employee of Dehua said that Dehua had never authorized Dehua Management to act on its behalf and that he had never heard of Dehua Management; (b) plaintiffs' investigator was unable to discover any information related to Dehua Management through internet or telephone research; and (c) an employee of Dehua told plaintiffs' investigator, several years after the fact, that Dehua cancelled a contract with Expert Network in 2004 and paid only $12,000 for the work performed.  SAC ¶¶ 194-96, 198, 200.

audit at all of CXTI's financial statements.  Plaintiffs make this assumption despite the fact that neither auditor had any motive whatsoever (and is not alleged to have had any motive) to assist in CXTI's fraud or to perform "no audit at all" and despite the fact that there is no alleged fact or evidence that the auditors colluded with one another or with CXTI.

Finally, plaintiffs allege that CXTI fired PKF HK after just one audit—despite plaintiffs' allegation that PKF HK had immeasurably assisted CXTI in perpetrating its fraud by failing to perform any audit at all of CXTI's financial statements.  Plaintiffs allege no facts whatsoever to explain why CXTI would fire an auditor who under plaintiff's view of the world was either a willing participant in its fraud or so incompetent that it let obvious fraud pass by undetected. Indeed, the only cogent and compelling inference that can be drawn from this allegation is that CXTI replaced PKF HK because it was concerned that PKF HK would soon discover its fraud.

In order for plaintiffs' theory of scienter to be considered cogent and compelling, the Court would need to draw each one of these irrational inferences above in plaintiffs' favor. Courts in this district faced with similar allegations have held that plaintiffs' allegations of scienter fall far short of this standard.  For example, in *In re Doral Financial Corp. Securities Litigation*, 563 F. Supp. 2d 461 (S.D.N.Y. 2008), the plaintiffs' allegations focused on the deceptive conduct engaged in by the company being audited.  Specifically, the company was alleged to have "engaged in a deliberate practice of conscious misconduct . . . designed to surreptitiously mask the true terms and conditions of transactions" and to have received assistance in its scheme from "seemingly independent parties that were secretly manipulated by Doral and its employees."  *Id.* at 465 (internal quotations omitted).  The court held that, in light of the "secret and manipulative manner" in which the company executed its fraud, "*it is impossible to draw a strong inference of PwC's scienter* . . . because the competing inference that PwC was also tricked by Doral is *far more compelling*."  *Id.* at 466 (emphasis added).

As in *Doral*, plaintiffs allege that CXTI engaged in a complex fraud over many years designed to mask the true nature of its e-government contracts, and plaintiffs allege facts showing that Jinjiang Management and Dehua Management—purportedly independent third

parties—were not what they seemed to be, but instead were in a position to be manipulated by CXTI and its employees to further the alleged fraud.  It is similarly impossible to draw any inference of scienter as to PKF HK.[15]

## III.    CONCLUSION

This is plaintiffs' third attempt at pleading fraud and its second attempt against PKF HK. Given the plaintiffs' lack of any rational theory of scienter, granting further leave to amend would be futile.  "[L]awsuits can extort a great deal of undeserved settlement money if the courts do not filter out the unfounded ones early enough to avoid huge litigation expenses."  *Ronconi v. Larkin*, 253 F.3d 423, 428 (9th Cir. 2001).  The claims against PKF HK should be filtered out now.

Dated: March 12, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:                    */s/ Michael C. Tu*
                          Michael C. Tu

Michael C. Tu (*admitted pro hac vice*)
Steven J. Fink
Charles J. Ha
666 Fifth Avenue
New York, New York 10103-0001
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for PKF Hong Kong*

---

[15] GAAS recognizes that companies may conceal fraud through collusion with third parties, and that collusion "may cause the auditor who has properly performed the audit to conclude that the evidence provided is persuasive when it is, in fact, false."  Ha Decl., Ex. F (AU 316.10).  One specific way that this collusion can be carried out it that "the auditor may receive a false confirmation from a third party that is in collusion with management."  *Id.*