UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS MUNOZ, et al.,

        Plaintiffs,

        vs.

CHINA EXPERT TECHNOLOGY, INC.; PKF
NEW YORK, CERTIFIED PUBLIC
ACCOUNTANTS, A PROFESSIONAL CORP.;
PKF HONG KONG, CERTIFIED PUBLIC
ACCOUNTANTS; AND BDO MCCABE LO
LTD., CERTIFIED PUBLIC ACCOUNTANTS,

        Defendants.

07-CV-10531 (AKH)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
ON GROUNDS OF *FORUM NON CONVENIENS***

LATHAM & WATKINS LLP

Peter A. Wald (admitted *pro hac vice*)
James J. Farrell (admitted *pro hac vice*)
Cameron Smith
885 Third Ave.
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for BDO Ltd.*

ORRICK, HERRINGTON & SUTCLIFFE LLP

Michael C. Tu (admitted *pro hac vice*)
Steven J. Fink
Charles J. Ha
666 Fifth Avenue
New York, New York 10103-0001
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for PKF Hong Kong*

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.    ARGUMENT .........................................................................................................3

    A.    Plaintiffs' Forum Choice Deserves Less Deference ................................................3

    B.    Plaintiffs' Argument That There Is "No Remedy At All" Available To Them in Hong Kong Is Factually and Legally Incorrect ........................................7

    C.    All Defendants Are Subject to Hong Kong Jurisdiction.........................................9

    D.    The Private Factors Favor Dismissal ...................................................................10

        1.    The Inability To Compel Testimony Favors Hong Kong..........................10

        2.    The Burden and Expense of Transporting Evidence and Witnesses Favors Hong Kong....................................................................................12

        3.    Application of PRC State Secrecy, Government Archives, and Civil Procedure Laws Favors Hong Kong .................................................15

        4.    Plaintiffs Have Not Established Any Procedural Differences that Deserve Significant Weight ....................................................................18

    E.    The Public Factors Favor Dismissal ....................................................................19

III.    CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Acosta v. JPMorgan Chase & Co.,*
  No. 05-Civ-977, 2006 U.S. Dist. LEXIS 3491 (S.D.N.Y. Jan. 30, 2006) *aff'd*, 219 Fed.
  Appx. 83 (2d Cir. 2007) ............................................................................................... 13

*Aguinda v. Texaco, Inc.,*
  303 F.3d 470 (2d Cir. 2002) ........................................................................................... 9

*Alfadda v. Fenn,*
  159 F.3d 41 (2d Cir. 1998) ................................................................................. 8, 10, 11

*Allstate Life Ins. Co. v. Linter Group Ltd.,*
  994 F.2d 996 (2d Cir. 1993) ......................................................................................... 19

*Alpha Capital Aktiengesellschaft, Ellis International Ltd,  et al v. Tasty Fries, Inc. et al,*
  1:06-cv-07782 (S.D.N.Y) ................................................................................................ 2

*Banco de Seguros del Estado v. J.P. Morgan Chase & Co.,*
  500 F. Supp. 2d 251 (S.D.N.Y. 2007) ................................................................. 4, 7, 13

*Bell v. British Telecom,*
  No. 95-1972, 1995 U.S. Dist. LEXIS 11457 (S.D.N.Y Aug. 9, 1995) ....................... 8

*Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.,*
  2007 WL 485617 (S.D.N.Y. Feb. 13, 2007) ............................................................... 16

*Blanco v. Banco Industrial de Venezuela, S.A.,*
  997 F.2d 974 (2d Cir. 1993) ................................................................................. 8, 9, 10

*Capital Currency Exchange N.V. v. National Westminister Bank PLC,*
  155 F.3d 603 (2d Cir 1998) ........................................................................................... 19

*Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG,*
  535 F. Supp. 2d 403 (S.D.N.Y. 2008) ........................................................................... 7

*DiRienzo v. Philip Servs. Corp.,*
  294 F.3d 21 (2d Cir. 2002) ................................................................................... passim

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs.,*
  949 F. Supp. 1123 (S.D.N.Y. 1997) .............................................................................. 9

*Europe & Overseas Commodity Traders, S.A., v. Banque Paribas London,*
  940 F. Supp. 528 (S.D.N.Y. 1996), *aff'd,* 147 F.3d 118 (2d Cir. 1998)..................... 14

*Firebird Republics Fund, Ltd. v. Moore Capital Management,*
　　No. 09-Civ-3032009 U.S. Dist. LEXIS 59982 (S.D.N.Y. July 14, 2009) ....................... 2, 7, 14

*Gilstrap v. Radianz Ltd.,*
　　443 F. Supp. 2d 474 (S.D.N.Y. 2006), *aff'd,* 233 Fed. Appx. 83 (2d Cir. 2007)............. 5, 9, 19

*Howe v. Goldcorp Invest., Ltd.,*
　　946 F.2d 944 (1st Cir. 1991)................................................................................. 19

*In re CINAR Corp. Sec. Litig.,*
　　186 F. Supp. 2d 279 (E.D.N.Y. 2002) ........................................................................ 8

*Iragorri v. United Techs. Corp.,*
　　274 F.3d 65 (2d Cir. 2001) ................................................................................. 4, 7

*LaSala v. Bank of Cyprus Pub. Co.,*
　　510 F. Supp. 2d 246 (S.D.N.Y. 2007) ........................................................................ 7

*Lasala v. Lloyds TSB Bank,*
　　514 F. Supp. 2d 447 (S.D.N.Y. 2007) ....................................................................... 13

*Lewis v. C.R.I., Inc.,*
　　No. 03 Civ. 0651, 2003 WL 1900859 (S.D.N.Y. Apr. 17, 2003) ............................................. 5

*Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.,*
　　988 F. Supp. 404 (S.D.N.Y. 1997) ........................................................................... 5

*Murray v. BBC,*
　　81 F.3d 287 (2d Cir. 1996) ................................................................................ 18

*Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star,*
　　899 F. Supp. 164 (S.D.N.Y. 1995) .......................................................................... 18

*Niv v. Hilton Int'l Co.,*
　　No. 06-Civ-7839, 2008 U.S. Dist. LEXIS 92567 (S.D.N.Y. Nov. 10, 2008) ..................... 13, 17

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
　　416 F.3d 146 (2d Cir. 2005) ................................................................................. 7

