UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS MUNOZ, et al., | |
| Plaintiffs, | 07-CV-10531 (AKH) |
| vs. | |
| CHINA EXPERT TECHNOLOGY, INC.; PKF NEW YORK, CERTIFIED PUBLIC ACCOUNTANTS, A PROFESSIONAL CORP.; PKF HONG KONG, CERTIFIED PUBLIC ACCOUNTANTS; AND BDO MCCABE LO LTD., CERTIFIED PUBLIC ACCOUNTANTS, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BDO LIMITED'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

LATHAM & WATKINS LLP

Peter A. Wald (admitted *pro hac vice*)
James J. Farrell (admitted *pro hac vice*)
Cameron Smith
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for BDO Ltd.*

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ........................................................................1

II.     THE COMPLAINT FAILS TO STATE A SECTION 10(B) CLAIM AGAINST
        BDO ...................................................................................................................3

        A.      Plaintiffs Fail To Plead With Particularity A False Statement By BDO. ...............3

                1.      Plaintiffs Fail To Allege BDO's GAAP Opinions Were Both
                        Objectively and Subectively False. ..............................................3

                2.      Plaintiffs Fail To Allege With Particularity That BDO Violated
                        GAAS. ........................................................................................5

        B.      Plaintiffs Fail To Plead BDO's Scienter. .................................................7

                1.      Plaintiffs' Allegations Fail To Create A Strong Inference Of
                        Scienter Against The Outside Auditor. ........................................7

                2.      Plaintiffs' "Red Flags" Allegations Fail To Create A Strong
                        Inference Of Scienter. ...............................................................11

        C.      Plaintiffs Fail Adequately To Plead Loss Causation. ...............................12

III.    CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amorosa v. Ernst & Young LLP*,
    No. 03 Civ. 3902(CM), 2010 WL 329956 (S.D.N.Y. Jan. 20, 2010) .................................. 3, 13

*City of Brockton Ret. Sys. v. Shaw Group Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008) .............................................................. 11, 13

*Cohen v. Franchard Corp.*,
    478 F.2d 115 (2d. Cir 1973) ..................................................................................... 10

*Danis v. USN Commc'ns, Inc.*,
    73 F. Supp. 2d 923 (N.D. Ill. 1999) .......................................................................... 14

*Davis v. SPSS, Inc.*,
    385 F. Supp. 2d 697 (N.D. Ill. 2005) ...................................................................... 6, 8

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ................................................................................... 11

*Duncan v. Pencer*,
    No. 94 CIV 0321 (LAP), 1996 WL 19043 (S.D.N.Y. 1996) ...................................... 8

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................... passim

*Fadem v. Ford Motor Co.*,
    No. 02 Civ.0680(SCH), 2003 WL 22227961 (S.D.N.Y. Sept. 25, 2003) ................... 5

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
    No. 03 Civ. 2387 LAK, 2005 WL 1580611 (S.D.N.Y. July 5, 2005) ........................ 5

*Friedman v. Ariz. World Nurseries Ltd. P'ship*,
    730 F. Supp. 521 (S.D.N.Y. 1990) .......................................................................... 10

*In re Am. Express Co. Sec. Litig.*,
    No. 02 Civ. 5533(WHP), 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008) ................... 5

*In re Bayer AG Sec. Litig.*,
    No. 03 Civ. 1546 WHP, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ..................... 3

*In re Bradley Pharms., Inc. Sec. Litig.*,
    421 F. Supp. 2d 822 (D.N.J. 2006) .......................................................................... 14

*In re Complete Mgmt. Inc. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001) ................................................. 10

*In re Doral Fin. Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008) ................................................... 8

*In re eSpeed, Inc. Sec. Litig.*,
   457 F. Supp. 2d 266 (S.D.N.Y. 2006) ................................................. 14

*In re Faro Techs. Sec. Litig.*,
   534 F. Supp. 2d 1248 (M.D. Fla. 2007) .............................................. 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................................. 13

*In re GeoPharma Inc. Sec. Litig.*,
   399 F. Supp. 2d 432 (S.D.N.Y. 2005) ................................................. 14

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 (CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) .................................... 5

*In re Initial Public Offering Sec. Litig.*,
   399 F. Supp. 2d 298 (S.D.N.Y. 2005) ................................................. 16

*In re Leslie Fay Cos., Inc. Sec. Litig.*,
   835 F. Supp. 167 (S.D.N.Y. 1993) ..................................................... 10

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................. 12

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   568 F. Supp. 2d 349 (S.D.N.Y. 2008) ................................................. 14

*In re Microstrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................. 10

*In re Omnicom Group, Inc. Sec. Litig.*,
   No. 08-0612-cv, 2010 WL 774311 (2d Cir. Mar. 9, 2010) ........................................... 2, 14, 15

*In re Omnicom Group, Inc. Sec. Litig.*,
   541 F. Supp. 2d 546 (S.D.N.Y. 2008) ............................................. 14, 15

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   51 F. Supp. 2d 290 (S.D.N.Y. 1999) ................................................... 10

*In re Phillip Servs. Corp. Sec. Litig.*,
   383 F. Supp. 2d 463 (S.D.N.Y. 2004) ................................................. 10