*Piper Aircraft Co. v. Reyno,*
　　454 U.S. 235 (1981) ......................................................................................... 8

*Pollux Holding, Ltd. v. Chase Manhattan Bank,*
　　329 F.3d 64 (2d Cir. 2003) ................................................................................ 19

*Pompeyo Roa Realuyo v. Diaz,*
　　No. 98-Civ-7684, 2000 U.S. Dist. LEXIS 7241 (S.D.N.Y. May 26, 2000)............................. 13

*PT United Can Co. v. Crown Cork & Seal Co.,*
  138 F.3d 65 (2d Cir. 1998) ................................................................................. 8, 10

*Pyrenee, Ltd. v. Wocom Commodities Ltd.,*
  984 F. Supp. 1148 (N.D. Ill. 1997) .......................................................................... 9

*Sterling v. Carpentile,*
  No. 03-6569, 2003 WL 2222760 (S.D.N.Y. Sept. 26, 2003) ..................................... 16

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.,*
  421 F. Supp. 2d 741 (S.D.N.Y. 2006) ................................................................ 13, 15

*Tome Engenharia E. Transportes, Ltda. v. Malki,*
  No. 94 C 7427, 2003 WL 21372466 (N.D. Ill. Jun. 12, 2003) .................................. 16

*Wilson v. Imagesat Int'l N.V.,*
  07-Civ-6176, 2008 U.S. Dist. LEXIS 57897 (S.D.N.Y July 30, 2008) ...................... 13

*Yung v. Lee,*
  No. 00 Civ 3965, 2002 U.S. Dist. LEXIS 16655 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 432
  F.3d 142 (2d Cir. 2005) .......................................................................................... 9

## STATUTES

28 U.S.C. § 1746 .................................................................................................... 16

## TREATISES

8A Charles Alan Wright & Arthur R. Miller,
  *Federal Practice and Procedure* ............................................................................ 13

Defendants BDO Limited (f/k/a BDO McCabe Lo Ltd.) ("BDO Ltd.") and PKF Hong Kong (collectively, "Defendants") respectfully submit this Reply Memorandum of Law in Further Support of Their Joint Motion To Dismiss the Second Amended Complaint ("SAC") on Grounds of *Forum Non Conveniens*.

## I.    PRELIMINARY STATEMENT

There is no dispute that: (i) this case concerns allegations of fraudulent conduct occurring entirely in Hong Kong and the People's Republic of China ("PRC"), (ii) the relevant witnesses are in Hong Kong or the PRC, and (iii) if this case proceeds in New York, Defendants would be unable to compel testimony from necessary witnesses or admit relevant documents into evidence.

Plaintiffs' Opposition ("Opp.") essentially concedes that all of the events occurred in Hong Kong, all of the documents and witnesses are in Hong Kong and that virtually none of that evidence can be brought to the United States to litigate this case. Ignoring those facts, Plaintiffs' counsel argues that Hong Kong is not a more convenient forum because thousands of U.S. investors are located here. Plaintiffs argue that the class consists entirely of "American investors" (Opp. at 13) and that "all of CXTI stock was traded on U.S. stock exchanges and sold in the U.S. to U.S. residents." (Opp. at 26.) They argue that if this case were transferred to Hong Kong, "thousands of Plaintiffs would have to travel to Hong Kong." (Opp. at 30.)

In truth, CXTI was a closely held, thinly traded stock, and the majority of CXTI shareholders were foreign individuals and institutional investors. As of March 15, 2007, CXTI had an estimated 63 holders of common stock.[1] During the class period, at least 41% of CXTI's

---

[1] *See* Smith Decl., Ex. C (CXTI Annual Report (Form 10-K), at 18 (Apr. 12, 2007)) (citations to "Smith Decl., Ex. __" refer to particular exhibits attached to the declaration of Cameron Smith filed and served concurrently with Defendants' Joint Motion to Dismiss the SAC on Grounds of *Forum Non Conveniens* ("*Forum Non Conveniens* Motion"); *see also* Reply Declaration of Cameron Smith filed and served concurrently herewith ("Smith Reply Decl."), Ex. Q (Registration Statement (Form S-1/A), at 53 (June 16, 2006)) (noting that as of May 31, 2006, CXTI had 55 record holders of common stock).

stock was held by CXTI's officers and directors in Hong Kong, and a majority of all of the

outstanding stock was held by foreign individuals and institutional investors – over 58% of the

stock was owned outside the U.S.[2] The vast majority of CXTI's stock was held either by

insiders or by a small number of institutional investors who had purchased their shares directly

from the company (or received them as convertible debentures).[3] Thus, Plaintiffs' assertions that

this case only "concern[s] American investors who purchased stock due to exclusive reliance on

the integrity of the pricing of U.S. stock exchanges" is misplaced. (Opp. at 21.)

     Plaintiffs' central argument – that the Court should completely defer to Plaintiffs'

counsel's selected forum regardless of the location of the evidence – is factually and legally

unsound. Factually, a majority of CXTI's shares were held by investors abroad, not in the

United States. Legally, in the Second Circuit, a plaintiff's selection of a United States forum is

not dispositive. Courts must look at all of the relevant factors, with the amount of any deference

given to plaintiff's selected forum only an "entry point" on a "sliding scale." *Firebird Republics*

*Fund, Ltd. v. Moore Capital Management*, No. 09-Civ-303, 2009 U.S. Dist. LEXIS 59982, at \*4

(S.D.N.Y. July 14, 2009). Courts have held that a plaintiff's selected forum is entitled to far less

deference where, as here, the majority of documents and witnesses are located in the alternative

---

[2] *See* Smith Decl., Ex. C (CXTI Annual Report (Form 10-K), at 43 (Apr. 12, 2007)) (showing that 40.93% of CXTI's stock was held by individuals or institutional investors based in Hong Kong); *and see* Smith Reply Decl., Ex. R (Beneficial Ownership Report (Form 13G), at 5 (Dec. 22, 2006)) (showing that 10.02% of CXTI's stock was held by JLF Offshore Fund, a citizen of the Cayman Islands); *id.*, Ex. S (Registration Statement (Form S-1/A), at 29 (Jan. 8, 2007)) (showing that Alpha Capital AG held 1,536,637 shares or 4.84% of CXTI stock and Ellis International held 729,897 shares or 2.36% of CXTI stock). Alpha Capital AG is incorporated and based in Liechtenstein and Ellis International Ltd is incorporated and based in Panama (*see Alpha Capital Aktiengesellschaft, Ellis International Ltd, et al v. Tasty Fries, Inc. et al*, 1:06-cv-07782 (S.D.N.Y), Complaint at ¶¶ 1, 3 filed Sept. 28, 2006, attached to Smith Reply Decl. as Ex. T. Thus, at least 58.15% of CXTI's stock was held by foreign individuals or institutional investors.