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  380 F. Supp. 2d 509 (D.N.J. 2005) ....................................................................... 10

*In re Tycom Ltd. Sec. Litig.*,
  No. 03-CV-1352-PB, 2005 WL 2127674 (D.N.H. Sept. 2, 2005) ............................................. 14

*In re Worldcom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288(DLC), 2003 WL 21488087 (S.D.N.Y. June 25, 2003).................................... 10

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
  537 F.3d 527 (5th Cir. 2008) ............................................................................ 12

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007) ............................................................................. 12

*Lentell v. Merrill Lynch & Co. Inc.*,
  396 F.3d 161 (2d Cir. 2005) ............................................................................. 13

*Limited, Inc. v. McCrory Corp.*,
  683 F. Supp. 387 (S.D.N.Y. 1988) ....................................................................... 10

*McLean v. Alexander*,
  599 F.2d 1190 (3d Cir. 1979) ........................................................................... 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .......................................................................... 16

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ............................................................................. 5

*Podany v. Robertson Stephens, Inc.*,
  318 F. Supp. 2d 146 (S.D.N.Y. 2004) ................................................................... 3, 5

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d 671 (6th Cir. 2004) ........................................................................... 12

*Reiger v. PricewaterhouseCoopers LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000) ................................................................... 7

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .............................................................................. 7

*SEC v. Espuelas*,
  579 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................................................... 12

*SEC. v. KPMG LLP*,
  412 F. Supp. 2d 349 (S.D.N.Y. 2006) .................................................................... 10

iv

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
   551 U.S. 308 (2007) ........................................................................................... 9

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ........................................................................................ 3

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
   344 Fed. Appx. 717 (2d Cir. 2009) ................................................................. 8, 9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .......................................................................... 12

*Zucker v. Sasaki*,
   963 F. Supp. 301 (S.D.N.Y. 1997) ............................................................. 7, 10

## STATUTES

15 U.S.C. § 78u-4(b) ................................................................................... passim

## RULES

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1

Fed. R. Civ. P. 9(b) ........................................................................................... 1

## OTHER AUTHORITIES

PCAOB AU 316.09 ............................................................................................. 9

PCAOB AU 316.10 ............................................................................................. 9

PCAOB AU 316.11 ............................................................................................. 9

PCAOB AU 330 ................................................................................................. 6

PCAOB AU 330.07 ............................................................................................. 6

PCAOB AU 330.08 ............................................................................................. 6

PCAOB AU 330.10 ............................................................................................. 6

PCAOB AU 330.32 ............................................................................................. 6

## DECLARATION AND EXHIBIT FILED IN SUPPORT OF REPLY MEMORANDUM OF LAW

Declaration of James J. Farrell in Support of Reply Memorandum of Law in Further Support of Defendant BDO Limited's Motion to Dismiss Plaintiffs' Second Amended Complaint

v

Exhibit K:     Public Company Accounting Oversight Board AU Section 330.

Defendant BDO Limited (f/k/a BDO McCabe Lo Ltd.) ("BDO") respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).

## I.    PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.") confirms that this is a classic fraud-by-hindsight case, which at best relates to the company's conduct -- not the conduct of outside auditor BDO. The SAC is fundamentally premised on the undisputed fact that BDO's former client, CXTI, ceased conducting business in October 2007. Based on that, Plaintiffs leap to the conclusion that CXTI's financial statements "must have been" false for every year of its existence and that BDO's audit opinions "must have been" fraudulent. But such speculation based on hindsight is not sufficient to establish with the particularity required by statute that: (1) BDO's audit opinions for years earlier were false, (2) BDO acted with scienter, or (3) CXTI's stock price decline was linked to the disclosure of the alleged fraud sufficient to establish loss causation.

*First*, Plaintiffs fail to allege that BDO's audit *opinion* that CXTI's financial statements complied with GAAP was both objectively and subjectively false -- as required to show the falsity of an opinion under the federal securities laws. As to the latter, Plaintiffs allege nothing at all establishing the subjective falsity of BDO's GAAP opinions. That alone is fatal to their claims. As to the former, Plaintiffs simply rely on alleged statements from various local Chinese government employees -- who say nothing more than that they have no knowledge of the relevant contracts or CXTI's subsidiary, China Expert Network (Shenzhen) Company Limited ("Expert Network"). There are no particularized factual allegations about those witnesses, sufficient to support a reasonable conclusion that they were in position to know whether a fraud was committed at CXTI, much less whether BDO's audit opinions for 2005 and 2006 were false.

-1-

*Second*, Plaintiffs fail to allege particularized facts that would support a strong inference of scienter as to BDO. The already-high standard for pleading scienter is set even higher for claims against an outside auditor (Mem. at 2, 8-9),[1] and Plaintiffs' hindsight speculation about CXTI's sudden disappearance in October 2007 does not establish that BDO issued knowingly false audit reports in earlier years. To establish scienter, Plaintiffs argue that Expert Network's 2006 financial statements filed with the Chinese government are correct and should have alerted BDO to CXTI's alleged fraud. But Plaintiffs concede that BDO did not have access to those financial statements – an admission that eviscerates their scienter theory. Plaintiffs also point to three purported "red flags" – all of which have been rejected as insufficient to establish scienter in other cases. Indeed, the most compelling inference from the facts pled in the SAC is that if fraud was committed at CXTI, BDO was duped by the purported "false" and "forged" contracts just like CXTI's shareholders.