[3] *See* Smith Reply Decl., Ex. U (CXTI Current Report (Form 8-K) at Ex. 10 (Oct. 27, 2005)) (Securities Purchase Agreement between CXTI and Alpha Capital AG; DKR Soundshore Oasis Holding Fund Ltd.; Ellis International; Platinum Partners Advisors, LLC; and Platinum Long Term Growth I, LLC); *id.*, Ex. V (Beneficial Ownership Report (Form 13G), at 2 (Dec. 26, 2006)) (showing 8.6% of CXTI's stock held by Pike Capital Partners, LP); *id.*, Ex. S (Registration Statement (Form S-1), at 29 (Jan. 8, 2007)) (showing that counterparties to Securities Purchase Agreement (including JLF Offshore Fund) owned 11,577,468 or approximately 38% of CXTI's shares). Ownership by insiders or institutional investors totaled over 80% of CXTI's shares at the beginning of the class period.

forum and are beyond the chosen forum's power to compel production or testimony, and where issues of translation and interpretation would make pre-trial discovery and trial proceedings in the United States far more expensive and inconvenient.

The relevant private and public factors overwhelmingly weigh in favor of transferring this case to Hong Kong. The access to witnesses and evidence strongly favors Hong Kong. In New York, the majority of the relevant witnesses and documents will not be accessible given the admitted restrictions created by PRC laws. But those restrictions do not all apply in Hong Kong, and the Hong Kong court system will enable the parties to compel live testimony that will not be available here, which is particularly important in a fraud case like this one. Also, the Hong Kong courts will not be restricted under the PRC Civil Procedure Law, and the parties will be able to investigate and use the key documents relating to BDO Ltd.'s and PKF Hong Kong's work, which will not be available here. Plaintiffs cannot credibly challenge these important factors, and instead argue that the Hong Kong courts do not have jurisdiction over all of the parties because PKF New York is here. But PKF New York has consented to Hong Kong jurisdiction and joined this motion, so that argument is eliminated. Plaintiffs also claim that they will have no remedy in Hong Kong. But that is completely inaccurate. These Plaintiffs have a comparable claim in Hong Kong, as the undisputed expert submissions demonstrate. Also, courts have repeatedly held that procedural mechanisms in the U.S. do not need be identical abroad. Simply put, on all of the relevant private and public factors, the evidence strongly favors dismissal here in favor of Hong Kong.

## II.    ARGUMENT

### A.    Plaintiffs' Forum Choice Deserves Less Deference

Adjudication of this matter in New York would be tremendously inconvenient, so much so that it would deprive Defendants of the ability to obtain evidence necessary to their defense.

When a forum choice is not genuinely convenient, it should receive less deference. *Banco de Seguros del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 261 (S.D.N.Y. 2007) (affording plaintiffs' forum choice "little, if any, deference" where "nearly every event alleged in the Complaint either occurred in Uruguay, or involved a decision finalized in Uruguay."); *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (holding that convenience of proceeding in the United States is relevant to the degree of deference given to the plaintiff's choice of forum).

CXTI's alleged fraud was perpetrated in Hong Kong and China, and the SAC identifies at least 24 nonparty witnesses located there who could not be compelled to travel to New York to testify.[4]  (Smith Decl., Ex. D)  The vast majority of evidence about Defendants' audits, including audit files, confirms, contracts and other audit work papers, is located in Hong Kong and is in Chinese.  (Kong Decl., ¶ 14; Wan Decl., ¶ 13.)[5]  These files contain information and financial statements about a PRC-based company, audit confirmations, and copies of contracts executed by local Chinese governments.  (*Id.*)  It is undisputed that transporting this evidence out of Hong Kong or China for use in a U.S. litigation would subject Defendants to potential liability under PRC State Secrets, Archives, and Civil Procedures laws.  (Wang Decl., ¶¶ 31-36;[6] Dellapenna Decl., ¶¶ 26-27; Reply Declaration of Dr. Xixin Wang filed and served concurrently herewith ("Wang Reply Decl."), ¶¶ 5(c), 9, 17-18.)  Hong Kong is the location of the relevant documents, witnesses and allegedly fraudulent conduct.  Critical pieces of evidence directly relevant to the SAC's allegations that Defendants performed "no audit at all", such as CXTI's

---

[4] The SAC identifies only one witness in the United States:  Henry Freire, an employee of PKF New York.  (SAC ¶¶ 45, 56.)

[5] Citations to "Kong Decl." and "Wan Decl." refer to the declarations of Johnson Kong and Derek Wan, respectively, filed and served concurrently with Defendants' *Forum Non Conveniens* Motion.

[6] Citations to "Wang Decl." refer to the declaration of Dr. Xixin Wang filed and served concurrently with Defendants' *Forum Non Conveniens* Motion.

signed contracts with PRC governments and audit confirms, exist in Defendants' audit files and would be admissible only in Hong Kong. (Reply Declaration of Anderson Chow, SC filed and served concurrently herewith ("Chow Decl."), ¶¶ 53-55, Exs. O and P; Wang Reply Decl., ¶¶ 15, 17-18.)  In addition, this Court would need to apply Hong Kong and PRC law if the case remains here, as evidenced by the parties' submissions from Hong Kong and PRC legal experts.  Nearly every discovery and evidentiary ruling in this case will include the interpretation of either Hong Kong or PRC law.  All of these factors make clear that it would not be genuinely convenient for this case to proceed in New York.

Plaintiffs minimize these concerns and rely heavily on *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21 (2d Cir. 2002).  They argue that because Plaintiffs are all American investors, their forum choice is entitled to significant deference, and attempt to assign dispositive effect to that conclusion.  (Opp. at 10.)  However, Plaintiffs' statements about their citizenship and residence, much less about the characteristics of the putative class, are completely unsupported by any evidence or sworn testimony and should be discounted accordingly.  *See Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 407 (S.D.N.Y. 1997) ("[T]estimonial evidence submitted on motions must be in the form of affidavits or declarations.  Unsworn statements by counsel simply will not do.").