*Finally*, the SAC fails adequately to plead loss causation. Contrary to the Supreme Court's requirement in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), Plaintiffs do not allege any disclosures that revealed the "truth" about BDO's purportedly false audit opinions. In fact, Plaintiffs concede that none of the SAC's specific disclosures sufficiently allege loss causation. Instead, Plaintiffs point to CXTI's stock price decline and argue that this is enough -- without any linkage to the revelation of an alleged "relevant truth." Alternatively, Plaintiffs purport to rely on "other disclosures" not identified in the SAC. Neither of these arguments satisfies *Dura's* loss causation pleading requirements. *In re Omnicom Group, Inc. Sec. Litig.*, No. 08-0612-cv, 2010 WL 774311, at *9-10 (2d Cir. Mar. 9, 2010).

---

[1] Citations to "Mem." refer to the Memorandum of Law in Support of Defendant BDO Limited's Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket No. 73).

## II.    THE COMPLAINT FAILS TO STATE A SECTION 10(B) CLAIM AGAINST BDO

### A.    Plaintiffs Fail To Plead With Particularity A False Statement By BDO.

While the SAC presents numerous statements made by CXTI between 2003 and 2007, and creative suppositions about why CXTI disappeared "into the ether" in October 2007, it provides no particularized facts to support the allegation that BDO's audit opinions for 2005 and 2006 were false. As Plaintiffs' concede, the only statements relevant here are BDO's 2005 and 2006 audit opinions. Opp. at 8; *Amorosa v. Ernst & Young LLP*, No. 03 Civ. 3902(CM), 2010 WL 329956, at *10 (S.D.N.Y. Jan. 20, 2010). In those opinions, BDO made two statements: (1) BDO *believed* that CXTI's financial statements complied with GAAP; and (2) BDO performed its audit "in accordance with the standards of the Public Company Accounting Oversight Board." (CXTI 2006 Form 10-K at F-1 ("2006 10-K") (Hickey Ex. B)[2].) The SAC fails to allege with the requisite particularity that any of those statements was false.

### 1.    Plaintiffs Fail To Allege BDO's GAAP Opinions Were Both Objectively and Subjectively False.

To plead falsity, Plaintiffs must allege that BDO's GAAP opinions were both objectively and subjectively false. *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991); *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("[P]laintiffs who charge that a statement of opinion…is materially misleading, must 'allege with particularity' 'provable facts' to demonstrate that the statement of opinion is both objectively and subjectively false."); *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 WHP, 2004 WL 2190357, at *13 (S.D.N.Y. Sept. 30, 2004) (same). The SAC does not allege that BDO *believed* CXTI's

---

[2] Citations to "Hickey Ex. _" refer to particular exhibits attached to the Declaration of Elizabeth H. Hickey (Docket No. 74) filed and served concurrently with BDO's Motion to Dismiss Plaintiffs' Second Amended Complaint.

financial statements failed to meet GAAP. As such, the SAC must be dismissed because it fails to plead that BDO's GAAP opinions were subjectively false.

In addition, the SAC fails to allege facts demonstrating that BDO's GAAP opinions were objectively false. Plaintiffs allege that CXTI's financials were not GAAP-compliant based on interviews with random employees of various Chinese local governments, each of whom knows virtually nothing about CXTI's financial statements or BDO's audit opinions for 2005 and 2006. (Opp. at 11-16.) In fact, stripped of Plaintiffs' innuendo, these allegations establish nothing more than that the witnesses surveyed were unaware of certain CXTI contracts. Some of the witnesses were aware of CXTI's subsidiary, Expert Network, and some conceded that Expert Network had been hired to perform services in the past – but most were not aware of the specific Expert Network contracts with their local governments. (SAC ¶¶ 109-222.)[3]

However, Plaintiffs do not allege particularized facts establishing that these witnesses were in positions to know about the relevant contracts. None of the employees referenced in the SAC are alleged to have been signatories to the relevant contracts or to have negotiated those contracts for their municipalities. The SAC does not even establish when these employees began working at their government jobs, which might further explain why some of them were unfamiliar with Expert Network. The SAC creates the illusion of particularity by speculating that all of CXTI's contracts were fraudulent. But the interviewed employees' lack of knowledge

---

[3] The SAC acknowledges that no revenue was ever recognized by CXTI for at least one of Nan'an City's contracts. (SAC ¶ 111 n.5.) The fact that this contract may not have existed is thus irrelevant to Plaintiffs' allegations against BDO. In addition, the witnesses interviewed from both Jinjiang Municipality and Dehua County admitted that those two governments *did* sign contracts with Expert Network. (SAC ¶¶ 157, 194.) And the witness interviewed in Huian County said that, while he had not heard of Expert Network, Huian did hire other companies to build Huian's e-government networks. (SAC ¶¶ 217-18.) CXTI's 2006 10-K clearly notes that CXTI utilized subcontractors for much of the services it provided, which would explain why some of the municipal employees may not have heard of CXTI or Expert Network but may have heard of other companies performing work on behalf of CXTI. (*See* CXTI 2006 10-K at 22 (Hickey Ex. B).)

simply does not establish that CXTI had no legitimate contracts to perform services.  *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).[4]

In fact, the SAC indicates that Expert Network generated nearly $10 million in cash from its 2006 operations, which directly contradicts Plaintiffs' fundamental assertion that all of CXTI's contracts were shams and that any related revenue was fraudulent.[5]  Plaintiffs have failed to "allege with particularity provable facts" demonstrating that BDO's GAAP opinion was objectively false.  *Podany*, 318 F. Supp. 2d at 153-54.