More importantly, *DiRienzo* did not disturb the conclusion that a representative plaintiff's forum choice deserves less deference, as cases since *DiRienzo* have recognized.  *See, e.g., Lewis v. C.R.I., Inc.*, No. 03 Civ. 0651, 2003 WL 1900859, at *4 (S.D.N.Y. Apr. 17, 2003) ("[R]epresentative plaintiffs are entitled to some deference in their choice of forum, but they are entitled to less deference than other plaintiffs.") (citing *DiRienzo*, 294 F.3d at 28); *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("Plaintiffs' choice of forum is …

entitled to less deference where, as here, they are suing in a representative capacity.") (citing *DiRienzo*, 294 F.3d at 28), *aff'd*, 233 Fed. Appx. 83 (2d Cir. 2007). Affording Plaintiffs less deference is particularly appropriate here because Plaintiffs have submitted no evidence regarding their citizenship, residence, or the location of those allegedly harmed by CXTI's fraud. To the contrary, judicially noticeable facts demonstrate that CXTI was a closely held, thinly traded stock, majority-owned by foreign individuals and institutional investors.

Plaintiffs' forum choice should receive less deference here than was accorded in *DiRienzo* for reasons independent of Plaintiffs' citizenship and residence. In *DiRienzo*, numerous factors supported adjudication in the U.S.: (1) the Canadian company that carried out the alleged fraud had multiple subsidiaries in the U.S.; (2) it had purchased 15 American companies in stock-for-stock transactions and maintained facilities in 12 states; (3) it generated 70% of its corporate revenue from U.S. operations; (4) four of its directors were American, including the board chairman; (5) it had conducted extensive "road shows" in the U.S. to seek out and sell its stock to U.S. investors; and (6) defendants had availed themselves of the U.S. forum by filing a motion before the Judicial Panel on Multi-District Litigation to transfer the case to the Southern District of New York. *DiRienzo*, 294 F.3d at 25-27, 29. None of these factors are present in this case. A majority of CXTI's stock was held by foreign individuals and institutions who did not purchase the stock on an American stock exchange, and Plaintiffs can point to no other connections to the United States like those that were present in *DiRienzo*. To the contrary, CXTI's operations were entirely located in Hong Kong and the PRC, the contracts that are the subject of the alleged fraud involved PRC entities exclusively, and the audit work performed by BDO Ltd. and PKF Hong Kong took place almost entirely in Hong Kong and the PRC.

Due to the unavailability of necessary witnesses and evidence in this forum and the cost

and inconvenience posed by litigation of Plaintiffs' claims in New York, it is clear that Plaintiffs' chosen forum is not genuinely convenient and is entitled to less deference. *Banco de Seguros del Estado*, 500 F. Supp. 2d at 261 (affording plaintiffs' forum choice "little, if any, deference" where all the events and conduct alleged in the complaint took place in Uruguay); *Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG*, 535 F. Supp. 2d 403, 408 (S.D.N.Y. 2008) (dismissing for *forum non conveniens* where "[n]one of the witnesses necessary to resolve [the] action resides in New York and . . . [m]ost or all of the relevant documentary evidence is likewise situated abroad" and was not written in English); *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 259 (S.D.N.Y. 2007) (dismissing for *forum non conveniens* where the "overwhelming majority of witnesses resides in Cyprus").

The Second Circuit has held that the degree of deference to be accorded plaintiffs' forum choice "moves on a sliding scale" and is correlated with the "degree of convenience" that the choice reflects. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (citation omitted); *Firebird Republics Fund, Ltd.*, 2009 U.S. Dist. LEXIS 59982, at *4. Whatever deference is ultimately accorded, no one factor in the three-part *Iragorri* inquiry is dispositive. *Iragorri*, 274 F.3d at 73 ("[D]eference given ... does not dispose of a *forum non conveniens* motion. It is only the first level of inquiry."). A *forum non conveniens* dismissal is appropriate where, as here, the balance of public and private factors strongly favor trial in Hong Kong and proceeding in New York would be inconvenient and unjust.

### B. Plaintiffs' Argument That There Is "No Remedy At All" Available To Them in Hong Kong Is Factually and Legally Incorrect

Plaintiffs incorrectly argue that Hong Kong is an inadequate alternative forum because it lacks a "fraud-on-the-market" theory, which would purportedly deny their ability to proceed as a class action. (Opp. at 16-18.) As a general matter, differences between Hong Kong and U.S.

law that may disadvantage Plaintiffs are irrelevant to the adequacy analysis so long as Hong

Kong permits adjudication of the subject matter of Plaintiffs' case. *Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 255 (1981) (alternative forum adequate despite unavailability of certain legal

theories and potentially lower damages award); *Bell v. British Telecom*, No. 95-1972, 1995 U.S.

Dist. LEXIS 11457, at *6 (S.D.N.Y Aug. 9, 1995) ("The forum non conveniens inquiry is not

altered by unfavorable changes in the law that may result from a change in forum."); *and see*

*Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998) (alternative forum adequate if it permits

adjudication of the subject matter of plaintiffs' suit). An alternative forum is adequate even if

Plaintiffs are unable to pursue the same causes of action or obtain the same relief that may be

available in the United States. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74

(2d Cir. 1998) ("The availability of an adequate alternate forum does not depend on the existence

of the identical cause of action in the other forum."); *Blanco v. Banco Industrial de Venezuela,*

*S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) ("[T]he unavailability of beneficial litigation procedures

similar to those available in the federal district courts does not render an alternative forum

inadequate.").

     Courts in this Circuit decline to find a forum inadequate based on the unavailability of

procedural mechanisms such as a "fraud-on-the market" theory or class actions. *DiRienzo*, 294

F.3d at 33-34 (incorporating by reference adequacy analysis from earlier vacated opinion, 232

F.3d 49, 57-60 (2d Cir. 2000)) (deeming Ontario adequate forum despite lack of "fraud-on-the-

market" theory); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 298 (E.D.N.Y. 2002)

("Finding a[n alternative] forum inadequate for not recognizing the "fraud-on-the-market" theory

would essentially render the doctrine of forum non conveniens nugatory for securities fraud

cases. Unless all plaintiffs could establish reliance on something other than the integrity of the

stock price, these cases would necessarily require United States jurisdiction.  This takes the flexibility out of a doctrine that is designed to be flexible and fact-dependent."); *see also Gilstrap*, 443 F. Supp. 2d at 482 ("[T]he unavailability of such procedural mechanisms as class actions . . . does not render a foreign forum inadequate as a matter of law.").