### 2.    Plaintiffs Fail To Allege With Particularity That BDO Violated GAAS.

Plaintiffs' Opposition and the SAC rattle off a list of auditing standards and then assert that BDO *must have* failed to "confirm[] the validity" of CXTI's contracts with Chinese government counterparties in violation of GAAS.  (Opp. at 19-24.)  Plaintiffs make these assertions, however, without citing to any facts about what BDO actually did or did not do in connection with its audits.  That is insufficient as a matter of law.  *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, No. 03 Civ.2387 LAK, 2005 WL 1580611, at *2 (S.D.N.Y. July 5, 2005) (granting motion to dismiss in case where "the Complaint fail[ed] to allege facts

---

[4] *See also In re Am. Express Co. Sec. Litig.*, No. 02 Civ. 5533(WHP), 2008 WL 4501928, at *7-8 (S.D.N.Y. Sept. 26, 2008) (holding that witnesses must be in a position to "possess the information alleged"); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476, at *9 (E.D.N.Y. Sept. 19, 2005); *Fadem v. Ford Motor Co.*, No. 02 Civ.0680(SCH), 2003 WL 22227961, at *7 (S.D.N.Y. Sept. 25, 2003) (dismissing complaint that failed to plead particularized facts establishing that its sources would possess the required knowledge).

[5] *See* SAC ¶ 242 (alleging increase in Expert Network's cash during 2006 from $210,651 to $9,963,246).  In response, the Opposition argues that CXTI's increase in cash is irrelevant because BDO did not see the 2006 Expert Network financials that show those proceeds.  (Opp. at 34 n.13.)  While that is true, Plaintiffs ignore that the $10 million cash increase indicates that CXTI was conducting operations in 2006 – operations that could generate a substantial amount of cash.  Plaintiffs do not explain this critical inconsistency in their case.

sufficient to justify [plaintiffs'] assertion that the E&Y Defendants did not independently corroborate…valuations" in violation of "certain accounting rules").[6]

Plaintiffs' allegations that BDO violated GAAS hinge on a single misguided premise – that BDO did not send confirmations to CXTI's counterparties.  (SAC ¶¶ 294, 303.)  The SAC *speculates* that BDO did not send confirmations – because otherwise, BDO would have learned that all of CXTI's contracts were shams.  But it is equally plausible, if not more plausible, that BDO did send confirmations, and either received no response or received false confirmation responses – consistent with Plaintiffs' allegation that every CXTI contract was forged or faked.  Furthermore, GAAS does not require that auditors seek such confirmations.  The rule that governs the confirmation process, AU Section 330, establishes that confirmations "might" be used when there is an increased level of "inherent and control risk."  AU 330.07 (Farrell Ex. K).[7]  Such risk increases with "[u]nusual or complex transactions."  *Id.* AU 330.08.  But under GAAS, the decision about whether to use confirmations is ultimately a question of auditor judgment, which depends on the entirety of evidence available (including, for example, signed written contracts or payments made in the form of cash coming into the company).  *Id.* AU 330.10.  In fact, GAAS recognizes that confirmations may not be returned to the auditor, and provides for alternative procedures that can be applied, including the notation of cash receipts related to receivables.  *Id.* AU 330.32.  Here, the SAC does not allege facts establishing that the contracts at issue were unusual or had such inherent risk that the absence of confirmations would suggest a violation of professional standards.  To the contrary, these were the very same kinds of contracts

---

[6] *See also Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 718 (N.D. Ill. 2005) (holding plaintiff's allegations that KPMG violated GAAS by failing "to consult enough evidential material" were "vague" and inadequate because plaintiff "provide[d] no factual allegations to support these assertions, such as . . . the materials and evidence [KPMG] reviewed during their audit").

that CXTI had been performing for years, with cash flows being generated from them.  (SAC ¶ 242.)

**B.    Plaintiffs Fail To Plead BDO's Scienter.**

**1.    Plaintiffs' Allegations Fail To Create A Strong Inference Of Scienter Against The Outside Auditor.**

As the Second Circuit has stated, when considering a securities fraud claim against an outside auditor, circumstantial evidence "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000). In short,

> the lack of a rational economic incentive for an independent accountant to participate in fraud, the client's central role in providing information to the accountant, and the complex professional judgment required to perform an audit, make it exceedingly difficult for a securities plaintiff to plead facts suggesting that an independent accountant acted with the deliberate state of mind now required to withstand a motion to dismiss.

*Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1008 (S.D. Cal. 2000).