As Plaintiffs' "expert" concedes, numerous courts recognize that Hong Kong is an adequate forum for the resolution of commercial disputes and that allegations of fraud in the sale of securities may be pursued there under the torts of deceit and misrepresentation.  (Dellapenna Decl. ¶¶ 11, 22; *and see* Declaration of Joseph P. Fok, SC[7] ("Fok Decl.") ¶¶ 27-30; Chow Decl., ¶ 60); *see also Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs.*, 949 F. Supp. 1123, 1129 (S.D.N.Y. 1997) (recognizing that securities fraud claims can be pursued in Hong Kong as "causes of action for fraud, deceit or misrepresentation"); *Pyrenee, Ltd. v. Wocom Commodities Ltd.*, 984 F. Supp. 1148, 1163 (N.D. Ill. 1997) (same); *Yung v. Lee*, No. 00 Civ 3965, 2002 U.S. Dist. LEXIS 16655, at *6 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 432 F.3d 142 (2d Cir. 2005) ("Hong Kong has uniformly been considered an adequate alternative forum for commercial disputes."). Hong Kong is an adequate forum for adjudication of this dispute, and Plaintiffs' argument to the contrary based on the absence of a "fraud-on-the-market" theory is unavailing.[8]

C.    **All Defendants Are Subject to Hong Kong Jurisdiction**

Because all the Defendants either are located in Hong Kong or have consented to Hong Kong jurisdiction, Plaintiffs' argument that Hong Kong is not an adequate forum is incorrect.

---

[7] Mr. Fok was appointed a judge in Hong Kong effective February 1, 2010 and was therefore not able to submit a reply declaration in support of Defendants' *Forum Non Conveniens* Motion.  (*See* Chow Decl., ¶ 5.)

[8] Plaintiffs' argument that Hong Kong is an inadequate forum because Defendants have not proven that an action there will not be barred by the statute of limitations (Opp. at 16 n.3) is without merit.  Defendants would agree to waive any defense based on a statute of limitations for limitation periods expiring between the date of filing this action in the United States and one year following the dismissal of this action. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478-79 (2d Cir. 2002) (conditioning dismissal on such a waiver).  The Court may condition its dismissal on such consent. *See, e.g., Blanco*, 997 F.2d at 984 ("[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal.").

(Opp. at 15-16.) BDO Ltd. and PKF Hong Kong acknowledge that they are subject to personal jurisdiction and service of process in Hong Kong. (*See* Kong Decl., ¶¶ 4-5; Wan Decl., ¶ 14.) PKF New York has joined in this motion and agreed to consent to jurisdiction in Hong Kong if this Court grants the present motion.[9] (*See* Declaration of William J. Kelly, Dkt. No. 107.) CXTI – though defaulted from this action – is unquestionably subject to jurisdiction in Hong Kong because it is headquartered there. (*See* SAC ¶¶ 17, 332-333.) Hong Kong is an adequate forum because each of the Defendants is subject to jurisdiction there and may be served in an action commenced in Hong Kong.

### D.   The Private Factors Favor Dismissal

#### 1.   The Inability To Compel Testimony Favors Hong Kong

Compulsory process is available in Hong Kong to secure the live testimony of necessary witnesses who reside there and are outside the reach of this Court. (Fok Decl., ¶¶ 13.3, 13.4.) The ability to secure such witness testimony is particularly crucial where plaintiffs have alleged fraud because "live testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor." *Alfadda*, 159 F.3d at 48. BDO Ltd. and PKF Hong Kong submitted fact declarations stating that all of the employees who performed the audits of CXTI reside in Hong Kong or the PRC, are not U.S. citizens, and that several important members of the CXTI audit teams are no longer employed by Defendants and thus cannot be made available for trial without the compulsory process that would be available only in Hong Kong. (*See* Kong Decl., ¶ 10; Wan Decl., ¶ 7.) In addition, the SAC identifies numerous nonparty witnesses in Hong Kong who would be critical to Defendants' case because they worked for CXTI, and they are beyond the

---

[9] This Court may condition its dismissal on PKF New York being subject to jurisdiction and service of process through PKF New York's stipulated consent to the alternative forum's jurisdiction. *See, e.g., PT United Can Co,* 138 F.3d at 75 (conditioning *forum non conveniens* dismissal on defendant's stipulation to jurisdiction of the alternative forum); *Blanco*, 997 F.2d at 984.

reach of this Court. (*See* Smith Decl., Ex. D.)

Plaintiffs' Opposition is essentially silent in response. The most Plaintiffs can do is to speculate that Defendants' former employees must not have any relevant information about the audits, and that even if they did, to suggest that Defendants' work papers are an adequate substitute for their testimony. (Opp. at 31-32.) Defendants' fact declarations establish that these former employees have direct knowledge of the relevant audits (*see* Kong Decl., ¶ 10; Wan Decl., ¶ 7), and documents in the audit files are no substitute for their live testimony, particularly because Plaintiffs have alleged fraud. *Alfadda*, 159 F.3d at 48; *DiRienzo*, 294 F.3d at 30. Because Plaintiffs' claim turns on what CXTI and others represented to Defendants about the legitimacy of CXTI's financials and operations, employees of CXTI in Hong Kong are critical to the fair resolution of this case. As the default judgment against CXTI and dismissal of the CXTI executives show, this Court is not the proper forum to compel such evidence, which could be compelled by a Hong Kong court. Plaintiffs have no response to the argument that dismissal is favored because critical nonparty witnesses identified in the SAC reside in Hong Kong and could be compelled to testify there but are beyond the reach of this Court. (*See* Memorandum of Law in Support of Defendants' *Forum Non Conveniens* Motion ("Mem.") at 11; Smith Decl., Ex. D.)