Significantly, in their attempt to create this compelling inference, Plaintiffs do not allege that BDO knew anything about CXTI's purported fraud, otherwise colluded with CXTI, or profited from CXTI's fraud.[8]  Indeed, the SAC offers no motive whatsoever to support the inference that BDO acted in a manner "approximat[ing] an actual intent to aid in the fraud being perpetrated" by CXTI.  *Rothman*, 220 F.3d at 98.  The lack of any allegation sufficient to show actual knowledge or motive to commit fraud weighs heavily against a finding that a *strong*

---

[7] Citations to "Farrell Ex. _" refer to particular exhibits attached to the Declaration of James J. Farrell in Support of Reply Memorandum of Law in Further Support of Defendant BDO Limited's Motion to Dismiss Plaintiffs' Second Amended Complaint filed and served concurrently herewith.

[8] The receipt of fees for auditing services is not sufficient to plead scienter as a matter of law.  *Duncan v. Pencer*, No. 94 Civ. 0321(LAP), 1996 WL 19043, at *10 (S.D.N.Y. Jan. 18., 1996) (holding that the receipt of compensation for auditing services does not constitute sufficient motive for purposes of pleading scienter); *Reiger*, 117 F. Supp. 2d at 1007 (concluding that a "large independent accountant will rarely, if ever, have any rational economic incentive to participate in its client's fraud").

inference of scienter has been plead.  *See Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y.

1997) ("[W]here motive is not alleged and plaintiff relies entirely on allegations of recklessness

in asserting scienter, the evidence presented must be proportionally greater.").

The SAC speculates that CXTI disappeared in October 2007 because of fraud – but fails

to allege facts creating a strong inference that *both* of CXTI's independent auditors were

"severely reckless and deliberately turned a blind eye" to a "fraud … worse than the notorious

Enron and WorldCom cases."  (Opp. at 26, 28.)  Plaintiffs' sole basis for this assertion is

completely circular:  BDO must have been reckless in not discovering that CXTI was a

"complete sham" because it did not uncover that CXTI was a "complete sham."  (*See* Opp. at

28.)  Such "reasoning" is no substitute for particularized facts supporting a strong inference that

BDO exhibited a "*conscious turning away* from the true facts required for recklessness."[9]  *In re*

*Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (emphasis added),

*affirmed sub nom. W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 Fed. Appx. 717 (2d. Cir.

2009); *Davis*, 385 F. Supp. 2d at 719-20 (dismissing complaint against auditor despite later

restatement).[10]

Instead, the most cogent and compelling inference emerging from the SAC's allegations

is that the auditors were themselves deceived by CXTI's allegedly "forged" and "faked"

contracts.  *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 324 (2007) ; *W. Va.*

---

[9] In its prior ruling on PKF NY's motion to dismiss, this Court considered the exact same scienter allegations at issue here and dismissed them as insufficient.  (*See* Transcript of September 29, 2009 Oral Hearing ("Transcript") at 40:14-42:16; *compare* Amended Complaint ¶¶ 37-271 *with* SAC ¶¶ 70-305.)  In dismissing Plaintiffs' complaint against PKF NY, the Court held that the same allegations made here addressed "the company's fraud," but noting that if Plaintiffs want to "hold the accountants … on [the theory] that they also were fraudulent" then Plaintiffs "have to allege it [and] [y]ou haven't alleged [it]."  (Transcript at 42:7-13.)  The SAC has not cured this basic pleading deficiency.

*Inv. Mgmt. Bd.*, 344 Fed. Appx. at 719-20 (holding in a case involving $1 billion in alleged income overstatement and $3.3 billion in alleged debt understatement, that secret side agreements created by the company led to a more compelling inference that the company "concealed its fraud from Pricewaterhouse, just as it concealed its fraud from investors"). In fact, the controlling professional standards support such an inference. GAAS expressly states that a collusive fraud, which relies on forgeries and fake documents, may not be detected by a properly performed audit. *See* AU 316.09 - 316.11 (Hickey Ex. F).

Moreover, Plaintiffs' argument that BDO was severely reckless in not discovering CXTI's fraud is based largely on the allegation that Expert Network's 2006 financial statements filed with the Chinese government were arguably inconsistent with CXTI's financial statements. (Opp. at 1, 28-29.) That allegation is insufficient because: (1) the Expert Network financials were admittedly inaccessible to BDO; (2) the Expert Network financials were only filed *after* BDO's last audit opinion was completed (Mem. at 20 n.13); and (3) Plaintiffs have not alleged a single fact supporting an inference that any differences between Expert Network's financial statements and CXTI's financial statements reflected "fraud" – as opposed to differences in Chinese GAAP versus U.S. GAAP, or differences in the evidence collected or the judgments rendered by different auditors in recognizing revenue under long-term contracts (as provided for under the percentage of completion accounting method). Indeed, Plaintiffs' own expert, Joseph Dellapenna, who filed a declaration in support of Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss the SAC on Grounds of Forum Non Conveniens, declares that records such as

---

[10] Plaintiffs' reliance on the alleged magnitude of the fraud is also insufficient. *Reiger* is directly on point: "To travel from magnitude of fraud to evidence of scienter, the court must blend hindsight, speculation and conjecture to forge a tenuous chain of inferences . . . . To avoid undermining the policies of the Reform Act through reliance on hindsight and speculation, a court should not infer an independent accountant's scienter based solely on the magnitude of its client's fraud." 117 F. Supp. 2d at 1013.

the 2006 Expert Network financials are considered "state secrets" in China indicating that they would not have been available to BDO.  (Dellapenna Decl. at ¶¶ 26-27 (Docket No. 102).)