Nor would Plaintiffs face an equal burden were the case to proceed in Hong Kong. Plaintiffs have identified only one witness in the United States and do not dispute that the vast majority of documentary evidence is in Hong Kong or that the vast majority of witnesses are in Hong Kong or the PRC. (Dellapenna Decl., ¶ 24.) Their effort to cast BDO Seidman as a necessary testifying party is misplaced. (Opp. at 30.) BDO Seidman was dismissed with prejudice from this action. In addition, Plaintiffs, by their own admission, have already "conducted extensive discovery" from PKF New York and BDO Seidman (Opp. at 2), including

the production of documents to Plaintiffs and the taking of depositions. (*See* SAC, Ex. 1

(attaching documents produced by PKF New York); Amended Complaint, Dkt. No. 24, ¶ 314

(discussing deposition of BDO Seidman employee).)  If this case is tried in Hong Kong,

Plaintiffs have already benefited from U.S. discovery mechanisms to obtain "extensive" amounts

of evidence from the U.S. accounting firms.  Thus, Plaintiffs' argument that a Hong Kong court

would be unable to compel discovery from U.S. Defendants as a factor weighing against

dismissal is without merit.[10]

### 2.    The Burden and Expense of Transporting Evidence and Witnesses Favors Hong Kong

Plaintiffs incorrectly argue that the Second Circuit has held "travel between countries is

not burdensome in terms of cost or time." (Opp at 30.)  In truth, the Second Circuit made no

such sweeping conclusion that international travel can never add to the burden or be relevant to

the convenience analysis.  Rather, on facts quite different from those present here, the Second

Circuit simply gave less weight to the international travel required in that case because willing

witnesses could travel to New York from Toronto via a direct 90-minute flight. *DiRienzo*, 294

F.3d at 30.  Here, the vast majority of documentary evidence is in Hong Kong and is in Chinese,

and nearly all of the relevant witnesses are in Hong Kong.[11]  It is well-established that in these

---

[10] For the same reasons, it is simply incorrect that letters rogatory would have to be used equally to get evidence from the U.S. for use in a Hong Kong proceeding. (Opp. at 31; Dellapenna Decl., ¶ 24.)  The witnesses are not in the U.S., and Plaintiffs have already obtained any relevant discovery from U.S. parties through the "extensive discovery" that they have conducted here. (Opp. at 2.)

[11] Plaintiffs' argument regarding GAAS is without merit. (Opp. at 30.)  First, even if expert testimony on GAAS principles could be obtained only from a United States witness, the cost of transporting a single witness to Hong Kong for testimony is outweighed by the tremendous burden that the lack of compulsory process over Hong Kong witnesses would impose on Defendants. Second, Plaintiffs do not dispute that Hong Kong courts and judges are experienced with handling disputes involving claims against accountants and auditors, including the consideration of Hong Kong experts' testimony, and are familiar with GAAS principles. (Fok Decl., ¶¶ 34-36.) Third, the premise of Plaintiffs' argument – that only an expert from the U.S. could testify about U.S. GAAS procedures – is a complete fiction.  There are Hong Kong member firms related to KPMG International, Deloitte Touche Tohmatsu, Grant Thornton International, and Ernst & Young Global Limited and certainly hundreds of people in Hong Kong capable of testifying about U.S. GAAS.

circumstances, the burden and expense of transporting evidence and witnesses and of translation and interpreting services favors dismissal.[12]  As courts of this district continue to recognize, dismissal is "favored" where "most of the witnesses and documentary evidence reside in a foreign country" because of the "significant burdens" imposed on the parties. *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006);[13] *see also Acosta v. JPMorgan Chase & Co.*, No. 05-Civ-977, 2006 U.S. Dist. LEXIS 3491, at *26 (S.D.N.Y. Jan. 30, 2006) (because the "overwhelming amount of documentary proof" and "nearly all of the relevant non-party witnesses" were located in Argentina or Uruguay, the "cost and burdens imposed on both parties for bringing those witnesses here would be considerable. These factors therefore favor dismissal."), *aff'd*, 219 Fed. Appx. 83 (2d Cir. 2007).[14]  The facts of this case clearly establish that depositions and trial in Hong Kong will be far less burdensome for the witnesses and far less costly to the parties than bringing critical witnesses to New York.

Plaintiffs give short shrift to the argument that the vast majority of relevant documents are in Hong Kong and are in Chinese (Kong Decl., ¶ 14; Wan Decl., ¶ 13), and that the cost to

---

[12] In addition, the deposition of a corporation through its officers or agents is taken at the principal place of business of the corporation or the residence of the officer or agent. *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2112; *Pompeyo Roa Realuyo v. Diaz*, No. 98-Civ-7684, 2000 U.S. Dist. LEXIS 7241, at *3 (S.D.N.Y. May 26, 2000) ("As a general matter, a corporate officer should be deposed at his place of residence or the corporation's principal place of business."). Dismissal of this case to Hong Kong would minimize inconvenience and expense for all parties because Plaintiffs will have to obtain deposition testimony from Defendants in Hong Kong even if this case remains in New York.

[13] Plaintiffs dismiss *Strategic Value Master Fund* as "irrelevant" because plaintiffs in that case were not U.S. residents themselves. (Opp. at 30.) But *Strategic Value Master Fund* merely states the well-established principle, echoed in cases where plaintiffs are U.S. citizens and courts have granted *forum non conveniens* dismissal, that when the bulk of relevant evidence and witnesses are abroad dismissal is favored. *See, e.g., Lasala v. Lloyds TSB Bank*, 514 F. Supp. 2d 447, 458 (S.D.N.Y. 2007) (dismissing case brought by U.S. plaintiffs in favor of adjudication in Switzerland because the "alleged misconduct is centered in the foreign forum and the majority of evidence resides there") (citing *Strategic Value Master Fund*, 421 F. Supp. at 766).