BDO's lack of access to Expert Network's 2006 audited financial statements critically undermines Plaintiffs' theory that BDO "must have" known about CXTI's fraud.  *See Zucker*, 963 F. Supp. at 306 (finding no scienter pled where complaint failed to establish sufficient facts to indicate Ernst & Young "knew or should have known" of accounting errors that were later restated); *see also Cohen v. Franchard Corp.*, 478 F.2d 115, 123 (2d. Cir 1973) ("It is not enough…to show that defendant failed to detect certain material facts when he had no reason to suspect their existence."); *Friedman v. Ariz. World Nurseries Ltd. P'ship*, 730 F. Supp. 521, 532 (S.D.N.Y. 1990) ("[I]t is well settled that an inference of fraud does not arise from the mere fact that an auditor reported on allegedly inaccurate data."); *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 394-95 (S.D.N.Y. 1988) (dismissing complaint that failed to indicate how or when independent accountant learned of facts that made financial statements misleading).[11]

---

[11] The cases cited by Plaintiffs do not support their assertion that scienter has been sufficiently pled (Opp. at 29-30), and actually demonstrate that critical pleading elements are missing from the SAC.  In several of the cases cited by Plaintiffs where scienter was held to have been adequately pled, the defendant accounting firms allegedly had specific knowledge of accounting irregularities/misconduct.  *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 568-70 (D.N.J. 2005) (noting that auditors had raised concerns about questionable accounting practices with company and also received two memoranda discussing accounting improprieties but still certified the company's financial statements); *In re Phillip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 472, 475 (S.D.N.Y. 2004) (finding scienter pled where Deloitte had actual knowledge of client's accounting misconduct through, *inter alia*, a letter from client's former employee alleging material accounting misstatements); *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 21488087, at *4 (S.D.N.Y. June 25, 2003) (finding scienter pled where Arthur Andersen was notified that WorldCom had made improper accounting entries); *In re Oxford Health Plans, Inc., Sec. Litig.*, 51 F. Supp. 2d 290, 295 (S.D.N.Y. 1999) (holding scienter sufficiently pled where KPMG allegedly knew its client was sanctioned by a government agency for internal controls and accounting deficiencies).  Here, Plaintiffs do not allege that BDO was ever informed that the contracts at issue were invalid or that CXTI had engaged in accounting improprieties prior to issuing its audit opinions.  Similarly, the SAC lacks allegations of a motive to defraud, a conflict of interest, or the suspicious timing of transactions – facts that were found sufficient to allege scienter in the other cases that Plaintiffs cite.  *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 334-35 (S.D.N.Y. 2001); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 653-56 (E.D. Va. 2000); *In re Leslie Fay Cos., Inc. Sec. Litig.*, 835 F. Supp. 167, 173-74 (S.D.N.Y. 1993).  Finally, two of the cases cited by Plaintiffs did not even involve a motion to dismiss, and thus analyzed the issue of scienter under standards inapplicable here.  *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006) (noting that some courts have "been lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences"); *McLean v. Alexander*, 599 F.2d 1190, 1193, 1199-1202 (3d Cir. 1979).

      **2.**      **Plaintiffs' "Red Flags" Allegations Fail To Create A Strong Inference Of Scienter.**

Notwithstanding their high pleading burden under the PSLRA, Plaintiffs' Opposition does little more than repeat the three "red flags" alleged in the SAC – none of which is sufficient to create a strong inference of scienter.  (Opp. at 33.)  The purported "red flags" are: (1) CXTI had "'significant operations located or conducted across international borders in jurisdictions where differing business environments and cultures exist;'" (2) "CXTI applied POC [percentage of completion] accounting;" and (3) "accounts receivable grew substantially as a percentage of total assets."  (*Id.*)  None of these alleged "red flags" is sufficient as a matter of law – or comes close to being sufficient – to establish scienter individually or in the aggregate.  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389-91 (9th Cir. 2002) (affirming dismissal of fraud complaint alleging that the size and nature of certain transactions were "red flags" that "should have alerted" the auditor to alleged wrongdoing); *City of Brockton Ret. Sys. v. Shaw Group Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (rejecting argument that "zero plus zero plus zero plus zero plus zero adds up to something").

     *First*, the fact that these transactions took place in China is not a "red flag."  *See In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1266-67 (M.D. Fla. 2007) (rejecting argument that the conduct of operations in Asia, "where differing business environments and cultures exist," is a "red flag:"  "The mere fact that a corporation is doing business outside the United States does not mean an auditor should presume that business is necessarily being conducted fraudulently.  Even if foreign business dealings create some free floating anxiety that wrong doing could ensue, vague concerns are no substitute for the strong inference of scienter required for pleading a claim.")