[14] *See also Wilson v. Imagesat Int'l N.V.*, 07-Civ-6176, 2008 U.S. Dist. LEXIS 57897, at *21-22 (S.D.N.Y July 30, 2008) (holding that trial of the case in Israel would be "easier, more expeditious, and less expensive" because "most if not all of the documentary evidence is in Israel, and many of the witnesses who are critical to the proof of the alleged corporate misconduct reside there."); *Niv v. Hilton Int'l Co.*, 06-Civ-7839, 2008 U.S. Dist. LEXIS 92567, at *36-37, *42 (S.D.N.Y. Nov. 10, 2008) (granting dismissal because, in part, the majority of relevant evidence was located abroad); *Banco de Seguros del Estado*, 500 F. Supp. 2d at 261-62.

transport those documents to New York, of translation, and to provide interpreters to witnesses would be tremendously burdensome.  (Mem. at 13; Opp. at 29.)  Plaintiffs represent this factor as neutral because, if the case moves to Hong Kong, it would purportedly be necessary to translate documents in the U.S. from English to Chinese.  (Opp. at 29.)  However, Plaintiffs concede that Hong Kong's court system is bilingual (Opp. at 29), and accordingly there is no need to translate evidence from English to Chinese because Hong Kong courts operate in both official languages of Hong Kong – English and Chinese.  (Fok Decl., ¶ 13.5; Chow Decl., ¶ 57.)  In addition, it is undisputed that (1) the vast majority of documentary evidence and witnesses are located abroad and that significant cost savings can be achieved in Hong Kong due to the availability of less-expensive translation services there, (2) many of the District Court and High Court Judges in Hong Kong are native Chinese speakers and are proficient with written Chinese such that they can consider evidence in the first instance without need for translation, and (3) proceeding in Hong Kong will allow the parties' legal advisers to review discovery in Chinese without the additional expense of translation.  (Mem. at 13-14; Fok Decl., ¶¶ 13.4, 13.5; Chow Decl., ¶ 56-58.)

As this Court recently observed, when "the witnesses, as well as documents and other evidence relating to alleged fraud" are abroad, "the sources of proof required for trial are not readily available in New York" and dismissal is favored. *Firebird Republics Fund, Ltd.*, 2009 U.S. Dist. LEXIS 59982, at *8.  As a general matter, courts recognize that when making documents and witnesses available in the United States and translating volumes of documents and testimony for use during pre-trial proceedings and at trial would be burdensome and expensive, this factor favors dismissal. *See Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 940 F. Supp. 528, 538 (S.D.N.Y. 1996) (cost to transport witnesses to

the U.S. "would impose a prohibitive cost on defendants"), *aff'd*, 147 F.3d 118 (2d Cir. 1998);

*Strategic Value Master Fund, Ltd.*, 421 F. Supp. 2d at 766.

###### 3.    Application of PRC State Secrecy, Government Archives, and Civil Procedure Laws Favors Hong Kong

The parties would risk liability under PRC State Secrecy, Government Archives, and

Civil Procedure laws were they to transport evidence in their possession outside Hong Kong or

the PRC for use in this forum.  (Wang Decl., ¶¶ 36, 40; Dellapenna Decl., ¶¶ 26-27, Wang Reply

Decl., ¶¶ 5, 18.)  Defendants' inability to present evidence in New York, such as the actual

confirms that the auditors obtained, confirming CXTI's contracts with local PRC governments

and payments made on those contracts, would force them to stage a defense without access to

critical pieces of evidence.

Hong Kong is clearly superior to a U.S. forum because the Hague Convention and the

PRC Civil Procedure Law do not apply to the collection of evidence in the PRC by parties in

Hong Kong for use in Hong Kong proceedings.  (Wang Reply Decl., ¶¶ 5(c), 6, 7, 10-15.)

However, parties litigating in the United States who seek to obtain evidence in the PRC, such as

Expert Network financial statements or interviews and statements of witnesses residing in the

PRC, would be subject to sanctions for bringing the evidence to the U.S. unless they obtained

approval through the PRC Civil Procedure Law and the Hague Convention, which no U.S.

litigant has successfully done.  (*Id.*; Wang Decl., ¶ 13.)

In an effort to present this factor as neutral, Plaintiffs argue that PRC state secrecy laws

would present an "insurmountable" barrier to the admissibility of evidence collected from the

PRC or in Defendants' possession in a Hong Kong proceeding.  (Opp. at 32.)  Plaintiffs' sole

"authority" for this argument is the "expert" opinion of Joseph Dellapenna.  Mr. Dellapenna is

not admitted to practice in Hong Kong, does not purport to have litigated a case in Hong Kong,

and describes his experience with Hong Kong as a place he has "been to . . . at least twenty times . . . for professional and personal reasons." (Dellapenna Decl., ¶ 6.) According to Appendix A to his Declaration, Mr. Dellapenna's primary experience appears to be in the field of riparian law and other water rights issues. (Dellapenna Decl., App. A.) Nothing in his declaration reveals any experience with Hong Kong procedural or evidentiary laws. Plaintiffs have not established Mr. Dellapenna's expertise as to any of the issues on which he opines, including the question of admissibility of evidence in a Hong Kong legal proceeding. His declaration should thus be disregarded.[15] *See, e.g., Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, 2007 WL 485617, *19 n.21 (S.D.N.Y. Feb. 13, 2007) (disregarding "expert" testimony where witness lacked expertise on the topic on which he opined); *Tome Engenharia E. Transportes, Ltda. v. Malki*, No. 94 C 7427, 2003 WL 21372466, *6 (N.D. Ill. Jun. 12, 2003) (rejecting purported "expert" testimony on Brazilian law where declarant did not "explain the commercial law or criminal law experience he possesses that affords him the basis to express the opinions he advances").

Although he cannot identify a single court decision to support it, Mr. Dellapenna asserts that the Defendants' work papers and other evidence will be inadmissible in Hong Kong. (Dellapenna Decl., ¶ 27; *and see* Chow Decl., ¶¶ 47-51.) This is not the case. Defendants' Hong Kong experts—both of whom are experienced practitioners—established that there is no bar to the admissibility of such evidence were the case to proceed in Hong Kong. (Chow Decl., ¶¶ 36, 52-55; Fok Decl., ¶¶ 13.2, 13.3.) PRC-based companies' financial statements and contracts with local PRC governments are, where relevant, frequently admitted and used in Hong Kong legal

---

[15] Defendants note, as well, that Mr. Dellapenna's declaration is unsworn and fails to comply with the requirements of 28 U.S.C. § 1746. For this reason it is inadmissible, and at minimum, should not be granted the same evidentiary force and effect as a sworn declaration. *See Sterling v. Carpentile*, No. 03-6569, 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003) (ruling it is "hard if not impossible" for the court to rely on a declaration that does not comply with 28 U.S.C. § 1746).

proceedings given that actions in Hong Kong often involve or relate to one or more PRC entities. (Chow Decl., ¶¶ 36, 52-55, 62(2).)  Thus, Hong Kong is a superior forum because the bulk of evidence relevant to this case is in Hong Kong and it can be admitted into evidence in that forum.