*Second*, contrary to Plaintiffs' assertion, the use of "percentage of completion" accounting cannot be a red flag.  (Opp. at 33.)  As the SAC acknowledges, this methodology is entirely acceptable under GAAP, and has been widely used for decades.  (SAC ¶ 259.)  The use of a GAAP-compliant accounting methodology cannot, by itself, constitute a "red flag" sufficient to alert an auditor to fraud.  *See Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 536-41 (5th Cir. 2008) (holding that the allegedly fraudulent use of percentage of completion accounting did not support an inference of scienter); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 999-1000 (9th Cir. 2009) (holding scienter not sufficiently pled where accounting practice was appropriate under GAAP); *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 487 (S.D.N.Y. 2006) ("Merely labeling allegations as red flags … is insufficient to make those allegations relevant to a defendant's scienter.  Rather, plaintiffs must plead 'facts which come to a defendant's attention that would place a reasonable party in defendant's position on notice that the audited company was engaged in wrongdoing to the detriment of its investors.'") (internal citation omitted).

*Third*, the increases in accounts receivable are relatively common under contracts that require completion over time – particularly for a growing business like CXTI's – and would not have been sufficient to put BDO on notice of fraud.  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 687, 695 (6th Cir. 2004) (holding that increases in accounts receivable relative to revenues do not constitute a "red flag" and cannot establish scienter); *Cf. SEC v. Espuelas*, 579 F. Supp. 2d 461, 486 (S.D.N.Y. 2008) ("Large revenues…are not red flags[.]").

### C.    Plaintiffs Fail Adequately To Plead Loss Causation.

To plead loss causation, Plaintiffs must allege that the "relevant truth" concealed by BDO's allegedly false audit opinions was disclosed to the market, which in turn caused BDO's stock price to decline.  *Dura*, 544 U.S. at 342-43; *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d

147, 157 (2d Cir. 2007); *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173 (2d Cir. 2005).

In § 10(b) cases involving allegedly false audit opinions, "a plaintiff seek[ing] to hold a financial

advisor or auditor responsible for primary violations of the securities laws…must plead that the

market reacted negatively to some disclosure correcting the falsity in the advisor or auditor's

statements (and not simply the underlying fraud)." *Amorosa*, 2010 WL 329956, at *12.

Plaintiffs do not allege any corrective disclosure regarding CXTI's 2005 and 2006

financial statements or BDO's audit opinions regarding those financials.  Critically, Plaintiffs

concede that the SAC does not sufficiently plead any corrective disclosures.  (Opp. at 38-39

("The [SAC] does not allege that each event, including articles published by financial news

commentators and the announcement of CXTI's dismissal of BDO, <u>standing alone</u> sufficiently

alleges loss causation.").)  Instead, Plaintiffs argue they have met the pleading standard for loss

causation because the SAC alleges that the "revelation of the 'truth' … occurred through a series

of disclosing events."  (*Id.* at 40.)  This contention is inadequate as a matter of law:  if none of

the individual disclosures were "corrective" (*i.e.*, did not reveal the purported "truth" about

BDO's audit opinions), then the sum of those disclosures cannot be "corrective" in a manner

sufficient to allege loss causation.  *Cf. City of Brockton*, 540 F. Supp. 2d at 475 (holding that the

sum of individually-insufficient allegations cannot successfully plead a securities fraud claim).

Furthermore, this theory of loss causation – that Plaintiffs' losses were caused by a "series" of

stock drops between July 19, 2007 and October 15, 2007 unrelated to any specific disclosure that

BDO's audit opinions were false or misleading (Opp. at 39) – is contrary to directly controlling

case law.  *See Dura*, 544 U.S. at 342-43, 347; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574

F.3d 29, 41 (2d Cir. 2009) (holding that even if the court accepted plaintiffs' "leakage" theory,

plaintiffs could not establish loss causation because they "failed to demonstrate that any of the

information that 'leaked' into the market … revealed the truth with respect to the specific

misrepresentations"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568 F. Supp. 2d

349, 364-65 (S.D.N.Y. 2008) (granting motion to dismiss where decline in company's stock over

the course of multiple months was not linked to the disclosure of the truth behind any false

statements)[12]

      Plaintiffs' Opposition barely addresses the allegations in the "Loss Causation" section of

the SAC.  With respect to CXTI's July 19, 2007 announcement of its CFO's resignation,

Plaintiffs assert that the SAC "sufficiently pleads loss causation because the stock declined from

$6.45 per share on July 19 to $4.88 on July 20, and to $3.72 on July 24."  (Opp. at 38.)  But such

a price decline is insufficient as a matter of law.  *See In re Omnicom Group, Inc. Sec. Litig.*, 541

F. Supp. 2d 546, 552 (S.D.N.Y. 2008) ("[W]here a disclosure does not reveal the falsity of the

alleged misstatements, it does not qualify as 'corrective.'"), *aff'd*, No. 08-0612-cv, 2010 WL

774311 (2d Cir. Mar. 9, 2010) .  Moreover, the announcement of a resignation cannot constitute

a corrective disclosure if, as is the case here, the announcement does not connect the resignation