In contrast, Defendants would be subject to liability under PRC laws were they to transport this evidence outside Hong Kong or the PRC for admission as evidence in a U.S. proceeding.  (Wang Decl., ¶¶ 36, 40; Wang Reply Decl., ¶¶ 5(c), 11, 15, 18.)  As Dr. Wang explained, Plaintiffs may already have violated PRC laws by conducting their investigation in the PRC and transporting documents subject to PRC State Secrecy, Government Archives, or Civil Procedure laws outside of China for use in this proceeding.  (Wang Decl., ¶¶ 15-16, 19; Wang Reply Decl., ¶ 5(c).)  Plaintiffs acknowledge that these laws "may impede the discovery process if the case proceeds here."  (Opp. at 32.)  Clearly, a Hong Kong proceeding would permit the admission of significantly more evidence than would a trial in New York.  (Wang Reply Decl., ¶ 7, 17-18, Chow Decl., ¶¶ 36, 52, 55, 62.)  This admission by Plaintiffs underscores why this case should be transferred to Hong Kong.  If the case remains in New York, discovery will be virtually impossible, which will deprive all parties and this Court of the ability to resolve this case on the merits.  Moreover, it would mire the Court in an ongoing evaluation of foreign laws concerning what evidence can be produced and used in a U.S. proceeding, requiring the court to interpret repeatedly Hong Kong and PRC law.  Indeed, both sides have already adduced substantial testimony concerning Hong Kong and PRC law, and discovery here would continue to involve interpretations of such laws, with which a Hong Kong court would already have ample familiarity.  Problems of applying foreign law to this dispute weigh in favor of dismissal.  *Niv*, 2008 U.S. Dist. LEXIS 92567, at *52.

### 4.    Plaintiffs Have Not Established Any Procedural Differences that Deserve Significant Weight

Plaintiffs assert that procedural differences such as the requirement to post a bond, a prohibition on contingency fee arrangements and the absence of a class action mechanism in Hong Kong would present insurmountable barriers to the litigation of their claims in Hong Kong. (Opp. at 24-27.) However, CXTI was a closely held and thinly traded stock. The five lead Plaintiffs purchased CXTI stock at a cost of over $900,000 and have not alleged that their financial circumstances make the lack of a contingency fee or class action system a pecuniary barrier to commencing suit in Hong Kong. (*See* PSLRA Certifications and Loss Chart, Exhibits 2 and 3 filed in support of Motion to Appoint Lead Plaintiffs, Dkt. No. 8.) Given the uncertainty about named Plaintiffs' financial resources to prosecute this action in Hong Kong, this Court would merely be speculating about how much weight to afford to the expense of litigating in the foreign forum. *See, e.g., Murray v. BBC*, 81 F.3d 287, 294 (2d Cir. 1996) (declining to find that plaintiff was of such limited financial means that the English bar on contingent fee arrangements would prevent him from pursuing his claim).

Plaintiffs argue that the fact that this litigation is "long past its initial stage" weighs against dismissal. (Opp. at 28.) But BDO Ltd. and PKF Hong Kong were first named in an amended complaint filed on March 29, 2009 and were not served until late August 2009. Plaintiffs were granted leave to file the SAC on October 29, 2009, and Defendants filed this motion to dismiss on December 14, 2009. Plaintiffs should not benefit from the fact that they chose to wait to name the auditor Defendants and did not serve them until nearly two years after commencing this action. Defendants' *forum non conveniens* motion is timely. *See, e.g., Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star*, 899 F. Supp. 164, 170 (S.D.N.Y. 1995) (granting *forum non conveniens* motion made six months after the complaint was filed).

-18-

### E.    The Public Factors Favor Dismissal

Plaintiffs argue that the United States has a strong interest in deciding this dispute because Defendants "sought out" American investors, registered on an American exchange, and made misrepresentations in statements filed with the SEC.  (Opp. at 19.)  This argument, however, describes the conduct of *CXTI*, not the auditor Defendants who bring this motion. BDO Ltd. and PKF Hong Kong did not seek out U.S. investors – indeed, the majority of CXTI's stockholders are not American investors – did not register any stock on an American exchange, and did not file anything with the SEC. *See Gilstrap*, 443 F. Supp. 2d at 490 (affording plaintiffs' forum choice less deference and dismissing based on *forum non conveniens*, in part, because only 40% of class members were U.S. residents).  The entity that allegedly "sought out" investors, registered its stock, and filed statements with the SEC is "vanished" and defaulted from this action.  (SAC ¶ 17.)

Any ancillary interest in applying U.S. securities laws against foreign accounting firms is outweighed by Hong Kong's interest in addressing conduct within its borders.  *Capital Currency Exchange N.V. v. National Westminister Bank PLC*, 155 F.3d 603, 611 (2d Cir 1998) (holding that United States' interest in applying its laws is not a determinative factor in weighing convenience); *Howe v. Goldcorp Invest., Ltd.*, 946 F.2d 944, 950 (1st Cir. 1991) (recognizing that securities actions are not immune from *forum non conveniens* dismissal); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (dismissing Rule 10(b) claims on basis of *forum non conveniens*).  Hong Kong has a greater interest in resolving this dispute, which involves allegations of fraudulent conduct within its borders by Hong Kong auditors and companies. *See Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 76 (2d Cir. 2003) (considering alternate forum's strong local interest in the controversy because the alleged fraud and misrepresentation primarily occurred there); *Allstate Life Ins. Co.*, 994 F.2d at 1002 (holding

that where fraudulent actions were carried out in Australia by Australian corporations, "there is a strong local interest" in litigating in Australia). This is particularly true where the alleged fraud involved transactions with local Chinese governments.

## III.   CONCLUSION

For all the foregoing reasons, this Court should exercise its broad discretion to dismiss the SAC on grounds of *forum non conveniens*.

Dated: March 12, 2010

Respectfully Submitted,

LATHAM & WATKINS LLP

By:   /s/ James J. Farrell

Peter A. Wald (admitted *pro hac vice*)
James J. Farrell (admitted *pro hac vice*)
Cameron Smith
885 Third Ave.
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for BDO Ltd.*

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:

Michael C. Tu (admitted *pro hac vice*)
Steven J. Fink
Charles J. Ha
666 Fifth Avenue
New York, New York 10103-0001
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for PKF Hong Kong*