---

[12] Plaintiffs' citation to a handful of cases – primarily from other Circuits – in which a series of partial disclosures was deemed to support loss causation only highlights the deficiencies in the SAC's loss causation allegations.  (Opp. at 40.)  In *In re Tycom Ltd. Sec. Litig.*, after concluding that the allegations of scienter were insufficient as to the underwriters, the court found loss causation sufficiently pled against the issuer defendants because the corrective disclosures revealed the truth regarding the market for bandwidth – which was directly contrary to Tycom's earlier statements.  No. 03-CV-1352-PB, 2005 WL 2127674, at *12-13 (D.N.H. Sept. 2, 2005).  Here, the alleged disclosures do not reveal that BDO's audit reports for 2005 and 2006 were false.  *See also In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 453 (S.D.N.Y. 2005) (finding loss causation where the company's earlier statements regarding drug approval had been corrected by a later disclosure); *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 827 (D.N.J. 2006) (finding loss causation adequately pled based on announcement that SEC was investigating sham transaction that was subject of alleged fraud); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 297 (S.D.N.Y. 2006) (not holding on loss causation but stating in *dicta* that "*Dura* imposed no requirement that corrective disclosures emanate from the company itself, *so long as the truth is disclosed in some fashion*") (emphasis added).  Moreover, Plaintiffs' reliance on *Danis v. USN Commc'ns, Inc.*, 73 F. Supp. 2d 923 (N.D. Ill. 1999) is foreclosed by subsequent jurisprudence; *Danis* applies a standard for pleading loss causation – loss can be alleged simply by pleading an inflated stock price – that was expressly rejected by the Supreme Court in *Dura*.

to the purported fraud.  *See id*. at 553 ("[A] director's resignation cannot constitute a corrective disclosure when the resignation is not connected to the alleged fraud.").[13]

In response to BDO's argument that the various blogs and newspaper articles in September 2007 did not disclose the purported "truth" about CXTI's financials and were often followed by stock price increases (Mem. at 22-23), Plaintiffs essentially acknowledge the inadequacy of their loss causation allegations, arguing that they are relying on unpled disclosures that they still cannot identify.  Plaintiffs contend that the SAC "referred to just a few among many postings on the Internet in order to show that news was circulating within the market" but "the Complaint does not claim to have read, and then made allegations about, every blog, article, and chatroom comment."  (Opp. at 39 n.16).  The SAC provides no identifying details about these undisclosed "postings on the Internet" – no author names, no titles, no dates, no locations and no subject matter.  Such pleading fails under any standard.  *See Dura*, 544 U.S. at 346 (plaintiff must "provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'").  Similarly, the articles and blog comments that "raised questions" about CXTI's financials are insufficient to allege loss causation.[14]  *In re Omnicom Group*, 2010 WL 774311, at *9-10 (holding that "negative journalistic characterization[s]," "journalists' opinions," and the raising of "questions" about a defendant's accounting practices by a media outlet cannot establish loss causation).

Plaintiffs also assert that the "relatively huge stock drop on October 15, 2007 immediately following the SEC order issued on October 1, 2007 that halted trading" alleges loss causation.  (Opp. at 38.)  That is not correct.  Plaintiffs continue to focus on price decline alone,

---

[13] Plaintiffs do not address CXTI's August 14, 2007 disclosure of a five-day filing extension request for its second-quarter financials argument, and therefore provide the Court with no basis to find loss causation as to that statement.

ignoring the content of the alleged disclosure.  As alleged, the October 15 drop was caused by the SEC's October 1, 2007 order halting trading in CXTI.  (SAC ¶ 349.)  The content of the SEC's order does not reveal the alleged "truth," as Plaintiffs now claim.  The SEC did not assert that prior CXTI financial statements for earlier fiscal years were fraudulent or even inaccurate. The SEC order certainly did not reveal the "total sham" that Plaintiffs allege, much less any specific issue with CXTI's 2005 and 2006 financial statements or BDO's audit opinions on those financial statements.  As discussed above, a corrective disclosure must reveal the purported "truth" allegedly hidden by defendants' fraud – and cannot be pled by euphemism.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

To the extent Plaintiffs are attempting to change their loss causation theory from "corrective disclosure" to "materialization of the risk," this effort similarly fails.  (Opp. at 35-36.)  The materialization of the risk theory is not pled in the SAC, nor could it be because it would require that the risk that Plaintiffs allege was concealed – that BDO's audit reports for 2005 and 2006 were false – later "materialized."  There is nothing in the identified disclosures indicating that BDO's audit reports for earlier years were ever determined to be false.  Likewise, in cases involving allegations of false opinions, like this one, loss causation can only be established through a corrective disclosure.  *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 307-08 (S.D.N.Y. 2005) ("[W]here the alleged misstatement is an intentionally false opinion, the market will not respond to the truth until the falsity is revealed – *i.e.* a corrective disclosure.").

---

[14] *See, e.g.*, Cabeza Howe blog entry dated Sept. 6, 2007 (Hickey Ex. I) ("I was just raising my concern.  It is not an accusation or conclusion.  Just some phone calls.").

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' claims against BDO should be dismissed with prejudice.

Dated: March 12, 2010                          Respectfully Submitted,

                                               LATHAM & WATKINS LLP


                                   By:    ___/s/ James J. Farrell_____
                                          Peter A. Wald (admitted *pro hac vice*)
                                          James J. Farrell (admitted *pro hac vice*)
                                          Cameron Smith
                                          885 Third Avenue
                                          New York, New York 10022
                                          Telephone: (212) 906-1200
                                          Facsimile: (212) 751-4864

                                          *Attorneys for BDO Ltd.*